# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

LAMARTINE PIERRE JR.,
DANIELLE GRAHAM, AMIE
DELEON,  JESSE GONZALEZ,
JEANNETTE RODRIGUEZ, VALERIE
WELLS, STEPHANIE SMITH,
SHANNON HOOD, SHANNA HER,
MELANIE BARBER, CHRISTOPHER
MORGAN, and MOLLY BROWN on
behalf of themselves and all others
similarly situated,

                                    Plaintiffs,

        v.

THE HEALTHY BEVERAGE
COMPANY, LLC

                                    Defendant.

Case No.

## CLASS ACTION COMPLAINT

**Demand for Jury Trial**

        Plaintiffs Lamartine Pierre Jr., Danielle Graham, Amie Deleon, Jesse Gonzalez, Jeannette Rodriguez, Valerie Wells, Stephanie Smith, Shannon Hood, Shanna Her, Melanie Barber, Christopher Morgan, and Molly Brown ("Plaintiffs"), acting on behalf of themselves and all other similarly situated persons, bring this action for damages and equitable relief against the Healthy Beverage Company, LLC ("Defendant") and on basis of personal knowledge, information and belief, and investigation of counsel, allege as follows:

## INTRODUCTION

        1.      Defendant the Healthy Beverage Company LLC  ("Defendant" or "Healthy Beverage") manufacturers, distributes, markets, labels and sells its iced tea beverages purporting to be "Lightly Sweetened " and low in sugar under their Steaz Organic Lightly Sweetened Iced Green Tea brand ("Steaz Tea" or "Product").

        2.      During the class period (as defined below), consumers purchased the Product throughout the United States including Plaintiffs in their home states as described below.

3.      During the class period (as defined below) Defendant falsely and misleadingly advertised and marketed its Product to consumers, labeling it as "Lightly Sweetened."

4.      Defendant's "Lightly Sweetened" representation it specifically makes on the Product label is understood by consumers that such a Product is in fact low in sugar.

5.      Contrary to this representation, Defendant's Product is anything but "Lightly Sweetened" and low in sugar.   Instead, Defendant's Product is high in sugar which directly contradicts the sugar content representation Defendant prominently makes on its label.

6.       The reason Defendant uses such a prominent "Lightly Sweetened" representation on the front of its label is so that consumers, including the Plaintiffs, would read and rely on such a representation and induce them to purchase the Product.

7.      As will be detailed below, Defendant charges a premium for this falsely labeled "Lightly Sweetened" Product.

8.      Plaintiffs would not have purchased or paid more for the Product had they known or were aware that the Product was not "Lightly Sweetened" or low in sugar.

9.      As a result of Defendant's misrepresentations and omissions, Plaintiffs and other putative Class members were harmed by paying  a premium for the advertised Product and only receiving an inferior Product that in no way conformed to the "Lightly Sweetened" representation on the label.

## BACKGROUND OF THE CASE

10.      Obesity rates in America have skyrocketed. "In 1962, 46 percent of adults in the U.S. were considered overweight or obese. By 2010, that figure had jumped to 75 percent."[1]

---

[1]  *See*  https://www.hopkinsmedicine.org/health/wellness-and-prevention/obesity-sugar-and-heart-health (last visited July 17, 2020).

11.     One significant contributing factor for such a large rise in American obesity rates is sugar consumption.[2]

12.     The perils of high sugar consumption, especially from added sugar are well documented.

13.     "In a study published in 2014 in JAMA Internal Medicine, . . . an association [was found] between a high-sugar diet and a greater risk of dying from heart disease. [For example] [o]ver the course of the 15-year study, people who got 17% to 21% of their calories from added sugar had a 38% higher risk of dying from cardiovascular disease compared with those who consumed 8% of their calories as added sugar."[3]

14.     In fact, "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide." *See Sweet Stuff: How Sugars and Sweeteners Affect Your Health*, NIH (Oct. 2014).

