**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAMARTINE PIERRE JR., et al., | CIVIL ACTION NO. 2:20-CV-04934-GJP |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| THE HEALTHY BEVERAGE COMPANY, LLC, | |
| Defendant. | |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION**
**TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)**

<div style="margin-left:50%">

Michael Eidel, Esquire
Clair E. Wischusen, Esquire
Attorney I.D. Nos. 94278; 306752
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Phone:  (215) 299-2000
Fax:  (215) 299-2150
Email:  meidel@foxrothschild.com
        cwischusen@foxrothschild.com

*Attorneys for Defendant*

</div>

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ................................................................. 1

II. STATEMENT OF FACTS .................................................................... 3

    A.  The Products ....................................................................... 3

    B.  Plaintiffs' Allegations ......................................................... 4

III. LEGAL STANDARDS ...................................................................... 6

    A.  Rule 12(b)(1): Standing ......................................................... 6

    B.  Rule 12(b)(6): Failure to State a Claim ......................................... 6

IV. ARGUMENT ................................................................................ 7

    A.  Plaintiffs Lack Standing to Pursue Their Claims ................................. 7

        1.  Plaintiffs Fail to Sufficiently and Plausibly Allege an Injury-in-Fact........ 7

        2.  Plaintiffs Lack Standing to Assert a Nationwide Unjust Enrichment Claim .............................................................................12

    B.  Plaintiffs Fail To State a Claim for Unjust Enrichment...........................15

        1.  Plaintiffs Cannot State a Nationwide Unjust Enrichment Claim. ...........15

        2.  Plaintiffs Fail To State a Plausible Theory of Deception ........................16

        3.  Plaintiffs' Unjust Enrichment Claims Fails For Additional Reasons Under the Laws of Plaintiffs' Home States .............................................19

            a.  Unjust Enrichment is Not an Independent Cause of Action Under California and Texas Law...................................................19

            b.  Plaintiffs Do Not Plead the Lack of Adequate Remedies at Law, Thus Barring Their Claim Under Alaska, Illinois, Massachusetts, and Oklahoma Law .............................................20

            c.  Plaintiffs Do Not Allege They Conferred a Direct Benefit on Defendants As Required Under New York and Wisconsin Law ......................................................................................20

            d.  Plaintiffs Do Not Allege Defendant Failed to Provide a Good or Service As Required Under Pennsylvania Law.......................21

i

V.      CONCLUSION ............................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..............................................................................................6, 7

*In re Avandia Mktg., Sales Practices and Prod. Liab. Litig.,*
2011 WL 4007908 (E.D. Pa. Sept. 7, 2011) .......................................................22

*Ballentine v. United States,*
486 F.3d 806 (3d Cir. 2007) ..................................................................................6

*Belfiore v. Procter & Gamble Co.,*
311 F.R.D. 29 (E.D.N.Y. 2015) ....................................................................17, 18

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...............................................................................................6

*Boring v. Google, Inc.,*
2010 WL 318281 (3d Cir. Jan. 28, 2010) ...........................................................21

*Chieftain Royalty Co. v. Dominion Oklahoma Texas Expl. & Prod., Inc.,*
2011 WL 9527717 (W.D. Okla. July 14, 2011).................................................20

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ...............................................................................................13

*Clark v. Perfect Bar,*
2018 WL 7048788 (N.D. Cal. Dec. 21, 2018).....................................................17

*DaimlerChrysler Corp. v. Cuno,*
547 U.S. 332 (2006) .............................................................................................12

*Danvers Motor Co., Inc. v. Ford Motor Co.,*
432 F.3d 286 (3d Cir. 2005) ..................................................................................7

*Doss v. Homecomings Fin. Network, Inc.,*
210 S.W.3d 706 (Tex. App. 2006, pet. denied) ..................................................19

*In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig,*
2013 WL 5503308 (D.N.J. Oct. 2, 2013) ............................................................13

*Emirat AG v. High Point Printing LLC,*
248 F. Supp. 3d 911 (E.D. Wisc. 2017) ..............................................................21

*Erie Railroad Co. v. Tompkins*,
    304 U.S. 64 (1938) ..........................................................................................15

*Estrada v. Johnson & Johnson*,
    2017 WL 2999026 (D.N.J. July 14, 2017) .......................................................8, 9

*Estrella-Rosales v. Taco Bell Corp.*,
    2020 WL 1685617 (D.N.J. Apr. 7, 2020)............................................................16

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) .......................................................................16, 18

*Finkelman v. Nat. Football League*,
    810 F.3d 187 (3d Cir. 2016) .......................................................................6, 10

*In re Flonase Antitrust Litig.*,
    610 F. Supp. 2d 409 (E.D. Pa. 2009)............................................................15, 16

*Grande v. Starbucks*,
    2020 WL 4937105 (E.D. Pa. Aug. 24, 2020) .........................................................6

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007)...............................................................14

*Guinn v. Hoskins Chevrolet*,
    836 N.E.2d 681 (Ill. App. 2005) .......................................................................20

*Hancock v. Chicago Title Ins. Co.*,
    635 F. Supp. 2d 539 (N.D. Tex. 2009).................................................................19

*Hubert v. General Nutrition Corp.*,
    2017 WL 3971912 (W.D. Pa. Sept. 8, 2017).......................................................8, 9

*Jogani v. Superior Court*,
    165 Cal.App.4th 901 (2008) ...........................................................................19

*In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices
    and Liability Litig.*,
    903 F.3d 278 (3d Cir. 2018) .............................................................................9

*Koronthaly v. L'Oreal USA, Inc.*,
    374 F. App'x 257 (3d Cir. 2010) ...................................................................10, 11

*U.S. ex rel. Krahling v. Merck & Co., Inc.*,
    44 F. Supp. 3d 581 (E.D. Pa. 2014) ...............................................3, 12, 15, 16

*La Vigne v. Costco Wholesale Corp.*,
    284 F. Supp. 3d 496 (S.D.N.Y. 2018), *aff'd*, 772 F. App'x 4 (2d Cir. 2019)..................17, 18

iv

*Lackner v. Glosser,*
    892 A.2d 21 (Pa. Super. 2006) ........................................................................... 21

*Lewis v. Casey,*
    518 U.S. 343 (1996) ............................................................................................ 12

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .............................................................................................. 7

*In re Magnesium Oxide Antitrust Litig.,*
    2011 WL 5008090 (D.N.J. Oct. 20, 2011) ......................................................... 12

*Mazur v. Milo's Kitchen, LLC,*
    2013 WL 32452013 (W.D. Pa. June 25, 2013) ................................................... 22

