# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAMARTINE PIERRE JR., DANIELLE GRAHAM, AMIE DELEON,  JESSE GONZALEZ, JEANNETTE RODRIGUEZ, VALERIE WELLS, STEPHANIE SMITH, SHANNON HOOD, SHANNA HER, MELANIE BARBER, CHRISTOPHER MORGAN, and MOLLY BROWN on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br> v.<br><br>HEALTHY BEVERAGE LLC d/b/a THE HEALTHY BEVERAGE COMPANY<br><br>       Defendant. | Case No.  2:20-cv-04934-GJP<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

Plaintiffs Lamartine Pierre Jr., Danielle Graham, Amie Deleon, Jesse Gonzalez, Jeannette Rodriguez, Valerie Wells, Stephanie Smith, Shannon Hood, Shanna Her, Melanie Barber, Christopher Morgan, and Molly Brown ("Plaintiffs"), acting on behalf of themselves and all other similarly situated persons, bring this action for damages and equitable relief against the Healthy Beverage LLC d/b/a The Healthy Beverage Company ("Defendant" or "Healthy Beverage") and on the basis of personal knowledge, information and belief, and investigation of counsel, allege as follows:

## INTRODUCTION

1.      Defendant manufacturers, distributes, markets, labels and sells its iced tea beverages purporting to be "Lightly Sweetened" and low in sugar content under their Steaz Organic Lightly Sweetened Iced Green Tea brand ("Steaz Tea" or "Product").

2.      During the class period (as defined below), consumers purchased the Product throughout the United States, including Plaintiffs in their home states as described below.

3.      During the class period (as defined below) Defendant falsely and misleadingly advertised and marketed its Product to consumers, prominently labeling it as "Lightly Sweetened."

4.      Defendant's "Lightly Sweetened" representation it specifically makes on the Product label is understood by consumers, including Plaintiffs, that such a Product is in fact low in sugar.

5.      Contrary to this representation, Defendant's Product is anything but "Lightly Sweetened" and low in sugar.  Instead, Defendant's Product is high in sugar which directly contradicts the representation Defendant prominently makes on its label.

6.      The reason Defendant uses such a prominent "Lightly Sweetened" representation on the front of its label is so that consumers, including the Plaintiffs, would read and rely on such a representation and induce them to purchase what they believe is a healthy Product.

7.      As will be detailed below, Defendant charges a premium for this falsely labeled "Lightly Sweetened" Product.

8.      Plaintiffs would not have purchased or paid more for the Product had they known or were aware that the Product was not "Lightly Sweetened" or low in sugar.

9.      As a result of Defendant's misrepresentations and omissions, Plaintiffs and other putative Class members were harmed by paying a premium for the advertised Product and only

receiving an inferior Product that in no way conformed to the "Lightly Sweetened" representation on the label.

## BACKGROUND OF THE CASE

10.    Obesity rates in America have skyrocketed. "In 1962, 46 percent of adults in the U.S. were considered overweight or obese. By 2010, that figure had jumped to 75 percent."[1]

11.    One significant contributing factor for such a large rise in American obesity rates is sugar consumption.[2]

12.    The perils of high sugar consumption, especially from added sugar are well documented.

13.    "In a study published in 2014 in JAMA Internal Medicine, . . . an association [was found] between a high-sugar diet and a greater risk of dying from heart disease. [For example] [o]ver the course of the 15-year study, people who got 17% to 21% of their calories from added sugar had a 38% higher risk of dying from cardiovascular disease compared with those who consumed 8% of their calories as added sugar."[3]

14.    In fact, "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide." *See Sweet Stuff: How Sugars and Sweeteners Affect Your Health*, NIH (Oct. 2014).

---

[1]  *See*  https://www.hopkinsmedicine.org/health/wellness-and-prevention/obesity-sugar-and-heart-health (last visited July 17, 2020).

[2] *Id.*

[3] *See* https://www.health.harvard.edu/heart-health/the-sweet-danger-of-sugar (last visited July 16, 2020).

15.     Our country's own CDC agrees: "Americans are eating and drinking too much added sugars which can lead to health problems such as weight gain and obesity, type 2 diabetes, and heart disease."[4]

16.     Sugar found in beverages is especially problematic for consumers trying to lose weight because calories consumed through a beverage do not have the same appetite suppression effects as eating solid whole food.[5]

17.     Due to the dangers of high sugar consumption and its impacts on diabetes and obesity, all of which are well known to the consuming public, consumers in the United States have turned to foods and beverages that have little or no sugar.[6]

18.     Indeed, when consumers purchase beverages, a material factor they consider is the sugar content.

19.     Consumers, including Plaintiffs and Class Members, expect that the amount of sugar advertised on the front of the label does not substantially deviate from the ingredients actually

---

[4]   *See*   https://www.cdc.gov/nutrition/data-statistics/know-your-limit-for-added-sugars.html   (last visited Oct. 2, 2020); *see also* https://www.washingtonpost.com/national/health-science/eating-too-much-sugar-can-hurt-your-health-and-for-some-its-actually-addictive/2017/12/15/3853d3e8-de8b-11e7-bbd0-9dfb2e37492a_story.html ("[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity.") (last visited Oct. 2, 2020).

[5] *See* https://www.health.harvard.edu/heart-health/the-sweet-danger-of-sugar (last visited July 16, 2020).

[6] *Id.*

---

contained in the product itself. This is especially the case when the consumer pays a premium for a product, such as Defendant's, which is prominently labeled as containing a low amount of sugar.

20.     Defendant's Product misled consumers, including Plaintiffs, by using labeling to deceive the consumer into believing that the beverage is only "lightly sweetened" meanwhile the Product contains 20 grams of added sugar.[7]

21.     20 grams of added sugar is a significant and excessive amount.