15.     Our country's own CDC agrees: "Americans are eating and drinking too much added sugars which can lead to health problems such as weight gain and obesity, type 2 diabetes, and heart disease."[4]

---

[2] *Id.*

[3] *See* https://www.health.harvard.edu/heart-health/the-sweet-danger-of-sugar (last visited July 16, 2020).

[4] *See* https://www.cdc.gov/nutrition/data-statistics/know-your-limit-for-added-sugars.html (last visited Oct. 2, 2020); *see also* https://www.washingtonpost.com/national/health-science/eating-too-much-sugar-can-hurt-your-health-and-for-some-its-actually-addictive/2017/12/15/3853d3e8-de8b-11e7-bbd0-9dfb2e37492a_story.html ("[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity.") (last visited Oct. 2, 2020).

16.     Sugar found in beverages is especially problematic for consumers trying to lose weight because calories consumed through a beverage do not have the same appetite suppression effects as eating solid whole food.[5]

17.     As a result, the dangers of high sugar consumption and its impacts on diabetes and obesity are well known, which is why consumer preferences in the United States have changed.[6]

18.     When consumers purchase beverages, a material factor they consider is the sugar content.

19.     Consumers, including Plaintiffs and Class Members, expect that the amount of sugar advertised on the front of the label does not severely contradict the ingredients actually contained in the product itself. This is especially the case when the consumer pays a premium for an organic product or a product which purports to contain minimal or low amount of sugar.

20.     However, Defendant's Product misled consumers by using labeling to deceive the consumer into believing that the beverage is only "lightly sweetened" meanwhile the Product contains 20 grams of added sugar.[7]

21.     20 grams of added sugar is a significant and excessive amount. The American Heart Association recommends that men consume 37.5 and women consume 25 grams of added sugar per day respectively.[8]

**PARTIES**

---

[5] *See* https://www.health.harvard.edu/heart-health/the-sweet-danger-of-sugar (last visited July 16, 2020).

[6] *Id.*

[7] The product is available in a variety of flavors. However, all make the same "lightly sweetened" representation and all contain the same amount of added sugar: 20 grams. *See* https://steaz.com/lightly-sweetened/ (last visited July 17, 2020).

[8] *See* https://www.healthline.com/nutrition/how-much-sugar-per-day#section3 (last visited July 17, 2020).

22.     Plaintiff Lamartine Pierre Jr is a citizen of New York residing in Valley Stream. He purchased the Product on numerous occasions  for personal, family our household use.

23.     Plaintiff Danielle Graham is a citizen of Pennsylvania residing in Erie. She purchased the Product on numerous occasions for personal, family our household use.

24.     Plaintiff Amie Deleon is a citizen of Texas residing in San Antonio. She purchased the Product on numerous occasions for personal, family our household use.

25.     Plaintiff Jesse Gonzalez is a citizen of Massachusetts residing in Methuen. He purchased the Product on numerous occasions for personal, family our household use.

26.     Plaintiff Jeannette Rodriguez is a citizen of Wisconsin residing in Milwaukee. She purchased the Product on numerous occasions for personal, family our household use.

27.     Plaintiff Valerie Wells is a citizen of Illinois residing in Chicago. She purchased the Product on numerous occasions for personal, family our household use.

28.     Plaintiff Stephanie Smith is a citizen of Oklahoma residing in Guthrie. She purchased the Product on a few occasions for personal, family our household use.

29.     Plaintiff Shanna Her is a citizen of Wisconsin residing in Oshkosh. She purchased the Product numerous times for personal, family our household use.

30.     Plaintiff Shannon Hood is a citizen of New York residing in Baldwinsville. She purchased the Product on numerous occasions for personal, family our household use.

31.     Plaintiff Melanie Barber is a citizen of California residing in Upland. She purchased the Product on numerous occasions for personal, family our household use.

32.     Plaintiff Christopher Morgan is a citizen of Alaska residing in Anchorage. He purchased the Product on numerous occasions for personal, family our household use.