*Mazza v. Am. Honda Motor Co.,*
    666 F.3d 581 (9th Cir. 2012) .............................................................................. 15

*N.Y. City Health & Hosp. Corp. v. Wellcare of N.Y., Inc.,*
    35 Misc. 3d 250 (N.Y. Sup. Ct. 2011) ................................................................. 21

*In re Niaspan Antitrust Litig.,*
    42 F. Supp. 3d 735 (E.D. Pa. 2014) ......................................................... 2, 12, 13

*In re OSB Antitrust Litig.,*
    2007 WL 2253425 (E.D. Pa. Aug. 3, 2007) ....................................................... 12

*In re Packaged Ice Antitrust Litig.,*
    779 F. Supp. 2d 642 (E.D. Mich. 2011) ............................................................. 12

*Parks v. Dick's Sporting Goods, Inc.,*
    2006 WL 1704477 (W.D.N.Y. June 15, 2006) ................................................... 14

*Peter v. Progressive Corp.,*
    2006 WL 438658 (Alaska Feb. 26, 2006) .......................................................... 20

*Prado-Steiman ex rel. Prado v. Bush,*
    221 F.3d 1266 (11th Cir. 2000) .......................................................................... 14

*Rapp v. Green Tree Servicing, LLC,*
    302 F.R.D. 505 (D. Minn. 2014) ........................................................................ 15

*Redwood Resort Props., LLC v. Holmes Co.,*
    2006 WL 3531422 (N.D. Tex. Nov. 27, 2006) ................................................... 19

*In re Refrigerant Compressors Antitrust Litig.,*
    2012 WL 2917365 (E.D. Mich. July 17, 2012) ................................................. 14

*Reyes v. Crystal Farms Refrigerated Distribution Co.*,
   2019 WL 3409883 (E.D.N.Y. July 26, 2019) ...................................................16

*Salazar v. Honest Tea, Inc.*,
   74 F. Supp. 3d 1304, 1317 (E.D. Cal. 2014) ....................................................18

*Santagate v. Tower*,
   833 N.E.2d 171 (Mass. App. Ct. 2005) .............................................................20

*Smith v. Ford Motor Co.*,
   749 F.Supp. 980 (N.D. Cal. 2010) .....................................................................19

*Smith v. Pizza Hut, Inc.*,
   2011 WL 2791331 (D. Colo. July 14, 2011) .............................................. 12, 14

*Spokeo, Inc. v. Robins*,
   --- U.S. ---, 136 S. Ct. 1540 (2016) ..................................................................7

*Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris, Inc.*,
   171 F.3d 912 (3d Cir. 1999) ..............................................................................21

*Stephenson Oil Co. v. Citgo Petroleum Corp.*,
   271 F.R.D. 323 (N.D. Okla. 2010) ....................................................................14

*Stone v. Crispers Restaurants, Inc.*,
   2006 WL 2850103 (M.D. Fla. Oct. 3, 2006) .....................................................14

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................................................6

*Tatum v. Takeda Pharm. North America, Inc.*,
   2012 WL 5182895 (E.D. Pa. Oct. 19, 2012) ......................................... 21, 22, 23

*Thomas v. Metro. Life Ins. Co.*,
   540 F. Supp. 2d 1212 (W.D. Okla.2008)............................................................14

*Toll Bros., Inc. v. Twp. of Readington*,
   555 F.3d 131 (3d Cir. 2009) ..............................................................................7

*Truxel v. Gen Mills Sales, Inc.*,
   2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019).........................................18

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa. 2009).........................................6, 12, 13, 14, 15, 16

*Whitemore v. Arkansas*,
   495 U.S. 149 (1990) ........................................................................................6, 7

*Xi Chen Lauren v. PNC Bank, N.A.*,
    296 F.R.D. 389 (W.D. Pa. 2014)........................................................................... 12, 13, 14

*Young v. Johnson & Johnson*,
    2012 WL 1372286 (D.N.J. Apr. 19, 2012) .....................................................................9, 11

*Zafarana v. Pfizer, Inc.*,
    724 F.Supp.2d 545 (E.D. Pa. 2010) ...................................................................................22

*Zaycer v. Strum Foods, Inc.*,
    896 F. Supp. 2d 399 (D. Md. 2012) ...................................................................................14

**Statutes**

28 U.S.C. § 2072(b) ...............................................................................................................13

U.S. Const. art. III, § 2, cl. 1 ....................................................................................................7

**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................................................................1, 6

Fed. R. Civ. P. 12(b)(6) .......................................................................................................1, 6

Fed. R. Civ. P. 12(h)(3) ...........................................................................................................1

Fed. R. Civ. P. 23 ...................................................................................................................13

Fed. R. Civ. P. 82 ...................................................................................................................14

Defendant The Healthy Beverage Company, LLC (erroneously sued under this name, presently known as "Steaz, LLC, a Texas limited liability company")[1] (hereafter, "Defendant"), by and through its attorneys, Fox Rothschild LLP, moves to dismiss the Complaint filed by Plaintiffs Lamartine Pierre Jr., Danielle Graham, Amie Deleon, Jesse Gonzalez, Jeannette Rodriguez, Valerie Wells, Stephanie Smith, Shannon Hood, Shanna Her, Melanie Barber, Christopher Morgan, and Molly Brown (collectively, "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## I.    PRELIMINARY STATEMENT

Plaintiffs are twelve purchasers of Steaz® Organic Lightly Sweetened Iced Green Tea who allege Defendant misled them about the sugar content in the product.  Wholly undermining Plaintiffs' claim is the fact that the product label and website plainly and explicitly state the amount of sugar, the amount of added sugar, and the percent daily value of sugar in the product.  In spite of this, Plaintiffs seek to represent a nationwide class of consumers pretending they could not determine the amount of sugar in the product.  Plaintiffs assert a single count for unjust enrichment based on their unsupported belief that the product was lower in sugar than the product label and website say it is because the label describes the taste as "lightly sweetened."  Plaintiffs' Complaint should be dismissed for lack of standing and failure to state a claim.