22.     For example, 20 grams of added sugar equates to a consumer adding approximately five teaspoons of sugar to their beverage.[8]

23.     Moreover, the American Heart Association recommends that men consume 37.5 and women consume 25 grams of added sugar per day, respectively.[9]

24.     In other words, Defendant misled consumers into believing they were consuming a beverage low in sugar while, in truth, they were consuming almost the entirety of the recommended added sugar per day in a single drink.

**PARTIES**

---

[7] The product is available in a variety of flavors. However, all make the same "lightly sweetened" representation and all contain the same amount of added sugar: 20 grams. *See* https://steaz.com/lightly-sweetened/ (last visited Jan. 29, 2021).

[8] *See* https://www.inchcalculator.com/convert/teaspoon-sugar-to-gram-sugar/ (last visited Jan. 27, 2021) (this conversation tool provides that 4.75 teaspoons of granulated sugar equate to approximately 20 grams of sugar).

[9] *See* https://www.healthline.com/nutrition/how-much-sugar-per-day#section3 (last visited July 17, 2020).

25.     Plaintiff Lamartine Pierre Jr is a citizen of New York residing in Valley Stream. He purchased the Product on numerous occasions for personal, family or household use.

26.     Plaintiff Danielle Graham is a citizen of Pennsylvania residing in Erie. She purchased the Product on numerous occasions for personal, family or household use.

27.     Plaintiff Amie Deleon is a citizen of Texas residing in San Antonio. She purchased the Product on numerous occasions for personal, family or household use.

28.     Plaintiff Jesse Gonzalez is a citizen of Massachusetts residing in Methuen. He purchased the Product on numerous occasions for personal, family or household use.

29.     Plaintiff Jeannette Rodriguez is a citizen of Wisconsin residing in Milwaukee. She purchased the Product on numerous occasions for personal, family or household use.

30.     Plaintiff Valerie Wells is a citizen of Illinois residing in Chicago. She purchased the Product on numerous occasions for personal, family or household use.

31.     Plaintiff Stephanie Smith is a citizen of Oklahoma residing in Guthrie. She purchased the Product on a few occasions for personal, family or household use.

32.     Plaintiff Shanna Her is a citizen of Wisconsin residing in Oshkosh. She purchased the Product numerous times for personal, family or household use.

33.     Plaintiff Shannon Hood is a citizen of New York residing in Baldwinsville. She purchased the Product on numerous occasions for personal, family or household use.

34.     Plaintiff Melanie Barber is a citizen of California residing in Upland. She purchased the Product on numerous occasions for personal, family or household use.

35.     Plaintiff Christopher Morgan is a citizen of Alaska residing in Anchorage. He purchased the Product on numerous occasions for personal, family or household use.

36.     Plaintiff Molly Brown is a citizen of California residing in Novato. She purchased the Product on numerous occasions for personal, family or household use.

37.     Upon information and belief, Defendant Healthy Beverage LLC d/b/a The Healthy Beverage Company is a limited liability company that was registered to do business in Pennsylvania and headquartered  in Doylestown when this lawsuit was first filed on October 6, 2020.[10]

## JURISDICTION AND VENUE

38.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from the Defendant.

39.     This Court may exercise jurisdiction over Defendant because its headquarters are located in Pennsylvania and it is registered to conduct business in Pennsylvania.

40.     Defendant has sufficient minimum contacts in Pennsylvania. Defendant intentionally avails itself of the markets within Pennsylvania through the promotion, sale, marketing, and distribution of Steaz Tea, which renders this Court's exercise of jurisdiction necessary and proper. At all relevant times, Defendant's misconduct emanated from Pennsylvania because Defendant's

---

[10] Plaintiffs sued the Healthy Beverage Company, LLC based upon a review of Pennsylvania's corporate records without realizing that the Healthy Beverage Company was only a fictious corporate name used and owned by Healthy Beverage LLC.  In Defendant's motion to dismiss Plaintiffs' first complaint, Defendant admits that it changed the Healthy Beverage LLC registration status to a Texas company only after Plaintiffs filed this lawsuit (Defendant made this change in November of 2020). *See* ECF Doc. 9-1 n.1.

marketing and labeling of the Products were undertaken and orchestrated from its headquarters in Pennsylvania.

41.     Venue is proper in this District under 28 U.S.C. § 1391 because, at all relevant times, Defendant was headquartered here, conducts substantial business in this District, and because a substantial part of the alleged conduct occurred here.

**FACTUAL ALLEGATIONS**

**Plaintiffs' Facts**

42.     Lamartine Pierre Jr. purchased the Product several times over the last four years at Walmart in New York. Prior to each purchase, he specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Mr. Pierre would not have purchased or paid more for the Product had he known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Mr. Pierre would purchase the Product again in the future if the Product were remedied or reformulated to be in accordance with Defendant's representation on the label.

43.     Danielle Graham purchased the Product several times over the last four years in Pennsylvania typically at a grocery store. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Ms. Graham would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Graham would

purchase the Product again in the future if the Product were remedied or reformulated to be in accordance with Defendant's representations on the label.

44.     Amie Deleon purchased the Product several times over the last four years in Texas at Walmart and Target. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Ms. Deleon would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Deleon would purchase the Product again in the future if the Product were remedied or reformulated to be in accordance with Defendant's representation on the label.

45.     Jesse Gonzalez purchased the Product several times over the last four years in Massachusetts at Walmart. Prior to each purchase, he specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Mr. Gonzalez would not have purchased or paid more for the Product had he known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Mr. Gonzalez would purchase the Product again in the future if the Product were remedied or reformulated to be in accordance with Defendant's representation on the label.