33.     Plaintiff Molly Brown is a citizen of California residing in Novato. She purchased the Product on numerous occasions for personal, family our household use.

34.     Defendant the Healthy Beverage Company LLC is a limited liability company registered to do business and headquartered in Doylestown, Pennsylvania.

## JURISDICTION AND VENUE

35.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).   There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from the Defendant.

36.     This Court may exercise jurisdiction over Defendant because its headquarters are located in Pennsylvania and it is registered to conduct business in Pennsylvania.

37.     Defendant has sufficient minimum contacts in Pennsylvania. Defendant intentionally avails itself of the markets within Pennsylvania through the promotion, sale, marketing, and distribution of Steaz Tea, which renders this Court's exercise of jurisdiction necessary and proper.

38.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is headquartered here and conducts substantial business in this District.

## FACTUAL ALLEGATIONS

**Plaintiffs' Facts**

39.     Lamartine Pierre Jr. purchased the Product several times over the last four years at Walmart in New York. Prior to each purchase, he specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Mr. Pierre would not have purchased or paid more for the Product had he known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Mr. Pierre would purchase the Product again in

the future if the Product was remedied or reformulated to be in accordance with Defendant's representation on the label.

40.      Danielle Graham purchased the Product several times over the last four years in Pennsylvania typically at a grocery store. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling  believing that the Product was, in fact, low in sugar. Ms. Graham would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Graham would purchase the Product again in the future if the Product was remedied or reformulated to be in accordance with Defendant's representations on the label.

41.      Amie Deleon purchased the Product several times over the last four years in Texas at Walmart and Target. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling  believing that the Product was, in fact, low in sugar. Ms. Deleon would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Deleon would purchase the Product again in the future if the Product was remedied or reformulated to be in accordance with Defendant's representation on the label.

42.      Jesse Gonzalez purchased the Product several times over the last four years in Massachusetts at Walmart. Prior to each purchase, he specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling  believing that the Product was, in fact, low in sugar. Mr. Gonzalez would not have purchased or paid more for the Product had he known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Mr. Gonzalez would purchase the

Product again in the future if the Product was remedied or reformulated to be in accordance with Defendant's representation on the label.

43.    Jeannette Rodriguez purchased the Product several times over the last four years at retailers in Wisconsin such as Target. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Ms. Rodriguez would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Rodriguez would purchase the Product again in the future if the Product was remedied or reformulated to be in accordance with Defendant's representation on the label.

44.    Valerie Wells purchased the Product several times over the last four years at Target in Illinois. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Ms. Wells would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than  prominently represented and advertised on the front of the Product's label. Ms. Wells would purchase the Product again in the future if the Product was remedied or reformulated to be in accordance with Defendant's representations on the label.

45.    Stephanie Smith purchased the Product several times over the last four years at Walmart in Oklahoma. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling  believing that the Product was, in fact, low in sugar. Ms. Smith would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than  prominently represented and advertised on the front of the Product's label. Ms. Smith would purchase the Product again in

the future if the Product was remedied or reformulated to be in accordance with Defendant's representation on the label.

46.     Shanna Her purchased the Product several times over the last four years in Wisconsin at a Walmart. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Ms. Her would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Her would purchase the Product again in the future if the Product was remedied or reformulated to be in accordance with Defendant's representation on the label.

47.     Shannon Hood purchased the Product several times over the last four years at a Wegmans grocery store in New York. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Ms. Hood would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Hood would purchase the Product again in the future if the Product was remedied or reformulated to be in accordance with Defendant's representation on the label.

48.     Melanie Barber purchased the Product several times over the last four years at Target and Walmart in California. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Ms. Barber would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Barber would purchase the

Product again in the future if the Product was remedied or reformulated to be in accordance with Defendant's representation on the label.

49.    Christopher Morgan purchased the Product several times over the last four years at Safeway and Fred Meyers in Alaska. Prior to each purchase, he specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Mr. Morgan would not have purchased or paid more for the Product had he known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Mr. Morgan would purchase the Product again in the future if the Product was remedied or reformulated to be in accordance with Defendant's representation on the label.