First, Plaintiffs lack standing because they fail to sufficiently and plausibly allege an injury-in-fact.  Conjectural or hypothetical injury does not confer Article III standing.  Although Plaintiffs claim they understood "lightly sweetened" to mean that the Product was relatively lower in sugar,

---

[1] Plaintiffs erroneously sued "The Healthy Beverage Company, LLC."  Upon information and belief, Plaintiffs intended to sue "Healthy Beverage, LLC," a Pennsylvania limited liability company, d/b/a The Healthy Beverage Company.  Effective November 3, 2020, the legal entity "Healthy Beverage, LLC," a Pennsylvania limited liability company with the registered fictitious name, "The Healthy Beverage Company," no longer exists, and has been converted to "Steaz, LLC," a Texas limited liability company.

nowhere do Plaintiffs allege – as required to state an economic injury for Article III standing – that Plaintiffs received a product that did not work for its intended use, or that was worth objectively less than what one could reasonably expect.  Plaintiffs do not even allege that they consumed the Product and they certainly do not allege physical harm.  While Plaintiffs hypothesize consumers paid an unspecified "premium" for "lightly sweetened" iced tea, the Complaint nowhere alleges facts as to what the premium was, or why Plaintiffs believe consumers pay *more* for a product that contains *less* of a quality ingredient like organic cane sugar.  Plaintiffs allege they *would* repurchase the Product if "reformulated" to be truly "lightly sweetened" (Compl. ¶¶ 39-50), but allege no facts as to what "lightly sweetened" means to them or what premium they *would* pay for it.  Thus, Plaintiffs affirmatively allege they would *not* be injured by consuming sugar in the Product *per se*, yet wholly fail to allege at what level of sugar their injury would supposedly begin.  Because this kind of "conjectural" or "hypothetical" injury does not confer Article III standing, Plaintiffs' Complaint should be dismissed.

Second, even if Plaintiffs could plausibly allege injury in fact – which they do not – Plaintiffs lack standing to bring a nationwide claim for unjust enrichment because Plaintiffs only allege they suffered an injury in nine states.  It is well established that "named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside in or in which they suffered no injury."  *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 757-59 (E.D. Pa. 2014) (quotation omitted).  Because Plaintiffs lack standing to assert claims under the laws of states in which they do not reside or in which they suffered no alleged injury, the Court should dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction.

Third, Plaintiffs fail to state a claim for unjust enrichment because they fail to identify which state law supposedly applies.  Plaintiffs cannot state a "nationwide" claim for unjust

enrichment. This Court has repeatedly dismissed claims for unjust enrichment where the plaintiffs failed to invoke the law of any particular jurisdiction. *U.S. ex rel. Krahling v. Merck & Co., Inc.*, 44 F. Supp. 3d 581, 609 (E.D. Pa. 2014) (collecting cases).

Fourth, although Plaintiffs' unjust enrichment claim is not cognizable at all, Plaintiffs' claim fails on the separate and independent ground that it is premised on an implausible theory of deception. No reasonable consumer would interpret the statement "Lightly Sweetened" – a subjective claim about the product's taste – to mean that the product is lower in sugar than is explicitly stated on the label. Several courts have dismissed similar "sugar" claims at the pleading stage, and their rulings provide persuasive reasoning for this Court to do so as well.

Fifth, Plaintiffs' unjust enrichment claim fails for multiple additional reasons under the laws of Plaintiffs' nine home states (*i.e.*, Alaska, California, Illinois, Massachusetts, New York, Oklahoma, Pennsylvania, Texas, and Wisconsin). Two of the states, California and Texas, do not even recognize unjust enrichment as an independent cause of action. For the seven states that do, Plaintiffs do not and cannot allege the elements necessary to state a claim, including a plausible theory of deception, the lack of an adequate remedy at law, the existence of a direct relationship, and the failure to allege that Defendant refused to provide the product at issue. These defects doom Plaintiffs' claim.

For all these reasons, this Court should dismiss Plaintiffs' Complaint with prejudice.

## II.     STATEMENT OF FACTS

### A.     The Products

Defendant manufactures and distributes Steaz® Organic Iced Green Tea products in a variety of flavors, including the Lightly Sweetened Blueberry Pomegranate flavor at issue here (the "Product"). Compl. [ECF # 1] ¶¶ 1, 20 at n. 7, 65. The Product is made with fair trade,

3

organic green tea blended with other natural flavors and ingredients and sweetened with organic cane sugar.[2]

Each Product label includes a "Nutrition Facts" panel in bold that lists, among other things: (1) the calories; (2) the total amount of sugar; (3) the amount of added sugar; and (4) the percentage daily value of sugar. *Id.* at ¶ 65. The Nutrition Facts panel also appears on the Product website. *Id.* As indicated on the Product label and website, a 16 fluid-ounce can contains 80 calories, 20 grams of sugar, all of which is added sugar, and which constitutes 40% daily value of added sugar. *Id.* The label and website describe the Product's taste as "Lightly Sweetened." *Id.* Neither the label nor the website state that the Product is "low in sugar" or "low in added sugar." *Id.*



B.    **Plaintiffs' Allegations**

Plaintiffs allege that the "Lightly Sweetened" statement on the Product label led them to believe that the Product is "low in sugar." Compl. ¶¶ 39-50. Plaintiffs contend that 20 grams of sugar is "high in sugar." *Id.* at ¶ 5. Plaintiffs do not state what they believe "low in sugar" or "high in sugar" to mean or what amount of sugar they believe would be acceptable for the Product.

---

[2] https://steaz.com/lightly-sweetened/ (last accessed Jan. 8, 2021).

4

Plaintiffs claim that Defendant charges a "premium" for the Product. *Id.* at ¶ 7. Plaintiffs do not plead the amount of the alleged premium, except to compare the Product's price to that of another iced tea beverage that is neither organic nor fair trade and uses high fructose corn syrup.[3] *Id.* at ¶ 61 and n. 16. Plaintiffs claim they "would not have purchased or paid more for the Product had [they] known or w[ere] aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label." *Id.* at ¶¶ 39-50. Plaintiffs do not state whether any of the twelve Plaintiffs read the Nutrition Facts panel on the multiple occasions when they allegedly purchased the Product over the past four years. *Id.* However, they paste a copy of the Nutrition Facts panel in their Complaint showing they are aware that both the label and website contain a Nutrition Fact panel that prominently displays the sugar content in the Product. *Id.* at ¶ 65.

Plaintiffs reside in and allegedly purchased the Products in nine states (Alaska, California, Illinois, Massachusetts, New York, Oklahoma, Pennsylvania, Texas and Wisconsin). *Id.* at ¶¶ 22-33, 39-50. Each Plaintiff claims to have purchased the Product "several times over the last four years" exclusively in his or her home state. *Id.* at ¶¶ 39-50. Plaintiffs do not allege when and how many times they allegedly purchased the Product or what flavors they purchased. *Id.* at ¶¶ 39-50. Plaintiffs seek "equitable monetary relief," attorneys' fees and expenses, and costs of suit. *Id.* at pp. 19-20.