46.     Jeannette Rodriguez purchased the Product several times over the last four years at retailers in Wisconsin such as Target. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Ms. Rodriguez would not have purchased or paid more for the Product had she known

or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Rodriguez would purchase the Product again in the future if the Product were remedied or reformulated to be in accordance with Defendant's representation on the label.

47.     Valerie Wells purchased the Product several times over the last four years at Target in Illinois. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Ms. Wells would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Wells would purchase the Product again in the future if the Product were remedied or reformulated to be in accordance with Defendant's representations on the label.

48.     Stephanie Smith purchased the Product several times over the last four years at Walmart in Oklahoma. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Ms. Smith would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Smith would purchase the Product again in the future if the Product were remedied or reformulated to be in accordance with Defendant's representation on the label.

49.     Shanna Her purchased the Product several times over the last four years in Wisconsin at a Walmart. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly

Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Ms. Her would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Her would purchase the Product again in the future if the Product were remedied or reformulated to be in accordance with Defendant's representation on the label.

50.     Shannon Hood purchased the Product several times over the last four years at a Wegmans grocery store in New York. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Ms. Hood would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Hood would purchase the Product again in the future if the Product were remedied or reformulated to be in accordance with Defendant's representation on the label.

51.     Melanie Barber purchased the Product several times over the last four years at Target and Walmart in California. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Ms. Barber would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Barber would purchase the Product again in the future if the Product were remedied or reformulated to be in accordance with Defendant's representation on the label.

52.     Christopher Morgan purchased the Product several times over the last four years at Safeway and Fred Meyers in Alaska. Prior to each purchase, he specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Mr. Morgan would not have purchased or paid more for the Product had he known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Mr. Morgan would purchase the Product again in the future if the Product were remedied or reformulated to be in accordance with Defendant's representation on the label.

53.     Molly Brown purchased the Product several times over the last four years at various retailers, including Whole Foods and CVS in California. Prior to each purchase, she specifically viewed and relied on the phrase "Lightly Sweetened" on the beverage's labeling believing that the Product was, in fact, low in sugar. Ms. Brown would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Brown would purchase the Product again in the future if the Product were remedied or reformulated to be in accordance with Defendant's representation on the label.

## **Defendant's "Lightly Sweetened" representation is deceptive and misleading**

54.     Defendant prominently claims its Product, which contains 20 grams of added sugar, is "lightly sweetened."

55.     "The terms 'sweet' and 'sweetened,' when used without additional qualification, are generally understood to refer to sugar."[11]

56.     The Merriam-Webster dictionary defines "lightly" as "in a small degree or amount[,]" and provides this relevant contextual example for using the word: "lightly salted food[.]"[12]

57.     Accordingly, "lightly sweetened" in its ordinary and common usage in the context of Defendant's Product means the Product only has a small amount of added sugar.

58.     Defendant's Product, however, contains 30% of the Daily Value (DV) "for added sugars per Reference Amount Customarily Consumed (RACC)."[13]

59.     As mentioned above, Defendant's Product also provides more than half of the added sugar the American Heart Association recommends for daily consumption for men and an astounding eighty percent of the recommended daily amount for women.

60.     Defendant's Product also contains nearly five teaspoons of added sugar. *See supra* note 8.

---

[11]  *See*  https://cspinet.org/sites/default/files/attachment/Low_Sugar_Letter-1.9.20.pdf  (last visited July 17, 2020).*; see also* https://www.dictionary.com/browse/sweeten (last visited Jan. 27, 2020) (the first definition of sweeten states "to make sweet, as by adding sugar."). Any argument by Defendant that non-nutritive sweeteners can also be considered sweeteners in the context of the phrase "lightly sweetened" belies the realities of Defendant's own manufacturing practices: Defendant uses real sugar in its "lightly sweetened" line while it uses non-nutritive sweeteners such as stevia in its zero calorie teas (the zero-calorie line also has similar flavors to the "lightly sweetened" line). *See* https://steaz.com/zero-calorie/ (last visited Jan. 27, 2021).

[12] *See* https://www.merriam-webster.com/dictionary/lightly (last visited July 17, 2020).

[13]  *See*  https://cspinet.org/sites/default/files/attachment/Low_Sugar_Letter-1.9.20.pdf  (last visited July 17, 2020).

**Defendant's Material Misrepresentations**

61.     It is no secret that consumers pay a premium for perceived high quality and low sugar products such as Steaz Tea.

62.     For example, a 12 pack of Steaz Tea costs as much as $25.99 whereas a 12 pack of green tea from a competing brand costs as little as $3.79.[14]

63.     Plaintiffs only use the pricing in the previous paragraph as an example to plausibly plead that Defendant does indeed charge a large premium for its Product. The specific premium on a granular level will be determined later in the case by an expert.

64.     However, it is abundantly clear that Defendant uses the "lightly sweetened" representation to extract a premium from consumers because it knows that is what consumers want and will pay extra for. *See* https://www.livemint.com/opinion/columns/opinion-consumer-demand-helps-low-sugar-goods-take-off-1563988171270.html (last visited Jan. 27, 2021) ("Claims like 'low-sugar' . . . ha[ve] become important influencers at the point of purchase. There is also a gradual