50.    Molly Brown purchased the Product several times over the last four years at various retailers, including Whole Foods and CVS in California. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Ms. Brown would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Brown would purchase the Product again in the future if the Product was remedied or reformulated to be in accordance with Defendant's representation on the label.

## **Defendant's "Lightly Sweetened" representation is deceptive and misleading**

51.    The Center for Science in the Public Interest, an independent consumer advocacy group that seeks safer and healthier foods, wrote a letter to the Food and Drug Administration (FDA)

highlighting how Defendant's representations regarding "lightly sweetened" are material and misleading.[9]

52.     In particular, Defendant's claim their Product, which contains 20 grams of added sugar, is "lightly sweetened"

53.      "The terms 'sweet' and 'sweetened,' when used without additional qualification, are generally understood to refer to sugar."[10]

54.     Merriam and Webster's dictionary defines "lightly" as "in a small degree or amount[,]" and provides this relevant contextual example for using the word: "lightly salted food[.]"[11]

55.     Accordingly, "lightly sweetened" in its ordinary and common usage in the context of Defendant's Product means the Product only has a small amount of added sugar.

56.     Defendant's Product, however, contains 30% of the Daily Value (DV) "for added sugars per Reference Amount Customarily Consumed (RACC)."[12]

57.     As mentioned above, Defendant's Product also provides more than half of the added sugar the American Heart Association recommends for daily consumption for men and eighty percent of the recommended daily amount for women.

---

[9]  *See*  https://cspinet.org/sites/default/files/attachment/Low_Sugar_Letter-1.9.20.pdf  (last  visited July 17, 2020).

[10] *Id.*

[11] *See* https://www.merriam-webster.com/dictionary/lightly (last visited July 17, 2020).

[12]  *See*  https://cspinet.org/sites/default/files/attachment/Low_Sugar_Letter-1.9.20.pdf  (last  visited July 17, 2020).

58.     And while the "FDA has not issued regulations defining 'low sugar' or 'low added sugar,'[13] … the upper thresholds for 'low xxx' claims characterizing levels of fat, saturated fat, cholesterol, and sodium range from 5 to 7 percent of the DV for the relevant nutrient, per RACC. While there is no DV for total sugars, at [30] percent of the DV for added sugars, [Defendant's] [P]roducts would far exceed a comparable threshold if a standard were set based on this DV."[14]

59.     "[R]egulations [also] allow 'high' claims—nutrient content claims characterizing high levels of a nutrient—to be used, provided that the food contains at least 20 percent of the DV per RACC. [Defendant's] products … exceed 20 percent of the DV for added sugars per RACC, meaning each of these products is not only not 'low' in added sugars, but is actually 'high' in added sugars according to FDA's standard definition for 'high in' claims."[15]

### Defendant's Material Misrepresentations

60.     It is no secret that consumers pay a premium for perceived high quality, organic and low sugar products such as Steaz Tea.

61.     For example, a 12 pack of Steaz Tea costs as much as $25.99 whereas a 12 pack of green tea from a competing brand costs as little as $3.79.[16]

---

[13] Because "low sugar" and "low added sugar" claims have never been authorized, they are prohibited. 58 Fed. Reg. at 2368 ("The agency stated that under the provisions of the statute, such implied claims are prohibited until they are defined by FDA by regulation.").

[14] *See*   https://cspinet.org/sites/default/files/attachment/Low_Sugar_Letter-1.9.20.pdf (last visited July 17, 2020).