---

[3] *See* https://www.target.com/p/arizona-green-tea-with-ginseng-and-honey-23-fl-oz-can/-/A-14752526?ref=tgt_adv_XS000000&AFID=google_pla_df&fndsrc=tgtao&DFA=71700000012732781&CPNG=PLA_Grocery%2BShopping_Local&adgroup=SC_Grocery&LID=700000001170770pgs&LNM=PRODUCT_GROUP&network=g&device=c&location=9007179&targetid=pla-867280311487&ds_rl=1246978&ds_rl=1248099&gclid=EAIaIQobChMIvICb_unJ7QIVQZ-GCh14wQ2tEAQYAiABEgLJQ_D_BwE&gclsrc=aw.ds (last accessed Jan. 8, 2021).

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(1): Standing

Federal Rule of Civil Procedure 12(b)(1) governs a motion to dismiss for lack of standing because "standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  Standing is a threshold issue for any case, including class actions.  *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009).  Plaintiffs, as the parties invoking federal jurisdiction, bear the burden to establish standing "for each type of relief sought."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  A court may not create jurisdiction by curing deficient standing allegations.  *Whitemore v. Arkansas*, 495 U.S. 149, 155-56 (1990).  To survive a motion to dismiss for lack of standing, a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue."  *Finkelman v. Nat. Football League*, 810 F.3d 187, 194 (3d Cir. 2016) (citation omitted).

### B.   Rule 12(b)(6): Failure to State a Claim

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  *Grande v. Starbucks*, 2020 WL 4937105, at *2 (E.D. Pa. Aug. 24, 2020).  To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  In assessing the plausibility of a plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007).  Such allegations are "not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  The Court then assesses "the

'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680.

## IV.   ARGUMENT

### A.   Plaintiffs Lack Standing to Pursue Their Claims

Standing is a threshold jurisdictional requirement derived from Article III's case-or-controversy requirement. U.S. Const. art. III, § 2, cl. 1. To satisfy "the irreducible constitutional minimum of standing," Plaintiffs must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Although all three elements must be met, "the injury-in-fact element is often determinative." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009); *see also Spokeo*, 136 S. Ct. at 1547 (observing that injury-in-fact is the "[f]irst and foremost" of standing's three elements) (citation omitted).

### 1.   Plaintiffs Fail to Sufficiently and Plausibly Allege an Injury-in-Fact

To establish an injury-in-fact, Plaintiffs must plead facts showing the "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 561. Although "[i]njury-in-fact is not Mount Everest," *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005), the complaint still must "clearly and specifically set forth facts sufficient to satisfy this requirement." *Whitmore v. Arkansas*, 495 U.S. 149, 156 (1990) (citation omitted).

Here, Plaintiffs have not sufficiently pled an injury-in-fact. The essence of Plaintiffs' allegations set forth in the Complaint is their contention that the Product contains excessive sugar – although they do not aver how much sugar they deem excessive. Plaintiffs allege that sugar consumption is harmful and that Defendants misled consumers by labeling the Product "lightly

7

sweetened." Compl. ¶ 3. Plaintiffs cite to literature linking excess sugar consumption to obesity and heart disease, among other health problems. *Id.* at ¶¶ 11-21. However, Plaintiffs do not allege that they themselves suffered any adverse health consequences from consuming the Product, and affirmatively allege they would repurchase the Product if it was reformulated and therefore continued to contain sugar. *Id.* at ¶¶ 39-50. Indeed, Plaintiffs do not even allege that they consumed the Product, merely averring that it was "purchased." *Id.* at ¶¶ 39-50. Plaintiffs contend they were somehow misled into purchasing the Product because they believed the Product to be lower in sugar than the Nutrition Fact panel explicitly states. *Id.* at ¶¶ 39-50. As a result of the "lightly sweetened" statement, Plaintiffs claim they purchased a Product they otherwise would not have purchased or paid more for the Product than they otherwise would have paid. *Id.* at ¶¶ 39-50. Based on these allegations, Plaintiffs appear to assert two theories of economic injury: (1) Plaintiffs paid a price premium for the Product; and (2) Plaintiffs received an "inferior" Product because it was not "low in sugar." *Id.* at ¶ 9. Both of Plaintiffs' theories fail.

First, Plaintiffs' "price premium" allegations are insufficient to establish an economic injury. While Plaintiffs aver that the statement "lightly sweetened" caused them to pay more for the Product than they otherwise would have, this "threadbare" allegation, without any supporting factual allegations, does not sufficiently establish that Plaintiffs suffered an injury-in-fact. Courts in this Circuit routinely reject similar speculative and unsubstantiated price premium allegations as insufficient to establish injury-in-fact. *See Hubert v. General Nutrition Corp.*, 2017 WL 3971912, at *8 (W.D. Pa. Sept. 8, 2017) (holding plaintiffs' broad averment that GNC's alleged omissions and misrepresentations caused them to pay more for supplements than they otherwise would have paid, without any supporting factual allegations, was insufficient to establish an injury-in-fact); *Estrada v. Johnson & Johnson*, 2017 WL 2999026, at *15 (D.N.J. July 14, 2017)

8

("threadbare" allegation that, as a result of defendant's misrepresentation, plaintiff purchased defendant's baby power product at a premium, was insufficient to establish injury-in-fact); *Young v. Johnson & Johnson*, 2012 WL 1372286, at *4 (D.N.J. Apr. 19, 2012) (rejecting plaintiff's contention that he satisfied injury-in-fact requirement based on allegations he paid a premium price because he believed Benecol® was healthy, when in fact it was not).

As in *Hubert*, *Estrada*, and *Young*, Plaintiffs' vague and conclusory price premium allegations are insufficient to establish an injury-in-fact because they do not even attempt to explain why Plaintiffs and other consumers supposedly pay a "premium" price for iced tea that is "low in sugar," how much of a premium they pay, and how low the sugar contents needs to be to justify a premium. *See In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Liability Litig.*, 903 F.3d 278, 288 (3d Cir. 2018) (Article III requires a plaintiff "to do more than simply pair a conclusory assertion of money lost with a request that a defendant pay up").

Plaintiffs' allegations that they paid a premium for the Product because they believed it was "low in sugar" is also at odds with other allegations in the Complaint in which Plaintiffs allege they paid a premium for the Product because it is organic. Compl. ¶¶ 19, 60. Plaintiffs do not allege whether the premium consumers paid for the Product being organic is the same or different than the premium they allegedly paid for the Product being "low in sugar," and how they propose to parse that out. Plaintiffs' price premium theory is also flawed because it relies on the counterintuitive assumption that consumers pay *more* for a product that contains *less* of a quality ingredient like organic cane sugar. *Id.* at ¶ 9. Indeed, Plaintiffs affirmatively allege they *would* repurchase the Product with the "lightly sweetened" representation on the label if it contained a lower amount of sugar and, thus, under their theory, they would pay more for the Product if it

contained less sugar. *Id.* at ¶¶ 39-50 (Plaintiffs "would purchase the Product again in the future if the Product was remedied or reformulated to be *in accordance with Defendant's representation on the label*.") (emph. added)).  Plaintiffs' alleged harm is untethered to any plausible factual allegation, defies basic economic logic, and thus fails to confer Article III standing.  *Finkelman*, 810 F.3d at 202 ("Article III requires more than this kind of conjecture.").  These issues doom Plaintiffs' premium price theory of economic harm.