---

[14] *Compare Steaz Organic Lightly Sweetened Iced Green Tea, Super Fruit, 16 FL OZ (Pack of 12)*, Amazon, https://www.amazon.com/Steaz-Organic-Lightly-Sweetened-Superfruit/dp/B00A0DWL2C/ref=asc_df_B00A0DWL2C/?tag=hyprod-20&linkCode=df0&hvadid=312191465664&hvpos=&hvnetw=g&hvrand=11365164367241762605&hvpone=&hvptwo=&hvqmt=&hvdev=c&hvdvcmdl=&hvlocint=&hvlocphy=9021511&hvtargid=pla-570727816716&psc=1 (last visited Sept. 30, 2020), *with Arizona Green Tea with Ginseng and Honey - 12pk/11.5 fl oz Cans*, Target, https://www.target.com/p/arizona-green-tea-with-ginseng-and-honey-12pk-11-5-fl-oz-cans/-/A-14752521?ref=tgt_adv_XS000000&AFID=google_pla_df&fndsrc=tgtao&CPNG=PLA_Grocery%2BShopping_Local&adgroup=SC_Grocery&LID=700000001170770pgs&network=g&device=c&location=9021511&ds_rl=1246978&ds_rl=1248099&gclid=CjwKCAjw2dD7BRASEiwAWCtCb5NMZoOAJnQE4fVSQg1keH-Jx2HF77tf7Qg0HJNqgJYdYJmQ0DNz_xoCWp8QAvD_BwE&gclsrc=aw.ds. (last visited Sept. 30, 2020).

---

shift in terms of willingness to pay a premium for healthier alternatives[.]”); *see also* https://www.refrigeratedfrozenfood.com/articles/95858-study-quantifies-how-much-more-consumers-willing-to-pay-for-healthy-food (last visited Jan. 27, 2020) (“The desire to pay more for healthier foods is growing stronger. That’s because up to 70% of consumers say they’re willing to pay a premium for food products in the natural, ethical, enhanced or ‘less of…’ categories, according to ‘*Consumer Health Claims 3.0: The Next Generation of Mindful Food Consumption*,’ a new survey from L.E.K. Consulting, Chicago.”).

65.     Consumers who willingly pay a premium for products such as the one at issue here also expect that the product’s advertising will conform to the ingredients and specific representations on the packaging.

66.     As a result, Defendant’s misrepresentation regarding its Product being “lightly sweetened”, which appears prominently on the front of the label, is material to consumers who purchase Defendant’s Product because such consumers believe the representation to be true. In other words, consumers believe they are purchasing a “lightly sweetened”  product which is low in sugar content and pass over other cheaper alternatives to make a purchase decision that better suits their health preferences and lifestyle.

67.     As noted above, Defendant including the phrase “lightly sweetened” on its Product is intended to appeal specifically to consumers that desire a healthy product that contains a minimal amount of sugar and induce them to purchase their product.

68.     Defendant's Product's label and website both prominently include the "lightly sweetened" language.  Images of an example of one Defendant's cans and corresponding description on the website are reproduced below:[15]



[15] As discussed above, the Product is available in a variety of flavors. However, all make the same "lightly sweetened" representation and all contain the same amount of added sugar. *See supra* note 7. In addition, all flavors have the same "lightly sweetened" language featured prominently on the website as shown in the first picture below.



69.     The representation that the tea is "lightly sweetened" appear prominently, in large type, on the front of the can.

70.     Such a representation is material to consumers who desire to decrease their sugar consumption by purchasing a product low in sugar.

71.     Because Steaz Tea is not "lightly sweetened" but instead is 'high' in added sugars, Defendant's marketing, advertising and labeling of the Product is false and misleading.  Because of Defendant's deceptive advertising practices, consumers, including Plaintiffs, were and continue to be fraudulently induced to purchase the Product and have suffered damages.

## CLASS ACTION ALLEGATIONS

### Class Definitions

72.     Plaintiffs bring this action on behalf of themselves and the members of the following class (the "Class"):

> All persons residing in the United States who, during the maximum period of time permitted by law, purchased Steaz Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

73.     Plaintiff Christopher Morgan brings this action on behalf of himself and the members of the following subclass:

> All persons residing in Alaska who, during the maximum period of time permitted by law, purchased Steaz Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

74.     Plaintiffs Melanie Barber and Molly Brown bring this action on behalf of themselves and the members of the following subclass:

> All persons residing in California who, during the maximum period of time permitted by law, purchased Steaz Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

75.     Plaintiff Valerie Wells brings this action on behalf of herself and the members of the following subclass:

> All persons residing in Illinois who, during the maximum period of time permitted by law, purchased Steaz Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

76.     Plaintiff Jesse Gonzalez brings this action on behalf of himself and the members of the following subclass:

> All persons residing in Massachusetts who, during the maximum period of time permitted by law, purchased Steaz Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

77.     Plaintiffs Lamartine Pierre Jr and Shannon Hood bring this action on behalf of themselves and the members of the following subclass:

> All persons residing in New York who, during the maximum period of time permitted by law, purchased Steaz Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

78.     Plaintiff Stephanie Smith brings this action on behalf of herself and the members of

the following subclass:

>       All persons residing in Oklahoma who, during the maximum period
>       of time permitted by law, purchased Steaz Tea (of any flavor)
>       primarily for personal, family or household purposes, and not for
>       resale.

79.     Plaintiff Danielle Graham brings this action on behalf of herself and the members of

the following subclass:

>       All persons residing in Pennsylvania who, during the maximum
>       period of time permitted by law, purchased Steaz Tea (of any flavor)
>       primarily for personal, family or household purposes, and not for
>       resale.

80.     Plaintiff Amie Deleon brings this action on behalf of herself and the members of the

following subclass:

>       All persons residing in Texas who, during the maximum period of
>       time permitted by law, purchased Steaz Tea (of any flavor) primarily
>       for personal, family or household purposes, and not for resale.

81.     Plaintiffs Jeannette Rodriguez and Shanna Her bring this action on behalf of

themselves and the members of the following subclass:

>       All persons residing in Wisconsin who, during the maximum period
>       of time permitted by law, purchased Steaz Tea (of any flavor)
>       primarily for personal, family or household purposes, and not for
>       resale.