[15] *Id.*

[16] *Compare Steaz Organic Lightly Sweetened Iced Green Tea, Super Fruit, 16 FL OZ (Pack of 12),* AMAZON, https://www.amazon.com/Steaz-Organic-Lightly-Sweetened-Superfruit/dp/B00A0DWL2C/ref=asc_df_B00A0DWL2C/?tag=hyprod-20&linkCode=df0&hvadid=312191465664&hvpos=&hvnetw=g&hvrand=1136516436724176260 5&hvpone=&hvptwo=&hvqmt=&hvdev=c&hvdvcmdl=&hvlocint=&hvlocphy=9021511&hvtargi d=pla-570727816716&psc=1 (last visited Sept. 30, 2020), *with Arizona Green Tea with Ginseng and Honey - 12pk/11.5 fl oz Cans*, TARGET, https://www.target.com/p/arizona-green-tea-with-

62.     Consumers willingly pay a premium for products such as the one at issue here and expect that the products' advertising will conform to the ingredients and specific representations on the packaging.

63.     As a result, Defendant's misrepresentation regarding its Product being "lightly sweetened", which appears prominently on the front of the label, is material to consumers who purchase Defendant's Product because such consumers believe the representation to be true. In other words, consumers believe they are purchasing a "lightly sweetened" product which is low in sugar content and pass over other cheaper alternatives to make a purchase decision that better suits their health preferences and lifestyle.

64.     Defendant including the phrase "lightly sweetened" on its Product is intended to appeal specifically to consumers that desire a healthy product that contains a minimal amount of sugar and induce them to purchase their product.

65.     Defendant's Product's label and website both prominently include the "lightly sweetened" language.  Images of an example of one Defendant's cans and corresponding description on the website are reproduced below:[17]

---

ginseng-and-honey-12pk-11-5-fl-oz-cans/-/A-14752521?ref=tgt_adv_XS000000&AFID=google_pla_df&fndsrc=tgtao&CPNG=PLA_Grocery%2BShopping_Local&adgroup=SC_Grocery&LID=700000001170770pgs&network=g&device=c&location=9021511&ds_rl=1246978&ds_rl=1248099&gclid=CjwKCAjw2dD7BRASEiwAWCtCb5NMZoOAJnQE4fVSQg1keH-Jx2HF77tf7Qg0HJNqgJYdYJmQ0DNz_xoCWp8QAvD_BwE&gclsrc=aw.ds. (last visited Sept. 30, 2020).

[17] As discussed above, the Product is available in a variety of flavors. However, all make the same "lightly sweetened" representation and all contain the same amount of added sugar. *See supra* note 7. In addition, all flavors have the same "light sweetened" language featured prominently on the website as shown in the first picture below.





66.     The representation that the tea is "lightly sweetened" appears prominently, in large type, on the front of the can.

67.     Such a representation is material to consumers who desire to decrease their sugar consumption by purchasing a product low in sugar.

68.     Because Steaz Tea is not "lightly sweetened" but instead is 'high' in added sugars, Defendant's marketing, advertising and labeling of the Product is false and misleading.  Because of

Defendant's deceptive advertising practices, consumers, including Plaintiffs, were and continue to be fraudulently induced to purchase the Products and have suffered damages.

## CLASS ACTION ALLEGATIONS

### Class Definitions

69.     Plaintiffs bring this action on behalf of themselves and the members of the following class (the "Class"):

> All persons residing in the United States who, during the maximum period of time permitted by law, purchased Steaz Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

70.     Alternatively, Plaintiff Christopher Morgan brings this action on behalf of himself and the members of the following subclass:

> All persons residing in Alaska who, during the maximum period of time permitted by law, purchased Steaz Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

71.     Alternatively, Plaintiffs Melanie Barber and Molly Brown bring this action on behalf of themselves and the members of the following subclass:

> All persons residing in California who, during the maximum period of time permitted by law, purchased Steaz Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

72.     Alternatively, Plaintiff Valerie Wells brings this action on behalf of herself and the members of the following subclass:

> All persons residing in Illinois who, during the maximum period of time permitted by law, purchased Steaz Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

73.     Alternatively, Plaintiff Jesse Gonzalez brings this action on behalf of himself and the members of the following subclass:

> All persons residing in Massachusetts who, during the maximum period of time permitted by law, purchased Steaz Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