Second, Plaintiffs' inferior product allegations do not suffice to establish Plaintiffs suffered an economic injury-in-fact.  As stated, Plaintiffs allege they paid money for a Product advertised as "lightly sweetened" and they received an "inferior" Product that they otherwise would not have purchased if they had known about the sugar content.  *See* Compl. ¶¶ 8-9, 39-50.  However, the Third Circuit has rejected similar arguments absent an allegation that the product failed to work for its intended purpose or was worth objectively less than what one could expect.  *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010).

In *Koronthaly*, the Third Circuit affirmed the district court's dismissal for lack of standing where the plaintiff claimed defendant deceived her into purchasing lipstick containing lead that she would not have purchased had she known about the lead content.  *Id.* at 258.  In finding no standing, the Third Circuit deemed it significant that the plaintiff did not allege she suffered any adverse health consequences from using the lipstick, and her subjective allegation that trace amounts of lead in the lipstick were unacceptable to her was not an injury-in-fact.  *Id.* at 259.  In rejecting plaintiff's claim that the injury-in-fact was the loss of the "benefit of the bargain," the Third Circuit explained that she mistakenly relied on contract law.  *Id.*  Because the plaintiff's lipstick purchases were not made pursuant to a contract, she could not have been denied the benefit of any bargain.  *Id.*  The Third Circuit held that "[a]bsent any allegation that [the plaintiff] received

a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect, [she] has not demonstrated a concrete injury-in-fact." *Id.*

Similarly, in *Young v. Johnson & Johnson*, 2012 WL 1372286, at *1 (D.N.J. 2012), the district court determined that the plaintiff lacked standing in a case involving the alleged misrepresentation of the nutritional content and health benefits of the butter/margarine substitute Benecol®. The court held that the plaintiff did not sufficiently plead an injury-in-fact because he merely alleged that he purchased Benecol® on multiple occasions during a five-year period, but he did not allege that he actually consumed it or that he suffered any adverse health effects from the product. *Id.* at *3. The court rejected plaintiff's contention that he satisfied the injury-in-fact requirement based on allegations he was deprived of the "benefit of the bargain," received an inferior product, and paid a premium price because he believed the product was healthy, when in fact it was not. *Id.* at *4. In finding no economic injury, the court explained that the plaintiff's purchases of Benecol® were not made pursuant to a contract, and he did not sufficiently allege how he paid a premium for it or received a product that did not deliver the advertised benefits. *Id.* (citing *Koronthaly*, 374 Fed.Appx. 259).

This same analysis requires that Plaintiffs' claim be dismissed here. Plaintiffs' claim amounts to no more than their subjective disagreement with the statement "lightly sweetened" because Plaintiffs deem the sugar content too high. However, a consumer is not injured whenever a product is not formulated in a manner the consumer believes is ideal. Plaintiffs' allegations are insufficient to establish injury-in-fact, particularly in light of Plaintiffs' failure to allege that they actually consumed the Product or that they suffered any adverse health consequences from the Product and the explicit label and website disclosure stating the amount of sugar, the amount of added sugar, and the percent daily value of sugar in the Product. Plaintiffs' purchases were not

11

made pursuant to a contract and Plaintiffs do not allege that the Product failed to work for its intended purpose or that it was worth objectively less than what one could reasonably expect. Thus, Plaintiffs fail to sufficiently and plausibly allege an injury-in-fact and therefore lack Article III standing.

### 2.    Plaintiffs Lack Standing to Assert a Nationwide Unjust Enrichment Claim

Even if Plaintiffs' allegations were sufficient to establish injury-in-fact – which they are not – Plaintiffs lack standing to bring claims based on the laws of states in which they do not reside.

"[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class. . . ." *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (a plaintiff "must demonstrate standing for each claim he seeks to press.").  It is well established that named plaintiffs "lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."  *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d at 758 (quoting *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011)); *Krahling*, 44 F. Supp. 3d at 602 (same); *Xi Chen Lauren v. PNC Bank, N.A.*, 296 F.R.D. 389, 391 (W.D. Pa. 2014); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 157 (E.D. Pa. 2009); *In re OSB Antitrust Litig.*, 2007 WL 2253425, at *1 (E.D. Pa. Aug. 3, 2007) ("[L]acking named representatives from Arizona, New Mexico, and South Dakota, Plaintiffs do not have standing to maintain a class action in those states.").  Standing does not exist "where named plaintiffs assert analogous causes of action under the laws of many states" because they "cannot specifically tie their injuries to each state," *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *8 (D.N.J. Oct. 20, 2011), "nor [are they] protected by those laws."  *Smith v. Pizza Hut, Inc.*, 2011 WL 2791331, at *8 (D. Colo. July 14, 2011).

This case is no different.  Plaintiffs do not have standing to assert a nationwide unjust enrichment claim because Plaintiffs do not allege they suffered the invasion of a legally protected interest under the laws of all fifty states.  To the contrary, Plaintiffs allege they reside and purchased the Product in only nine states (Alaska, California, Illinois, Massachusetts, New York, Oklahoma, Pennsylvania, Texas, and Wisconsin).  Compl. ¶¶ 22-33, 39-50.  As such, they lack standing to assert unjust enrichment claims under the laws of states other than those nine states and, accordingly, the nationwide class allegations against Defendant should be dismissed.  *See Xi Chen Lauren*, 296 F.R.D. at 391 (granting motion to dismiss where named plaintiff lacked standing to bring common law unjust enrichment claims under the laws of states other than named plaintiff's own state); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d at 758 (same); *see also Wellbutrin*, 260 F.R.D. at 157 (E.D. Pa. 2009) (holding plaintiffs lacked standing to bring claims under the laws of states where no named plaintiff is located and where no member of a named plaintiff purchased the product).