82.     Specifically excluded from this definition are: (1) Defendant, any entity in which any

Defendant has a controlling interest, and its legal representatives, officers, directors, employees,

assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's

staff or immediate family; and (3) Class Counsel.

83.     Plaintiffs reserve the right to amend these class definitions as necessary.

84.     As used herein, "Class Members" shall mean and refer to the members of the classes including Plaintiffs.

85.     <u>Numerosity</u>: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

86.     <u>Typicality</u>: The claims of the representative plaintiffs are typical in that Plaintiffs, like all Class Members, purchased Steaz Tea that was manufactured and distributed by Defendant. Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that, *inter alia*, they have incurred damage due to purchasing a Product at a premium price that contained sugar in a manner that Defendant represented was present in a much smaller degree. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members and represents a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

87.     <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any individual questions.  These common legal and factual issues include the following:

    a)  whether Defendant's claim about the Product discussed above are true, or are misleading, or reasonably likely to deceive;

    b)  whether the alleged conduct constitutes violations of the laws asserted herein;

    c)  whether Defendant engaged in false or misleading advertising;

d)  whether Defendant expressly warranted that the Product would conform to its "lightly sweetened" representation;

e)  whether Defendant impliedly warranted that the product would conform to its "lightly sweetened" representation;

f)  whether Defendant breached its warranties by making the "lightly sweetened" representation

g)  whether Defendant's conduct violated consumer protection laws alleged herein

h)  whether Plaintiffs and Class Members were damaged by Defendant's conduct;

i)  whether Plaintiffs and Class Members are entitled to damages and equitable relief; and

j)  whether Plaintiffs and Class members are entitled to an award of punitive damages.

88.     <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

89.     <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Defendant's misconduct will continue without

remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

### CAUSES OF ACTION

**COUNT ONE**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of The Nationwide Class)**

90.     Plaintiffs bring this count on behalf of themselves and the Class and repeat and re-allege all previous paragraphs, as if fully included herein.

91.     Defendant sold and Plaintiffs and Class Members purchased Steaz Tea.

92.     Defendant represented in its marketing, advertising, and promotion of Steaz Tea that the product was "lightly sweetened."

93.     Defendant made such representations to induce Plaintiffs and Class Members to purchase its Product.

94.     The representations that the Steaz Tea was "lightly sweetened" was a part of the basis of the bargain between Defendant and Plaintiffs.

95.     Steaz Tea did not conform to Defendant's representations and warranties because it contained a much higher amount of sugar than specifically represented.

96.     Within a reasonable time after Plaintiffs and other similarly situated consumers knew or should have known of such failure to conform, Plaintiffs' counsel sent a demand letter to Defendant on September 23, 2020. The demand letter outlined Defendant's misconduct, including

that Defendant misrepresented the contents of Steaz Tea regarding its sugar content. Such conduct constitutes a breach of Defendant's express warranty.

97.     As a direct and proximate result of Defendant's breaches of its express warranty and failure of Defendant's Product to conform to its representations as warranted, Plaintiff and Class Members have been damaged in that they did not receive the product as specifically warranted and/or purchased a product that they otherwise would not have purchased (or paid a premium for) if they knew it did not conform to Defendant's warranties.

## COUNT TWO
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the Nationwide Class)

98.     Plaintiffs bring this count on behalf of themselves and the Class and repeat and re-allege all previous paragraphs, as if fully included herein.

99.     Defendant sold and Plaintiff and Class Members purchased Steaz Tea.

100.    When sold by Defendant, Steaz Tea was not merchantable, did not pass without objection in the trade under the label description, was not of adequate quality within that description, was not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on its container or label.

101.    Within a reasonable time after Plaintiff and other similarly situated consumers knew or should have known of such failure to conform, Plaintiff's counsel sent a demand letter to Defendant on September 23, 2020. The demand letter outlined Defendant's misconduct, including that Defendant misrepresented the contents of Steaz Tea regarding its sugar content. Such conduct constitutes a breach of Defendant's implied warranty.

102.    Because the products contain a high amount of added sugar, they were neither "lightly sweetened" nor in any way products with reduced sugar content.

103.    As a direct result of the Steaz Tea being unfit for its intended purpose and/or otherwise not merchantable, Plaintiff and Class members were damaged because they would not have purchased (or paid a premium for) Defendant's Product had they known the true facts regarding the level of sugar.

### COUNT THREE
### UNJUST ENRICHMENT[16]
### (On behalf of the Nationwide Class)

104.    Plaintiffs bring this count on behalf of themselves and the Class and repeat and re-allege all previous paragraphs, as if fully included herein.

105.    As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefited from the purchase of its Product by Plaintiffs and the Class.

106.    Defendant has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of its misconduct, Plaintiffs and the Class did not receive a product of the quality, nature, fitness, or value that had been represented by Defendant, and that reasonable consumers expected.

107.    Defendant has been unjustly enriched by its fraudulent and deceptive withholding of benefits to Plaintiffs and the Class at the expense of these parties.

108.    Equity and good conscience militate against permitting Defendant to retain these profits and benefits.

---

[16] This cause of action is plead in the alternative to the breach of contract claims.

109.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class suffered injury and seek an order directing Defendant's disgorgement and the return to Plaintiffs and the Class of the amount each Class Member improperly paid to Defendant.

**COUNT FOUR**
**<u>VIOLATIONS OF ALASKA CONSUMER PROTECTION ACT</u>**
Alaska Stat. §§ 45.50.471, *et seq*.
**(On behalf of the Alaska Class)**

110.     The Alaska Plaintiff identified above, individually and on behalf of the Alaska Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

111.     Defendant advertised, offered, or sold goods or services in Alaska and engaged in trade or commerce directly or indirectly affecting the people of Alaska.