74.     Alternatively, Plaintiffs Lamartine Pierre Jr and Shannon Hood bring this action on behalf of themselves and the members of the following subclass:

> All persons residing in New York who, during the maximum period of time permitted by law, purchased Steaz Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

75.     Alternatively, Plaintiff Stephanie Smith brings this action on behalf of herself and the members of the following subclass:

> All persons residing in Oklahoma who, during the maximum period of time permitted by law, purchased Steaz Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

76.     Alternatively, Plaintiff Danielle Graham brings this action on behalf of herself and the members of the following subclass:

> All persons residing in Pennsylvania who, during the maximum period of time permitted by law, purchased Steaz Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

77.     Alternatively, Plaintiff Amie Deleon brings this action on behalf of herself and the members of the following subclass:

> All persons residing in Texas who, during the maximum period of time permitted by law, purchased Steaz Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

78.     Alternatively, Plaintiffs Jeannette Rodriguez and Shanna Her bring this action on behalf of themselves and the members of the following subclass:

All persons residing in Wisconsin who, during the maximum period of time permitted by law, purchased Steaz Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

79.    Specifically excluded from this definition are: (1) Defendant, any entity in which any Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

80.    Plaintiff reserves the right to amend the Class definition as necessary.

81.    As used herein, "Class Members" shall mean and refer to the members of the Class, including Plaintiffs.

82.    Plaintiffs seek only damages and equitable relief on behalf of themselves and the Class.

83.    Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

84.    Typicality: The claims of the representative plaintiffs are typical in that Plaintiffs, like all Class Members, purchased Steaz Tea that was manufactured and distributed by Defendant. Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that, inter alia, they have incurred damage due to purchasing a product at a premium price that contained sugar in a manner that Defendant represented was present in a much smaller degree. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members and represents a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

85.     Commonality: There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any individual questions.   These common legal and factual issues include the following:

a)  whether Defendant's claim about the Product discussed above are true, or are misleading, or reasonably likely to deceive;

b)  whether the alleged conduct constitutes violations of the laws asserted herein;

c)  whether Defendant engaged in false or misleading advertising;

d)  whether Plaintiffs and the members of the Classes were damaged by Defendant's conduct;

e)  whether Plaintiffs and Class members are entitled to damages and equitable relief; and

f)  whether Plaintiffs and Class members are entitled to an award of punitive damages.

86.     Adequate Representation: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

87.     Predominance and Superiority: Plaintiffs and Class Members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to

multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## CAUSE OF ACTION

### *Unjust Enrichment*

### (On Behalf of the Nationwide Class)

88.    Plaintiffs bring this count on behalf of themselves and the Class and repeat and re-allege all previous paragraphs, as if fully included herein.

89.    As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefited from the purchase of its Product by Plaintiffs and the Class.

90.    Defendant has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of its misconduct, Plaintiffs and the Class did not receive a product of the quality, nature, fitness, or value that had been represented by Defendant, and that reasonable consumers expected.

91.    Defendant has been unjustly enriched by its fraudulent and deceptive withholding of benefits to Plaintiffs and the Class at the expense of these parties.

92.    Equity and good conscience militate against permitting Defendant to retain these profits and benefits.

93.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class suffered injury and seek an order directing Defendant's disgorgement and the return to Plaintiffs and the Class of the amount each Class Member improperly paid to Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

a.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel;

b.  For an order of equitable monetary relief; and

c.  For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs demand a trial by jury on all claims so triable.


Dated: October 6, 2020

Respectfully submitted,

<u>/s/ *Charles E. Schaffer*</u>
Charles E. Schaffer
David C. Magagna Jr.
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

Gary E. Mason *
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
gmason@masonllp.com

Gary M. Klinger*
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60630
gklinger@masonllp.com

Jeffrey S. Goldenberg*
**GOLDENBERG SCHNEIDER L.P.A.**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
jgoldenberg@gs-legal.com

*Attorneys for Plaintiffs*
*\*Applications for pro hac vice to follow*