The Court should not delay until class certification to rule on Plaintiffs' Article III standing, as Plaintiffs may argue.  *See In re Wellbutrin*, 260 F.R.D. at 155 (declining to delay standing analysis until class certification).  A consensus of courts hold that determining standing is an essential precursor to certification proceedings because:  (1) constitutional standing is a "threshold requirement," *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); (2) "named plaintiffs cannot rely on unidentified persons within those [foreign] states to state a claim for relief," *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*, 2013 WL 5503308, at *11 (D.N.J. Oct. 2, 2013) (internal quotation marks omitted); and (3) the Article III standing analysis cannot be merged with the Rule 23 class certification analysis since under the federal Rule Enabling Act a procedural rule cannot alter a constitutional minimum.  *See* 28 U.S.C. § 2072(b) (procedural

13

rules "shall not abridge, enlarge or modify any substantive right"); *see also* Fed. R. Civ. P. 82 (procedural rules "do not extend or limit the jurisdiction of the district courts").[4]  This Court has observed that significant case management concerns also compel dismissing multi-state class allegations at the motion to dismiss stage:

> The alternative proposed by the plaintiffs would allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries in potentially every state in the Union. At the conclusion of that discovery, the plaintiffs would apply for class certification, proposing to represent the claims of parties whose injuries and modes of redress they would not share. That would present the precise problem that the limitations of standing seek to avoid. The Court will not indulge in the prolonged and expensive implications of the plaintiffs' position only to be faced with the same problem months down the road.

260 F.R.D. at 155.  For these same reasons, the Court should not delay the inevitable dismissal of Plaintiffs' nationwide class allegations; the Court should dismiss them now.

---

[4] *See, e.g., Xi Chen*, 296 F.R.D. at 390 ("deferring ruling on standing until the close of the class certification process would not be consistent with Rule 1 because such deferral would trigger extensive discovery costs and delay"); *In re Refrigerant Compressors Antitrust Litig.*, 2012 WL 2917365, at *7 (E.D. Mich. July 17, 2012) (finding *Wellbutrin* persuasive and "conclud[ing] that the standing issue should be addressed now [as opposed to after class certification]"); *Zaycer v. Strum Foods, Inc.*, 896 F. Supp. 2d 399, 409 (D. Md. 2012) (concluding that the "weight of authority" holds that standing challenge should be resolved before class certification); *Smith v. Pizza Hut, Inc.*, 2011 WL 2791331, at *7 (D.Colo. July 14, 2011) (declining to defer standing ruling until after class certification ruling); *Stephenson Oil Co. v. Citgo Petroleum Corp.*, 271 F.R.D. 323, 332 (N.D. Okla. 2010) ("'[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim.'") (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000)); *Wellbutrin*, 260 F.R.D. at 154 (declining to defer standing issues because "[t]his case does not present an issue that is 'logically antecedent' to a standing inquiry."); *Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 1212, 1225 (W.D.Okla.2008) ("Plaintiffs have not persuaded the court that traditional rules requiring determination of Article III standing issues before class certification issues should not be followed here."); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026-27 (N.D. Cal. 2007) (rejecting argument that standing issue should be postponed until class certification); *Stone v. Crispers Restaurants, Inc.*, 2006 WL 2850103, at *1-2 (M.D. Fla. Oct. 3, 2006) (rejecting contention that review of named plaintiff's standing to sue is premature before the "court decides whether to certify a class); *Parks v. Dick's Sporting Goods, Inc.*, 2006 WL 1704477, *2-3 (W.D.N.Y. June 15, 2006) (holding that a court properly considers standing on a motion to dismiss as opposed to waiting until after ruling on a motion for class certification).

**B.      Plaintiffs Fail To State a Claim for Unjust Enrichment**

**1.      Plaintiffs Cannot State a Nationwide Unjust Enrichment Claim.**

Plaintiffs' unjust enrichment claim is insufficiently pled because Plaintiffs fail to specify which state's laws apply.  Compl. ¶¶ 88-93.  This alone is reason to dismiss Plaintiffs' claim.

As observed by this Court, "the degree of specificity required in a class action alleging unjust enrichment is not a legal question of first impression within this district.  In two prior cases, courts in this district have dismissed Complaints where the plaintiffs failed to invoke the law of any particular jurisdiction."  *Krahling*, 44 F. Supp. 3d at 609 (citing *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 419 (E.D. Pa. 2009) (dismissing complaint where plaintiff failed to specify the state laws invoked); *Wellbutrin*, 260 F.R.D. at 167 ("The plaintiffs fail to link their claim to the law of any particular state.  As a result of this deficiency, the plaintiffs fail to state a cause of action . . . .").

A plaintiff must specify which state's laws apply because "[u]njust enrichment is not a catch-all claim existing within the narrow scope of federal common law."  *Wellbutrin*, 260 F.R.D. at 167 (citations omitted).  Any assertion that the elements of unjust enrichment are substantially the same across all fifty states is wrong.  *See Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 514 (D. Minn. 2014) ("As countless courts have observed, the states' different approaches to, or elements of, unjust enrichment are significant."); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) ("The elements necessary to establish a claim for unjust enrichment also vary materially from state to state.").  "[C]obbling together the elements of a claim of unjust enrichment from the laws of the fifty states is no different from applying federal common law."  *Wellbutrin*, 260 F.R.D. at 167 (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) ("There is no federal general common law.  Congress has no power to declare substantive rules of common law applicable in a state whether they be local in their nature or 'general,' be they commercial law or

a part of the law of torts.  And no clause in the Constitution purports to confer such a power upon the federal courts.")).

Here, as in *Krahling*, *Flonase*, and *Wellbutrin*, Plaintiffs' failure to invoke the law of any particular jurisdiction on their unjust enrichment claim "fail[s] to meet the applicable pleading standards."  *Krahling*, 44 F. Supp. 3d at 609.  As it did in those cases, the Court should dismiss Plaintiffs' unjust enrichment claim for failure to state a claim.  *Krahling*, 44 F. Supp. 3d at 609; *Flonase*, 610 F. Supp. 2d at 419; *Wellbutrin*, 260 F.R.D. at 167.

## 2.    Plaintiffs Fail To State a Plausible Theory of Deception

Plaintiffs' claim also fails under any state's laws because no reasonable consumer would interpret the statement "lightly sweetened" – a subjective claim about the Product's *taste* – to mean "low in sugar."   Such an interpretation would require a consumer to overlook not only the statement's plain meaning, but also the clear disclosure of sugar and added sugar in the Nutrition Facts panel.

Courts routinely dismiss at the pleadings stage false advertising claims premised on facially implausible interpretations of labeling statements.  *See, e.g., Fink v. Time Warner Cable*, 714 F.3d 739, 740 (2d Cir. 2013) (finding it "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."); *Estrella-Rosales v. Taco Bell Corp.*, 2020 WL 1685617, at *2 (D.N.J. Apr. 7, 2020) (same); *see also Reyes v. Crystal Farms Refrigerated  Distribution Co.*, 2019 WL 3409883, at *5 (E.D.N.Y. July 26, 2019) (dismissing unjust enrichment claim based on alleged misrepresentation that failed for lack of plausibility).