112.     Alaska Class members are "consumers" as defined by Alaska Stat. § 45.50.561(4).

113.     Defendant engaged in unfair or deceptive acts and practices in the conduct of trade or commerce, in violation Alaska Stat. § 45.50.471(4), by, among other things, representing that Steaz Tea has characteristics, ingredients, uses, benefits, or qualities that it does not have. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

114.     As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Alaska Plaintiff and Alaska Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain.

115.     Alaska Plaintiff and the Alaska Classes seek all monetary and non-monetary relief allowed by law, including the greater of (a) three times their actual damages or (b) statutory damages

in the amount of $500; punitive damages; reasonable attorneys' fees and costs; injunctive relief; and any other relief that is necessary and proper.

**COUNT FIVE**
**VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW,**
Cal. Bus. & Prof. Code §§ 17200, *et seq*. (the "UCL")
**(On behalf of the California Class)**

116.    The California Plaintiffs identified above, individually and on behalf of the California Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

117.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

118.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants as alleged herein constitute business acts and practices.

119.    Unlawful:  The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

        a.   The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

        b.   The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*;

120.    Unfair: Defendants' conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

121.    Defendants' conduct with respect to the labeling, advertising, and sale of the Product was and is also unfair because it violates public policy as declared by specific constitutional,

statutory or regulatory provisions, including but not limited to the applicable sections of the Consumers Legal Remedies Act and the False Advertising Law.

122.    Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

123.    Fraudulent:  A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

124.    As set forth herein, Defendant's claim relating the sugar content stated on the Product's label, as stated above, is false and likely to mislead or deceive the public.

125.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised and packaged Product to unwary consumers.

126.    California Plaintiffs and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Product's packaging. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

127.    Defendant's conduct caused and continues to cause substantial injury to California Plaintiffs and Class members.  California Plaintiffs and Class members have suffered injury in fact as a result of Defendant's unlawful conduct.

128.    In accordance with Bus. & Prof. Code § 17203, California Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

129.    California Plaintiffs and Class members also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

**COUNT SIX**
**<u>VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW</u>**
Cal. Bus. & Prof. Code § 17500 (the "FAL")
**(On behalf of the California Class)**

130.    The California Plaintiffs identified above, individually and on behalf of the California Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

131.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

132.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

133.    As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the Product misled consumers acting reasonably as to Defendant's representation about sugar content, as stated above.

134.    California Plaintiffs suffered injury in fact as a result of Defendant's actions as set forth herein because they purchased the Product in reliance on Defendant's false and misleading labeling claims concerning the Product's sugar content.

135.     Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Product in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from their advertising.

136.     Defendant profited from the sale of falsely and deceptively advertised Products to unwary consumers.

137.     As a result, California Plaintiffs, California Class members, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

138.     Pursuant to Cal. Bus. & Prof. Code § 17535, California Plaintiffs, on behalf of members of the California subclasses, seek an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## COUNT SEVEN
## VIOLATIONS OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT
Cal. Civ. Code § 1750, *et seq*. (the "CLRA")
**(On behalf of the California Class)**

139.     The California Plaintiffs identified above, individually and on behalf of the California Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

140.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

141.     Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Product for personal, family, or household

purposes by California Plaintiffs and Class members, and violated and continue to violate the following sections of the CLRA:

    a.  § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

    b.  § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

    c.  § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

    d.  § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

142.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

143.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

144.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff provided a letter to Defendant with notice of their alleged violations of the CLRA, demanding that Defendant correct such violations, and providing them with the opportunity to correct their business practices. Because Defendant has not corrected their business practices, Plaintiffs seek monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

145.    Pursuant to California Civil Code § 1780, California Plaintiffs also seek injunctive relief, their reasonable attorney fees and costs, and any other relief that the Court deems proper.

**COUNT EIGHT**
**VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT**
815 Ill. Comp. Stat. §§ 505, *et seq*.
**(On behalf of the Illinois Class)**

146.    The Illinois Plaintiff identified above, individually and on behalf of the Illinois Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

147.    Defendant is a "person" as defined by 815 Ill. Comp. Stat. § 505/1(c).

148.    The Illinois Plaintiff and Illinois Class members are "consumers" as defined by 815 Ill. Comp. Stat. § 505/1(e).

149.    Defendant's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 Ill. Comp. Stat. § 505/1(f).  Defendant's conduct is described in full detail above.

150.    Defendants' conduct constitutes deceptive, unfair, and unlawful trade acts or practices, in violation of 815 Ill. Comp. Stat. § 505/2.

151.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

152.    The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefit to consumers or to competition.

153.    As a direct and proximate result of Defendant's deceptive acts and practices, Illinois Plaintiff and Illinois Class Members have suffered and will continue to suffer injury, ascertainable

losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Steaz Tea.

154.    The Illinois Plaintiff and Illinois Class members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT NINE
## VIOLATIONS OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT,
815 Ill. Comp. Stat. §§ 505, *et seq*.

### (On behalf of the Illinois Class)

155.    The Illinois Plaintiff identified above, individually and on behalf of the Illinois Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

156.    Defendant is a "person" as defined by 815 Ill. Comp. Stat. § 510/1(5).

157.    Defendant engaged in deceptive trade practices in the conduct of its business, in violation of 815 Ill. Comp. Stat. § 510/2(a) by making misrepresentations and false statements concerning the sugar content of its Product.

158.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

159.    The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Illinois Plaintiff and Illinois Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

160.    As a direct and proximate result of Defendant's deceptive acts and practices, Illinois Plaintiff and Illinois Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Steaz Tea.