In determining whether a reasonable consumer would be misled by a particular advertisement, courts have observed "context is crucial" and "the presence of a disclaimer or similar clarifying language may defeat a claim of deception."  *Fink*, 714 F.3d at 742.  Courts have

dismissed false advertising claims premised on arguably ambiguous statements where the remainder of the label or advertisement eliminates any ambiguity about the challenged statement. *See, e.g., Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context . . . . The entire mosaic is viewed rather than each tile separately."); *see also La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 512-514 (S.D.N.Y. 2018) (holding, on motion to dismiss, that packaging was not misleading because a reasonable consumer would consult the Nutrition Facts label, which accurately disclosed method for calculating product weight), *aff'd*, 772 F. App'x 4 (2d Cir. 2019).

Here, Plaintiff's interpretation of "lightly sweetened" is both contrary to common sense and implausible given the Product's explicit labeling. "Lightly sweetened" refers to the Product's taste – not its sugar content. It is implausible to allege that a reasonable consumer would believe otherwise given that the Nutrition Facts panel – which courts hold a *reasonable* consumer would read – expressly states the sugar content in the Product. To the extent Plaintiffs suggest they only read the statement "lightly sweetened" – and not the Nutrition Facts panel – in determining whether they deemed the sugar content acceptable, Plaintiffs admit that they were *un*reasonable consumers and therefore cannot state a claim. Compl. ¶¶ 39-50.

Courts have rejected similar claims on this same basis. In *Clark v. Perfect Bar*, the court held that no reasonable consumer could be deceived regarding the product's sugar content, including whether or not the product was "healthy," *when the product's label plainly disclosed the amount of sugar in the product*. 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018) ("No consumer, on notice of the actual ingredients described on the packaging including honey and sugar, could reasonably overestimate the health benefits of the bar merely because the packaging

elsewhere refers to it as a health bar . . . . **The honey/sugar content was properly disclosed – that is the end of it – period**.") (emphasis added).

Similarly, in *Truxel v. Gen Mills Sales, Inc.*, the court held that no reasonable consumer could be misled about the sugar content in defendant's cereal products based on objective facts on the front and side of the package:

> [T]he Court finds that Plaintiffs cannot plausibly claim to be misled about the sugar content of their cereal purchases because Defendant provided them with all truthful and required objective facts about its products, on both the side panel of ingredients and the front of the products' labeling. Here too, the actual ingredients were fully disclosed and it was up to the Plaintiffs, as reasonable consumers, to come to their own conclusions about whether or not the sugar content was healthy for them.

2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019).

In *Salazar v. Honest Tea, Inc.*, the court ruled the statement "Just a Tad Sweet" is a subjective and unverifiable statement that cannot form the basis of a consumer protection claim. 74 F. Supp. 3d 1304, 1317 (E.D. Cal. 2014). The court found that "Just a Tad Sweet" is a "vague and non-specific term[ ] that lacks[s] any clear, objective indication of" the product's level of sweetness. *Id.* Implicit in this determination is a finding that the statement refers to the product's taste (which is subjective), not its sugar content (which can be objectively verified).

In this case, even assuming the "lightly sweetened" statement implied a specific level of sugar content – which Plaintiffs fail to allege – the above authorities demonstrate, as a matter of law there is no risk of deception because the label and website contain a Nutrition Facts panel that fully inform consumers about how much sugar the Product contains. A reasonable consumer does not view individual product label statements in a vacuum, but rather, interprets them with the benefit of context. *See, e.g., Fink*, 714 F.3d at 742 ("context is crucial"); *Belfiore*, 311 F.R.D. at 53 ("Courts view each allegedly misleading statement in light of its context . . . ."); *La Vigne*, 284

18

F. Supp. 3d at 512-514 (dismissing case because a reasonable consumer would consult the Nutrition Facts label). With a prominent Nutrition Facts panel, it is implausible to claim that reasonable consumers construe the statement "lightly sweetened" to mean that the Product contains less sugar than what is explicitly stated on the label.

### 3. Plaintiffs' Unjust Enrichment Claims Fails For Additional Reasons Under the Laws of Plaintiffs' Home States

For additional reasons discussed below, Plaintiffs fail to state a claim for unjust enrichment under the laws of Plaintiffs' home states (*i.e.*, Alaska, California, Illinois, Massachusetts, New York, Oklahoma, Pennsylvania, Texas and Wisconsin).

### a. Unjust Enrichment is Not an Independent Cause of Action Under California and Texas Law

Plaintiffs' sole cause of action for unjust enrichment fails to state a claim under California or Texas law because neither jurisdiction recognizes unjust enrichment as an independent cause of action. *See Smith v. Ford Motor Co.*, 749 F.Supp. 980, 997 (N.D. Cal. 2010) ("Unjust enrichment . . . 'is not a separate cause of action,' but, rather, must rely on some other claim that is cognizable.") (quoting *Jogani v. Superior Court*, 165 Cal.App.4[th] 901, 911 (2008) ("[U]njust enrichment is not a cause of action[;] [r]ather it is a general principle underlying various doctrines and remedies."); *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009) (Texas law "does not afford an independent cause of action for unjust enrichment."); *see also Redwood Resort Props., LLC v. Holmes Co.*, 2006 WL 3531422, at *9 (N.D. Tex. Nov. 27, 2006) (dismissing unjust enrichment claim and holding that it is not an independent cause of action under Texas law) (citing *Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 709 n. 4 (Tex. App. 2006, pet. denied)).

>   **b.  Plaintiffs Do Not Plead the Lack of Adequate Remedies at Law, Thus Barring Their Claim Under Alaska, Illinois, Massachusetts, and Oklahoma Law**

Plaintiffs also fail to state an unjust enrichment claim under multiple states' laws because nowhere do Plaintiffs allege they lack an adequate remedy at law.  To the contrary, Plaintiffs claim that Defendant's "alleged conduct constitutes violations of the laws asserted [in the Complaint]" and seek both damages and equitable relief.  Compl. ¶ 85.  This defect renders Plaintiffs' unjust enrichment claim dead on arrival under the laws of Alaska, Illinois, Massachusetts, and Oklahoma law.  *See Peter v. Progressive Corp.*, 2006 WL 438658, at *7 (Alaska Feb. 26, 2006) ("Because it is equitable relief, unjust enrichment is available only when there is no adequate remedy at law."); *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. 2005) ("Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law.") (quotation omitted); *Santagate v. Tower,*  833 N.E.2d 171, 176 (Mass. App. Ct. 2005) ("equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law"); *Chieftain Royalty Co. v. Dominion Oklahoma Texas Expl. & Prod., Inc.*, 2011 WL 9527717, at *5 (W.D. Okla. July 14, 2011) ("to invoke equity jurisdiction, it must be shown that no adequate statutory or legal remedy is available…and Plaintiffs have not alleged or shown that is the case. Defendants' motion to dismiss Plaintiffs' unjust enrichment claim must, therefore, be granted.").