161.    The Illinois Plaintiff and Illinois Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

**COUNT TEN**
**<u>VIOLATIONS OF DECEPTIVE ACTS OR PRACTICES PROHIBITED BY</u>**
**<u>MASSACHUSETTS LAW</u>**
Mass. Gen. Laws ch. 93a, § 1, *et seq*.
**(On behalf of the Massachusetts Class)**

162.    The Massachusetts Plaintiff identified above, individually and on behalf of the Massachusetts Class, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

163.    Defendant, the Massachusetts Plaintiff, and the Massachusetts Class are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

164.    Defendant engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

165.    Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.

166.    In selling their Product, Defendant touted the low sugar content, when in reality their Product was actually high in added sugar.

167.     The Massachusetts Plaintiff and Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentation regarding the sugar content of the Product. Defendant's violations present a continuing risk to Massachusetts Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

168.     As a direct and proximate result of Defendant's violations of the Massachusetts Act, the Massachusetts Plaintiff and the Class have suffered injury-in-fact and/or actual damage.

169.     Pursuant to Mass. Gen. Laws ch. 93A, § 9, Massachusetts Plaintiffs and Class members seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Massachusetts Plaintiff and Massachusetts Class member.

170.     On September 23, 2020, Plaintiffs sent a letter complying with Mass. Gen. Laws ch. 93A, § 9(3). Because Defendant failed to remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which the Massachusetts Plaintiffs and the Massachusetts Classes are entitled.

## COUNT ELEVEN
## <u>VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW</u>
### N.Y. Gen. Bus. Law §§ 349, *et seq.*
### (On behalf of the New York Class)

171.     The New York Plaintiffs identified above, individually and on behalf of the New York Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

172.    Defendant engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, as described herein.

173.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

174.    Defendants acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded the New York Plaintiffs and New York Class members' rights.

175.    As a direct and proximate result of Defendant's deceptive acts and practices, New York Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Steaz Tea.

176.    Defendant's deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the thousands of New Yorkers who purchased and/or used Steaz Tea.

177.    The above deceptive and unlawful practices and acts by Defendant caused substantial injury to the New York Plaintiffs and Class members that they could not reasonably avoid.

178.    New York Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

**COUNT TWELVE**
**<u>FALSE ADVERTISING</u>**
N.Y. Gen. Bus. Law § 350

**(On behalf of the New York Class)**

179.     The New York Plaintiffs identified above, individually and on behalf of the New York Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

180.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way and which constitutes false advertising in violation of Section 350 of the New York General Business Law.

181.     Defendant's false, misleading, and deceptive statements and representations of fact include but are not limited to the representation that Steaz Tea was "lightly sweetened." Defendant also directed this representation to consumers.

182.     Defendant's false, misleading, and deceptive statement and representation of fact— that Steaz Tea was "lightly sweetened"—was and is likely to mislead a reasonable consumer acting reasonably under the circumstances.

183.     Defendant's false, misleading, and deceptive statement and representation of fact— that Steaz Tea was "lightly sweetened"—has resulted in consumer injury or harm to the public interest.

184.     The New York Plaintiffs and members of the New York Subclass have been injured because: (a) they would not have purchased Steaz Tea had they known that the product contained much more sugar than represented; (b) they paid a price premium for Steaz Tea based on Defendant's false and misleading statement; and (c) Steaz Tea did not have the characteristics and benefits promised because it contained a high level of added sugar. As a result, the New York Plaintiffs and the New York Subclass have been damaged in an amount to be proven at trial, but not less than

either the full purchase price of Steaz Tea, or the difference in value between Steaz Tea as advertised and the Steaz Tea as actually sold.

185.    As a result of Defendant's false, misleading, and deceptive statement and representation of fact (i.e., that Steaz Tea was "lightly sweetened") the New York Plaintiffs and members of the New York Subclass have suffered and continue to suffer economic injury.

186.    The New York Plaintiffs and members of the New York Subclass suffered an ascertainable loss caused by Defendant's misrepresentation because they paid more for Steaz Tea than they would have had they known the truth about the product.

187.    On behalf of themselves and other members of the New York Subclass, the New York Plaintiffs seek to enjoin Defendant's unlawful acts and practices described herein, to recover all damages permitted by statute and reasonable attorneys' fees.

### COUNT THIRTEEN
### VIOLATIONS OF OKLAHOMA CONSUMER PROTECTION ACT
Okla. Stat. tit. 15, §§ 751, *et seq*.
**(On behalf of the Oklahoma Class)**

188.    The Oklahoma Plaintiff identified above, individually and on behalf of the Oklahoma Class, repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

189.    Defendant is a "person," as meant by Okla. Stat. tit. 15, § 752(1).

190.    Defendant's advertisements, offers of sales, sales, and distribution of goods, services, and other things of value constituted "consumer transactions" as meant by Okla. Stat. tit. 15, § 752(2).

191.    Defendant, in the course of their business, engaged in unlawful practices in violation of Okla. Stat. tit. 15, § 753, including the following: making false representations, knowingly or with

reason to know, as to the characteristics, uses, and benefits of the subjects of its consumer transactions, in violation of Okla. Stat. tit. 15, § 753(5); representing, knowingly or with reason to know, that the subjects of consumer transactions were of a particular standard when they were of another, in violation of Okla. Stat. tit 15, § 753(7); advertising, knowingly or with reason to know, the subjects of consumer transactions with intent not to sell as advertised, in violation of Okla. Stat. tit 15, § 753(8); committing unfair trade practices that offend established public policy and was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers as defined by section 752(14), in violation of Okla. Stat. tit. 15, § 753(20); and committing deceptive trade practices that deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person as defined by section 752(13), in violation of Okla. Stat. tit. 15, § 753(20).

192.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

193.   The above unlawful practices and acts by Defendant were immoral, unethical, oppressive, unscrupulous, and substantially injurious. These acts caused substantial injury to the Oklahoma Plaintiff and Oklahoma Class members.