>   **c.  Plaintiffs Do Not Allege They Conferred a Direct Benefit on Defendants As Required Under New York and Wisconsin Law**

Plaintiffs fail to state a claim for unjust enrichment under New York and Wisconsin law because Plaintiffs do not allege that they conferred a benefit directly on Defendant.

Defendant, as the Complaint acknowledges, is a manufacturer and distributor of the Product.  Compl. ¶ 1.  The Product, therefore, must be purchased at retailers, which Plaintiffs acknowledge in alleging that they purchased the Product at Walmart, Target, Safeway, CVS, Fred

Meyers, Whole Foods, Wegmans, and other unidentified grocery stores. *Id.* at ¶¶ 39-50. Nowhere do Plaintiffs allege that they purchased the Product directly from Defendant. Because Plaintiffs do not (and cannot) allege that they directly conferred a benefit on Defendant, New York and Wisconsin law requires dismissal of Plaintiffs' unjust enrichment claim. *See Emirat AG v. High Point Printing LLC*, 248 F. Supp. 3d 911, 936-37 (E.D. Wisc. 2017) (unjust enrichment claim failed against defendant printing company because plaintiff paid printing broker and therefore conferred no direct benefit on printing company); *N.Y. City Health & Hosp. Corp. v. Wellcare of N.Y., Inc.*, 35 Misc. 3d 250, 254 (N.Y. Sup. Ct. 2011).

### d. Plaintiffs Do Not Allege Defendant Failed to Provide a Good or Service As Required Under Pennsylvania Law.

Plaintiffs fail to state a claim for unjust enrichment under Pennsylvania law because there is no allegation the Defendant "refused to provide a service or goods after [Plaintiffs] provided [Defendant] with a benefit." *Tatum v. Takeda Pharm. North America, Inc.*, 2012 WL 5182895, at *5 (E.D. Pa. Oct. 19, 2012).

To state a claim for unjust enrichment under Pennsylvania law, "a plaintiff must allege facts sufficient to establish 'benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" *Boring v. Google, Inc.*, 2010 WL 318281, at *6 (3d Cir. Jan. 28, 2010) (quoting *Lackner v. Glosser*, 892 A.2d 21, 34 (Pa. Super. 2006)). Unjust enrichment liability typically applies where a plaintiff "seeks to recover from defendant for a benefit conferred under an unconsummated or void contract" and the "law then implied a quasi-contract which requires the defendant to compensate the plaintiff for the value of the benefit conferred." *Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999) (applying Pennsylvania law). A

claim for unjust enrichment does not lie where the plaintiff admits they received and used the service or goods at issue. *Mazur v. Milo's Kitchen, LLC*, 2013 WL 32452013, at *10 (W.D. Pa. June 25, 2013).

In *Mazur*, for example, another court in this Circuit dismissed an unjust enrichment claim where the plaintiff alleged that defendants misrepresented that their dog treats were safe and healthy when in fact they were defective and caused her dog to get kidney failure and pass away. *Id.* at *1, 10.  In dismissing plaintiff's unjust enrichment claim the Court found, "it is apparent from Plaintiff's allegations in the Complaint that, while she is dissatisfied with the chicken jerky treats, she nevertheless purchased, received and used the product." *Id.* at *10.  "It therefore cannot be said that the benefit bestowed on Defendants in the form of a profit from the sale was 'wrongly secured.'"  *Id.* (citing *Tatum*, 2012 WL 5182895, at *5) (finding that plaintiff's claim that defendants were aware of the risks of the drug but chose not to disclose them failed to state a claim for unjust enrichment because there was no allegation that the defendants "refused to provide a service or goods after Tatum provided defendants with a benefit"); *In re Avandia Mktg., Sales Practices and Prod. Liab. Litig.,* 2011 WL 4007908, at * 2 (E.D. Pa. Sept. 7, 2011) (finding that the plaintiff's allegations that the product at issue was not safe, that defendant knew it was not safe and promoted it anyway, failed to state a claim for unjust enrichment where the plaintiff received the product for which he paid); *Zafarana v. Pfizer, Inc.,* 724 F.Supp.2d 545, 561 (E.D. Pa. 2010) (the allegation that the defendants misled the plaintiffs into desiring a product, which the defendants then provided to the plaintiffs in exchange for payment, did not create quasi-contract liability).

Here, as in *Mazur*, Plaintiffs cannot state a claim for unjust enrichment because Plaintiffs do not allege that Defendant failed to provide any goods or services.  While Plaintiffs claim they

22

are dissatisfied with the Product's sugar content – which was clearly disclosed on the label, they nevertheless allege that they purchased, received, and used the Product.  Compl. ¶¶ 39-50. Plaintiffs therefore cannot establish that any benefit bestowed on Defendant was "wrongly secured."  *Tatum*, 2012 WL 5182895, at *5.

## V.   CONCLUSION

For all these reasons, Plaintiffs lack standing and fail to state a claim for unjust enrichment. Plaintiffs plead no facts to indicate their alleged injury is anything other than hypothetical, speculative, and conjectural.   Plaintiffs' Complaint is further premised on an implausible interpretation of a single label statement, divorced from its context and at odds with the plain disclosure that appears in bold in the Nutrition Facts panel.  Moreover, "lightly sweetened" is a claim about the Product's taste.  It is not a claim about the amount of sugar in the Product – let alone an objective, verifiable one that can be proven false.  Plaintiffs' unjust enrichment claim also fails to state a claim under Plaintiffs' respective state's laws.  Thus, the Court should dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,

FOX ROTHSCHILD LLP

Dated:  January 8, 2021

*/s/ Clair E. Wischusen*
Michael Eidel, Esquire
Clair E. Wischusen, Esquire
Attorney I.D. Nos. 94278; 306752
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
meidel@foxrothschild.com
cwischusen@foxrothschild.com
Phone:  (215) 299-2000
Fax:  (215) 299-2150

*Attorneys Defendant Steaz, LLC, a Texas limited liability company (erroneously sued as "The Healthy Beverage Company, LLC")*

23