194.   As a direct and proximate result of Defendant's deceptive acts and practices, the Oklahoma Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Steaz Tea.

195.   The Oklahoma Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including actual damages, civil penalties, and attorneys' fees and costs.

**COUNT FOURTEEN**
**VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND**
**CONSUMER PROTECTION LAW,**
73 Pa. Cons. Stat. §§ 201-2 and 201-3, *et seq*.
**(On behalf of the Pennsylvania Class)**

196.     The Pennsylvania Plaintiff identified above, individually and on behalf of the Pennsylvania Class, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

197.     Defendant is a "person," as meant by 73 Pa. Cons. Stat. § 201-2(2).

198.     The Pennsylvania Plaintiff and Class members purchased goods and services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

199.     Defendant engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce in violation of 73 Pa. Cons. Stat. Ann. § 201-3, including the following: representing that goods and services have characteristics, uses, benefits, and qualities that they do not have (73 Pa. Stat. Ann. § 201-2(4)(v)); representing that goods and services are of a particular standard or quality if they are another (73 Pa. Stat. Ann. § 201-2(4)(vii)); and advertising goods and services with intent not to sell them as advertised (73 Pa. Stat. Ann. § 201-2(4)(ix)).

200.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

201.     As a direct and proximate result of Defendants' deceptive acts and practices, the Pennsylvania Plaintiff and Class members have suffered and will continue to suffer injury,

ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Steaz Tea.

202.    The Pennsylvania Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief the Court deems necessary or proper.

**COUNT FIFTEEN**
**<u>VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES</u>**
**<u>CONSUMER PROTECTION ACT</u>**
Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq*.
**(On behalf of the Texas Class)**

203.    The Texas Plaintiff identified above, individually and on behalf of the Texas Class, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

204.    Defendant is a "person," as defined by Tex. Bus. & Com. Code Ann. § 17.45(3).

205.    The Texas Plaintiff and the Class members are "consumers," as defined by Tex. Bus. & Com. Code Ann. § 17.45(4).

206.    Defendant advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code Ann. § 17.45(6).

207.    Defendants engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code Ann. § 17.46(b) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; representing that goods or services are of a particular standard, quality or grade, if they are of another; and advertising goods or services with intent not to sell them as advertised.

208.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

209.    Defendant engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). Defendant engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

210.    Consumers, including Texas Plaintiff and Class members, lacked knowledge regarding the above business practices, omissions, and misrepresentations because this information was known exclusively by Defendant.

211.    As a direct and proximate result of Defendant's deceptive acts and practices, Texas Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Steaz Tea.

212.    Defendant's violations present a continuing risk to the Texas Plaintiff and Class members as well as to the general public.

213.    Defendants received notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 concerning their wrongful conduct as alleged herein by Texas Plaintiffs Class members.  Texas Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including economic damages, treble damages for each act committed intentionally or knowingly, court costs, reasonably and necessary attorneys' fees, injunctive relief, and any other relief which the court deems proper.

## COUNT SIXTEEN

**VIOLATIONS OF WISCONSIN DECEPTIVE TRADE PRACTICES ACT**,
Wis. Stat. §§ 100.18, *et seq*.
**(On behalf of the Wisconsin Class)**

214.    The Wisconsin Plaintiffs identified above, individually and on behalf of the Wisconsin Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

215.    Defendant is a "person, firm, corporation or association," as defined by Wis. Stat. § 100.18(1).

216.    The Wisconsin Plaintiffs and Class members are members of "the public," as defined by Wis. Stat. § 100.18(1).

217.    With intent to sell, distribute, or increase consumption of merchandise, services, or anything else offered by Defendant to members of the public for sale, use, or distribution, Defendant made, published, circulated, placed before the public or caused (directly or indirectly) to be made, published, circulated, or placed before the public in Wisconsin advertisements, announcements, statements, and representations to the public which contained assertions, representations, or statements of fact which are untrue, deceptive, and/or misleading, in violation of Wis. Stat. § 100.18(1).

218.    Defendant also engaged in the above-described conduct as part of a plan or scheme, the purpose or effect of which was to sell, purchase, or use merchandise or services not as advertised, in violation of Wis. Stat. § 100.18(9).

219.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

220.    Defendant's failure to disclose the above-described facts is the same as actively representing that those facts do not exist.

221.    As a direct and proximate result of Defendants' deceptive acts or practices, the Wisconsin Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Steaz Tea.

222.    Defendants had an ongoing duty to all its customers to refrain from deceptive acts, practices, plans, and schemes under Wis. Stat. § 100.18.

223.    The Wisconsin Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including damages, reasonable attorneys' fees, and costs under Wis. Stat. § 100.18(11)(b)(2), injunctive relief, and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

a.   For an order certifying the Class and Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclasses and Plaintiffs' attorneys as Class Counsel;

b.   For an order declaring that Defendant's conduct violated the statutes referenced herein;

c.   For an order finding in favor of Plaintiffs, Class, and Subclasses on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiffs, the Class, and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: January 29, 2021

Respectfully submitted,

/s/ *David C. Magagna Jr.*
David C. Magagna Jr.
Charles E. Schaffer
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

Gary E. Mason *
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
gmason@masonllp.com

Gary M. Klinger*
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60630

gklinger@masonllp.com

Jeffrey S. Goldenberg*
**GOLDENBERG SCHNEIDER L.P.A.**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
jgoldenberg@gs-legal.com


*Attorneys for Plaintiffs*
*\* Pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Amended Class Action Complaint was filed electronically with the Court and was served via ECF on all counsel of record on this date.

Date:  January 29, 2021

/s/  David  C.  Magagna,  Jr.
David C. Magagna, Jr.