**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAMARTINE PIERRE JR., et al., | CIVIL ACTION NO. 2:20-CV-04934-GJP |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| HEALTHY BEVERAGE LLC d/b/a THE HEALTHY BEVERAGE COMPANY | |
| Defendant. | |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION
TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO
<u>FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)</u>**

Michael Eidel, Esquire
Clair E. Wischusen, Esquire
Attorney I.D. Nos. 94278; 306752
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Phone:  (215) 299-2000
Fax:  (215) 299-2150
Email:  meidel@foxrothschild.com
          cwischusen@foxrothschild.com
*Attorneys for Defendant
Healthy Beverage LLC d/b/a The Healthy
Beverage Company*

# <u>TABLE OF CONTENTS</u>

**Page**

I.      PRELIMINARY STATEMENT ................................................................... 1

II.     STATEMENT OF FACTS .......................................................................... 3

      A.      The Product ........................................................................................ 3

      B.      Plaintiffs' Allegations ....................................................................... 4

III.    LEGAL STANDARD ................................................................................. 6

IV.     ARGUMENT ............................................................................................. 7

      A.      Plaintiffs Lack Standing .................................................................... 7

            1.      Plaintiffs Fail to Plausibly Allege Injury in Fact ..................... 7

            2.      Plaintiffs Lack Standing to Pursue Injunctive Relief ..............11

            3.      Plaintiffs Lack Standing to Assert Nationwide State Law Claims ..........13

      B.      Plaintiffs' Threadbare Allegations Lack the Necessary Factual Support to Satisfy Rule 8(a)(2)......................................................................14

      C.      All of Plaintiffs Claims Should Be Dismissed Because Plaintiffs Do Not Plausibly Allege Any Conduct That is Misleading or Deceptive to a Reasonable Consumer. ........................................................................17

      D.      Plaintiffs' Consumer Fraud and False Advertising Claims Fail...........................21

            1.      Plaintiffs' Consumer Fraud and False Advertising Claims Fail to Satisfy Rule 9(b) as Required Under the Laws of California, Illinois, Massachusetts, Oklahoma, Pennsylvania, Texas, and Wisconsin ...........21

            2.      Plaintiffs' Wisconsin Deceptive Trade Practices Act Claim Fails...........23

      E.      Plaintiffs' Warranty Claims Fail........................................................23

            1.      Plaintiffs' Implied Warranty of Merchantability Claim Fails Because Plaintiffs Fail to Plausibly Allege Facts Establishing that the Product Was Unfit for Human Consumption........................................................24

            2.      Plaintiffs' Implied Warranty of Merchantability Claim Fails for Lack of Privity Under the Laws of New York, Wisconsin, California, and Illinois ........................................................................26

i

F.    Plaintiffs' Unjust Enrichment Claim Fails ........................................................27

    1.    Plaintiffs Cannot State a Nationwide Unjust Enrichment Claim. .............27

    2.    Plaintiffs' Unjust Enrichment Claim is Duplicative and Fails For the Same Reasons As Plaintiffs' Other Claims ...............................................28

    3.    Plaintiffs Do Not Plead the Lack of Adequate Remedies at Law, Thus Barring Their Claim Under Alaska, Illinois, Massachusetts, New York, and Oklahoma Law........................................................................29

    4.    Plaintiffs Do Not Allege They Conferred a Direct Benefit on Defendant As Required Under New York and Wisconsin Law ..............29

    5.    Plaintiffs Do Not Allege Defendant Failed to Provide a Good or Service As Required Under Pennsylvania Law. ......................................30

V.    CONCLUSION ............................................................................................32

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
  275 F. Supp. 3d 910 (N.D. Ill. 2017)....................................................................24

*Anwar v. Fairfield Greenwich Ltd.*,
  831 F. Supp. 2d 787 (S.D.N.Y. 2011), *aff'd sub nom. Pujals v. Standard
  Chartered Bank*, 533 F. App'x 7 (2d Cir. 2013)..................................................29

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 6, 15, 17

*In re Avandia Mktg., Sales Practices and Prod. Liab. Litig.*,
  2011 WL 4007908 (E.D. Pa. Sept. 7, 2011) ........................................................31

*Axon v. Citrus World, Inc.*,
  354 F. Supp. 3d 170 (E.D.N.Y. 2018)..................................................................23

*Bassaw v. United Indus. Corp.*,
  482 F. Supp. 3d 80 (S.D.N.Y. 2020)....................................................................16

*Basso v. New York Univ.*,
  2018 WL 2694430 (S.D.N.Y. June 5, 2018) ................................................. 16, 29

*Becerra v. Dr Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) .............................................................................17

*Belfiore v. Procter & Gamble Co.*,
  311 F.R.D. 29 (E.D.N.Y. 2015) .................................................................... 18, 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................... 2, 6, 14, 17

*Belmonte v. Baxter Healthcare Corp.*,
  2002 WL 560996 (Tex. App. Apr. 16, 2002) ......................................................16

*Bland v. Sequel Nat. Ltd.*,
  2019 WL 4674337 (N.D. Cal. Aug. 2, 2019) ......................................................25

*Boring v. Google, Inc.*,
  2010 WL 318281 (3d Cir. Jan. 28, 2010).............................................................30

*Brumfield v. Trader Joe's Co.*,
  2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018) (applying New York and
  California law) .....................................................................................................25

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ........................................................................................ 22

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ........................................................................................ 21

*Caronia v. Phillip Morris USA, Inc.*,
    715 F.3d 417 (2d Cir. 2013) ........................................................................................ 24

*Castaneda v. Fila USA, Inc.*,
    2011 WL 7719013 (S.D. Cal. Aug. 10, 2011) .............................................................. 24

*Chieftain Royalty Co. v. Dominion Okla. Tex. Expl. & Prod., Inc.*,
    2011 WL 9527717 (W.D. Okla. July 14, 2011) ........................................................... 29

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ........................................................................................................ 14

*Clark v. Perfect Bar*,
    2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018) .................................................... 19

*Clever Ideas, Inc. v. Citicorp Diners Club, Inc.*,
    2003 WL 21982141 (N.D. Ill. Aug. 20, 2003) ............................................................. 16

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra
    Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) ............................................................. 26

*Crozier v. Johnson & Johnson Consumer Cos.*,
    901 F. Supp. 2d 494 (D.N.J. 2012) ................................................................................ 6

*Danvers Motor Co., Inc. v. Ford Motor Co.*,
    432 F.3d 286 (3d Cir. 2005) ........................................................................................... 7

*Direct Dev., Inc. v. At World Props., LLC*,
    2010 WL 2079958 (E.D. Wisc. May 24, 2010) ........................................................... 21

*In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig*,
    2013 WL 5503308 (D.N.J. Oct. 2, 2013) ..................................................................... 14

*Emirat AG v. High Point Printing LLC*,
    248 F. Supp. 3d 911 (E.D. Wisc. 2017) ....................................................................... 30

*Erie Railroad Co. v. Tompkins*,
    304 U.S. 64 (1938) ........................................................................................................ 27

*Eromon v. Grand Auto Sales, Inc.*,
    351 F. Supp. 2d 825 (N.D. Ill. 2004) ........................................................................... 22

iv

*Estrada v. Johnson & Johnson*,
   2017 WL 2999026 (D.N.J. July 14, 2017) ........................................................8, 9

*Estrella-Rosales v. Taco Bell Corp.*,
   2020 WL 1685617 (D.N.J. Apr. 7, 2020)...............................................................18

*Exhibit Network Int'l, Ltd. v. Union Ins. Co.*,
   2020 WL 6785968 (S.D. Tex. Nov. 2, 2020) .........................................................21

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ..........................................................................18, 20

*In re Flonase Antitrust Litig.*,
   610 F. Supp. 2d 409 (E.D. Pa. 2009).............................................................27, 28

*Foote v. Polk*,
   2019 WL 148459 (W.D. Wis. Jan. 9, 2019) ....................................................25, 26

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007) ................................................................................6

*Gallego v. Wal-Mart Stores, Inc.*,
   707 N.W.2d 539 (Wis. Ct. App. 2005)..................................................................23

*Gedalia v. Whole Foods Mkt. Servs., Inc.*,
   53 F. Supp. 3d 943 (S.D. Tex. 2014)....................................................................24

*Guajardo v. Skechers USA, Inc.*,
   2020 WL 7038950 (C.D. Ill. Nov. 30, 2020)..........................................................26

*Guinn v. Hoskins Chevrolet*,
   836 N.E.2d 681 (Ill. App. 2005) .........................................................................29

*Hallam v. Perkins Coie LLP*,
   2008 WL 11429373 (D. Alaska Mar. 24, 2008) ...................................................15

*Hubert v. General Nutrition Corp.*,
   2017 WL 3971912 (W.D. Pa. Sept. 8, 2017)......................................................8, 9

*In re Johnson & Johnson Talcum Powder Products Mktg., Sales Practices and
   Liability Litig.*,
   903 F.3d 278 (3d Cir. 2018) ....................................................................9, 11, 12

*Koronthaly v. L'Oreal USA, Inc.*,
   374 F. App'x 257 (3d Cir. 2010) ....................................................................9, 10

*La Vigne v. Costco Wholesale Corp.*,
   284 F. Supp. 3d 496 (S.D.N.Y. 2018), *aff'd*, 772 F. App'x 4 (2d Cir. 2019)............. 18, 19, 20

*Lackner v. Glosser,*
    892 A.2d 21 (Pa. Super. 2006) ............................................................................31

*Lavie v. Procter & Gamble Co.,*
    105 Cal. App. 4th 496 (2003) .............................................................................18

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ..............................................................................................7

*Lum v. Bank of Amer.,*
    361 F.3d 217 (3d Cir. 2004) .........................................................................22, 23

*Lynch v. Tropicana Prods., Inc.,*
    2013 WL 2645050 (D.N.J. June 12, 2013) ..........................................................23

*In re Magnesium Oxide Antitrust Litig.,*
    2011 WL 5008090 (D.N.J. Oct. 20, 2011) ...........................................................13

*Maneri v. Starbucks Corp. Store #1527,*
    2019 WL 5626650 (E.D. Pa. Oct. 31, 2019) ........................................................25

*Matthews v. Campbell Soup Co.,*
    380 F. Supp. 1061 (S.D. Tex. 1974) .....................................................................25

*Mazur v. Milo's Kitchen, LLC,*
    2013 WL 32452013 (W.D. Pa. June 25, 2013) ...............................................31, 32

*Mazza v. Am. Honda Motor Co.,*
    666 F.3d 581 (9th Cir. 2012) ...............................................................................27

*McNair v. Synapse Grp., Inc.,*
    672 F.3d 213 (3d Cir. 2012) ...........................................................................11, 12

*Mulligan v. QVC, Inc.,*
    631, 888 N.E.2d 1190 (App. Ct. 1st Dist. 2008)..................................................28

*N.Y. City Health & Hosp. Corp. v. Wellcare of N.Y., Inc.,*
    35 Misc. 3d 250 (N.Y. Sup. Ct. 2011)..................................................................30

*In re Niaspan Antitrust Litig.,*
    42 F. Supp. 3d 735 (E.D. Pa. 2014) .................................................................2, 13

*In re OSB Antitrust Litig.,*
    2007 WL 2253425 (E.D. Pa. Aug. 3, 2007) .........................................................13

*Pappalardo v. Combat Sports, Inc.,*
    2011 WL 6756949 (D.N.J. Dec. 23, 2011)...........................................................15

*Parrish v. Bank,*
    2016 WL 3906814 (W.D. Okla. July 14, 2016)....................................................21

*Peter v. Progressive Corp.,*
    2006 WL 438658 (Alaska Feb. 26, 2006) ...........................................................29

*Petrosino v. Stearn's Prod., Inc.,*
    2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) ....................................................16

*Prince v. LeVan,*
    486 P.2d 959 (Alaska 1971) ...............................................................................25

*Rahman v. Motts LLP,*
    2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) ..................................................12

*Rapp v. Green Tree Servicing, LLC,*
    302 F.R.D. 505 (D. Minn. 2014)........................................................................27

*Reyes v. Crystal Farms Refrig. Dist. Co.,*
    2019 WL 3409883 (E.D.N.Y. July 26, 2019) ....................................................18

*Ries v. Arizona Beverages USA LLC,*
    287 F.R.D. 523 (N.D. Cal. 2012) .......................................................................16

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.,*
    311 F.3d 198 (3d Cir. 2002) ...............................................................................21

*Rojas-Lozano v. Google, Inc.,*
    159 F.Supp.3d 1101 (N.D. Cal. 2016).................................................................28

*Ruggiero v. Perdue Poultry Co.,*
    1997 WL 811530 (S.D.N.Y. Sept. 29, 1997)......................................................25

*Salazar v. Honest Tea, Inc.,*
    74 F. Supp. 3d 1304, 1317 (E.D. Cal. 2014) ....................................................20

*Santagate v. Tower,*
    833 N.E.2d 171 (Mass. App. Ct. 2005)...............................................................29

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action,*
    678 F.3d 235 (3d Cir. 2012) .................................................................................6

*Schmidt v. Ford Motor Co.,*
    972 F.Supp.2d 712 (E.D. Pa. 2013) ............................................................16, 21

*In re Shop-Vac Mktg. & Sales Practices Litig.,*
    964 F. Supp. 2d 355 (M.D. Pa. 2013) ..........................................................14, 15

*Silva v. Rite Aid Corp.*,
   416 F. Supp. 3d 394 (M.D. Pa. 2019) ................................................................12

*Smith v. Pizza Hut, Inc.*,
   2011 WL 2791331 (D. Colo. July 14, 2011) ........................................................13

*Solak v. Hain Celestial Grp., Inc.*,
   2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018) ......................................................24

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................................21

*Spokeo, Inc. v. Robins*,
   --- U.S. ---, 136 S. Ct. 1540 (2016) ....................................................................7

*Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris, Inc.*,
   171 F.3d 912 (3d Cir. 1999) ..............................................................................31

*Stoneback v. ArtsQuest*,
   2013 WL 3090714 (E.D. Pa. June 20, 2013)......................................................12

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) ................................................................................6

*Tatum v. Takeda Pharm. N.A., Inc.*,
   2012 WL 5182895 (E.D. Pa. Oct. 19, 2012) ..........................................30, 31, 32

*Tiffin v. Great Atl. & Pac. Tea Co.*,
   156 N.E.2d 249 (Ill. App. Ct.), *aff'd*, 162 N.E.2d 406 (Ill. 1959) ........................25

*Toll Bros., Inc. v. Twp. of Readington*,
   555 F.3d 131 (3d Cir. 2009) ................................................................................7

*Tomasella v. Nestle USA, Inc.*,
   364 F. Supp. 3d 26 (D. Mass. 2019), *aff'd*, 962 F.3d 60 (1st Cir. 2020) ..............28

*Tomasino v. Estee Lauder Cos. Inc.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014)................................................16, 26, 27, 28

*Truxel v. Gen Mills Sales, Inc.*,
   2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019)...........................................20

*Watkins v. Omni Life Sci., Inc.*,
   692 F.Supp.2d 170 (D. Mass. 2010) ..................................................................21

*Weisblum v. Prophase Labs, Inc.*,
   88 F.Supp.3d 283 (S.D.N.Y. 2015)....................................................................28

*In re Wellbutrin*,
    260 F.R.D. ........................................................................................ 13, 27, 28

*Westchester Cnty. v. Gen. Motors Corp.*,
    555 F.Supp. 290 (S.D.N.Y.1983) ........................................................26

*Whitaker v. Herr Foods, Inc.*,
    198 F. Supp. 3d 476 (E.D. Pa. 2016) ..................................................28

*Whitmore v. Ark.*,
    495 U.S. 149 (1990) ..........................................................................7, 8

*Wilson v. Johnson*,
    2006 WL 1555809 (W.D. Okla. June 5, 2006) ..................................16

*Xi Chen Lauren v. PNC Bank, N.A.*,
    296 F.R.D. 389 (W.D. Pa. 2014) ....................................................13, 14

*Young v. Johnson & Johnson*,
    2012 WL 1372286 (D.N.J. Apr. 19, 2012) ..................................8, 9, 10

*Zafarana v. Pfizer, Inc.*,
    724 F.Supp.2d 545 (E.D. Pa. 2010) ....................................................32

**Statutes**

28 U.S.C. § 2072(b) ........................................................................................14

U.S. Const. art. III, § 2, cl. 1 ...........................................................................7

Wis. Stat. Ann. § 100.18 ..........................................................................16, 23

Wis. Stat. Ann. § 100.183..............................................................................23

**Rules**

Fed. R. Civ. P. 1 ............................................................................................14

Fed. R. Civ. P. 8(a)(2) ..............................................................2, 14, 15, 22, 24

Fed. R. Civ. P. 9(b) ......................................................................2, 6, 21, 22, 23

Fed. R. Civ. P. 12(b)(1) ..................................................................................6

Fed. R. Civ. P. 12(b)(6) ..................................................................................6

Fed. R. Civ. P. 23 ..........................................................................................14

I. **PRELIMINARY STATEMENT**

Plaintiffs are twelve purchasers of Steaz® Organic Lightly Sweetened Iced Green Tea who allege Defendant misled them about the sugar content in the product. Wholly undermining Plaintiffs' claim is the fact that the product label plainly states: (1) the amount of sugar, (2) the amount of added sugar, and (3) the percent daily value of added sugar in the product. In spite of this, Plaintiffs seek to represent a nationwide class of consumers pretending they could not determine the amount of sugar in the product. Plaintiffs seek damages and other relief based on the theory that the product's sugar content should be lower than the label says it is because the label describes the product's taste as "lightly sweetened." Plaintiffs initially asserted a single count for unjust enrichment and then amended their Complaint with fifteen additional causes of action. Plaintiffs' Amended Complaint should be dismissed because Plaintiffs lack standing and fail to state a claim on any of their causes of action.

First, Plaintiffs lack standing because they fail to plausibly allege a concrete and particularized injury in fact. While Plaintiffs contend they were deceived into purchasing the product, the Amended Complaint is devoid of any allegations about how much sugar Plaintiffs and other consumers believed was in the product and how the product's sugar content differed from that belief. Because conjectural or hypothetical injury does not confer Article III standing, Plaintiffs' Complaint should be dismissed.

Second, Plaintiffs lack standing to pursue injunctive relief because they fail to plausibly allege they are likely to suffer future injury from Defendant's conduct. To the contrary, the allegations in the Amended Complaint establish that Plaintiffs are unlikely to suffer future injury because they concede they no longer purchase the product and they know how much sugar the product contains.

Third, even if Plaintiffs could plausibly allege injury in fact – which they do not – Plaintiffs lack standing to bring nationwide state law warranty and unjust enrichment claims because Plaintiffs only allege they suffered an injury in nine states.  "[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside in or in which they suffered no injury."  *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 757-59 (E.D. Pa. 2014) (quotation omitted).

Fourth, Plaintiffs' threadbare allegations about their purchases of the product lack the necessary factual support to satisfy Federal Rule of Civil Procedure 8(a)(2).  Because Plaintiffs' Amended Complaint fails to provide even the most basic information about when and how many times they purchased the Product, Plaintiffs fail to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007).

Fifth, all of Plaintiffs' claims fail because they are premised on an implausible theory of deception and misrepresentation.  No reasonable consumer would interpret the statement "lightly sweetened" – a subjective claim about the product's taste – to mean that the product is lower in sugar *than is explicitly stated on the label*.  Several courts have dismissed similar "sugar" claims at the pleading stage, and their rulings provide persuasive reasoning for this Court.

Sixth, Plaintiffs' consumer fraud and false advertising claims fail on additional independent grounds: (i) Plaintiffs fail to plead their claims with particularity as required by Federal Rule of Civil Procedure 9(b); and (ii) Plaintiffs' Wisconsin Deceptive Trade Practices Act claim is inapplicable to articles of food like the subject product.

Seventh, Plaintiffs' claims for breach of express and implied warranties fail on additional independent grounds: (i) Plaintiffs cannot state a nationwide express or implied breach of warranty claim; (ii) Plaintiffs fail to plausibly allege that they provided notice of the alleged breaches within

a reasonable time after discovery; (iii) Plaintiffs cannot allege that the Product was unfit for human consumption; and (iv) Plaintiffs fail to establish privity of contract with Defendant as required to state an implied warranty of merchantability claim.

Eighth, Plaintiffs' unjust enrichment claim also fails on additional independent grounds: (i) Plaintiffs cannot state an unjust enrichment claim on a nationwide basis; (ii) Plaintiffs' unjust enrichment claim is duplicative of Plaintiffs' other claims; (iii) Plaintiffs do not allege lack of adequate remedies at law; (iv) Plaintiffs' allegations, even if proven, would fail to establish a direct benefit conferred on Defendant; and (v) Plaintiffs do not allege that Defendant failed to provide a good or service as required under Pennsylvania law.

For all these reasons, as further detailed below, the Court should dismiss the Amended Complaint in its entirety.  Because Plaintiffs already exercised the option to amend, the dismissal should be with prejudice.

## II.    STATEMENT OF FACTS

### A.    The Product

Defendant manufactures and distributes Steaz® Organic Iced Green Tea products in several varieties, including the "lightly sweetened" variety here (the "Product").  FAC [ECF # 15] ¶¶ 1, 20 at n. 7, 68.  The Product label includes a "Nutrition Facts" panel in bold that lists, among other things: (1) the calories; (2) the total amount of sugar; (3) the amount of added sugar; and (4) the percentage daily value of sugar.  *Id.* at ¶ 65.

As stated on the Product label, a 16 fluid-ounce can contains 80 calories, 20 grams of sugar, all of which is added sugar, and which constitutes 40% daily value of added sugar.  *Id.*  The label describes the Product's taste as "lightly sweetened."  *Id.*  Nothing on the label states that the Product is "low in sugar" or "low in added sugar."  *Id.*



### B.    Plaintiffs' Allegations

Plaintiffs allege that the "Lightly Sweetened" statement on the Product label led them to believe that the Product is "low in sugar." FAC ¶¶ 42-53. Plaintiffs contend that 20 grams of sugar is "high in sugar." *Id.* at ¶ 5. Plaintiffs do not state what they believe "low in sugar" to mean, or what amount of sugar would be "low in sugar."

Plaintiffs claim that Defendant charges a "premium" for the Product. *Id.* at ¶ 7. Plaintiffs do not plead the amount of the alleged premium, except to compare the Product's price to that of another iced tea product that is neither organic nor fair trade and uses high fructose corn syrup.[1] *Id.* at ¶ 62 and n. 14. Each Plaintiff claims he or she "would not have purchased or paid more for the Product had [he/she] known or was aware that the Product was not low in sugar, but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label." *Id.* at ¶¶ 42-53. Plaintiffs do not state whether any of the twelve Plaintiffs read

---

[1]    *See*    https://www.target.com/p/arizona-green-tea-with-ginseng-and-honey-23-fl-oz-can/-/A-14752526?ref=tgt_adv_XS000000&AFID=google_pla_df&fndsrc=tgtao&DFA=717000000127 32781&CPNG=PLA_Grocery%2BShopping_Local&adgroup=SC_Grocery&LID=70000000117 0770pgs&LNM=PRODUCT_GROUP&network=g&device=c&location=9007179&targetid=pla -867280311487&ds_rl=1246978&ds_rl=1248099&gclid=EAIaIQobChMIvICb_unJ7QIVQZ-GCh14wQ2tEAQYAiABEgLJQ_D_BwE&gclsrc=aw.ds (last accessed March 22, 2021).

the Nutrition Facts panel – which all reasonable consumers know sets forth the specific sugar content – on the multiple occasions they allegedly purchased the Product over the past four years. *Id.*  However, Plaintiffs paste a copy of the Nutrition Facts panel in their Complaint showing they are aware that the label contains a Nutrition Facts panel that prominently displays the sugar content in the Product. *Id.* at ¶ 68.  Plaintiffs claim they would only purchase the Product again if it "were remedied or reformulated." *Id.* at ¶¶ 42-53.  Plaintiffs do not allege how the Product would need to be remedied or reformulated to satisfy them.

Plaintiffs reside in and allegedly purchased the Product in nine states (Alaska, California, Illinois, Massachusetts, New York, Oklahoma, Pennsylvania, Texas, and Wisconsin). *Id.* at ¶¶ 25-36, 42-53.  Each Plaintiff claims to have purchased the Product "several times over the last four years" exclusively in his or her home state. *Id.* at ¶¶ 42-53.  Plaintiffs do not allege when and how many times they allegedly purchased the Product or what specific flavors or varieties they purchased. *Id.*  Plaintiffs do not allege any adverse reactions or physical harm of any kind. *Id.* Plaintiffs seek various categories of damages, injunctive relief, and attorneys' fees and costs. *Id.* at pp. 43-44.

Based on these allegations, Plaintiffs assert sixteen claims: (1) Breach of Express Warranty; (2) Breach of Implied Warranty of Merchantability; (3) Unjust Enrichment; (4) Violations of Alaska Consumer Protection Act; (5) Violations of California Unfair Competition Law; (6) Violations of California False Advertising Law; (7) Violations of California Consumer Legal Remedies Act; (8) Violations of Illinois Consumer Fraud and Deceptive Business Practices Act; (9) Violations of Illinois Uniform Deceptive Trade Practices Act; (10) Violations of Deceptive Acts or Practices Prohibited by Massachusetts Law; (11) Violations of New York General Business Law; (12) False Advertising under New York General Business Law § 350; (13)

Violations of Oklahoma Consumer Protection Act; (14) Violations of Pennsylvania Unfair Trade Practices and Consumer Protection Law; (15) Violations of Texas Deceptive Trade Practices Consumer Protection Act; and (16) Violations of Wisconsin Deceptive Trade Practices Act.[2]

## III.   LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(1), a court must dismiss a complaint where plaintiffs lack standing. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012). In addition, a complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)).

Because Plaintiffs' consumer protection and false advertising claims sound in fraud, those claims need to satisfy the more "stringent pleading requirements" of Rule 9(b), through which a plaintiff is required to "state with particularity the circumstances of the alleged fraud or otherwise inject the requisite precision into her allegations." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *see also* Fed. R. Civ. P. 9(b). "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of . . . fraud with all of the essential factual background that would accompany the 'first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006) (quotation marks and citation omitted). In the class action context, "each 'individually named plaintiff must satisfy Rule 9(b) independently.'" *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) (citation omitted).

---

[2] Plaintiffs purport to assert their common law claims in Counts I, II, and III on behalf of a nationwide class. Plaintiffs assert their statutory state law claims in Counts IV-XVI on behalf of individual state classes from those states.

IV.   <u>**ARGUMENT**</u>

A.   <u>**Plaintiffs Lack Standing**</u>

Plaintiffs lack standing in three respects.  First, Plaintiffs lack Article III standing for all of their claims because they fail to plausibly allege an injury in fact.  Second, Plaintiffs lack standing to pursue injunctive relief because they fail to plausibly allege a likelihood of future harm.  Third, Plaintiffs lack standing to assert nationwide state law claims under the laws of states in which they do not reside and do not allege injury.

1.   <u>**Plaintiffs Fail to Plausibly Allege Injury in Fact**</u>

Standing is a threshold jurisdictional requirement derived from Article III's case-or-controversy requirement.  U.S. Const. art. III, § 2, cl. 1.  To satisfy "the irreducible constitutional minimum of standing," Plaintiffs must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Although all three elements must be met, "the injury-in-fact element is often determinative."  *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009).

To establish an injury in fact, Plaintiffs must plead facts showing the "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 561.  Although "[i]njury-in-fact is not Mount Everest," *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005), the complaint still must "clearly and specifically set forth facts sufficient to satisfy this requirement."  *Whitmore v. Ark.*, 495 U.S. 149, 156 (1990) (citation omitted).

Plaintiffs fail to plausibly allege a concrete and particularized injury in fact.  The essence of Plaintiffs' allegations is they believe the Product contains excess sugar – although they never

aver by what amount.  Plaintiffs allege that sugar consumption is harmful and that Defendants misled consumers by labeling the Product "lightly sweetened."  FAC ¶¶ 3, 12-16.  Plaintiffs rely on generic allegations about excess sugar consumption and potential health effects.  *Id.* at ¶¶ 13-16.  Plaintiffs do not, however, allege that they themselves suffered any adverse health consequences from consuming the Product.  *Id.* at ¶¶ 42-53.  Indeed, Plaintiffs do not allege that they consumed the Product at all – merely that it was "purchased."  *Id.*  While Plaintiffs contend they were misled into paying more for the Product than they otherwise would have, nowhere do Plaintiffs state how much sugar consumers believed the Product contained and how the Product's sugar content failed to meet that belief.  Plaintiffs' failure to plead basic facts about how Plaintiffs were supposedly misled into paying an unspecified premium for the Product deprives Plaintiffs of Article III standing.

Courts in this Circuit routinely reject similar speculative and unsubstantiated price premium allegations as insufficient to establish injury-in-fact.  *See Hubert v. General Nutrition Corp.*, 2017 WL 3971912, at *8 (W.D. Pa. Sept. 8, 2017) (holding plaintiffs' broad averment that GNC's alleged omissions and misrepresentations caused them to pay more for supplements than they otherwise would have paid, without any supporting factual allegations, was insufficient to establish an injury-in-fact); *Estrada v. Johnson & Johnson*, 2017 WL 2999026, at *15 (D.N.J. July 14, 2017) ("threadbare" allegation that, as a result of defendant's misrepresentation, plaintiff purchased defendant's baby power product at a premium, was insufficient to establish injury-in-fact); *Young v. Johnson & Johnson*, 2012 WL 1372286, at *4 (D.N.J. Apr. 19, 2012) (rejecting plaintiff's contention that he satisfied injury-in-fact requirement based on allegations he paid a premium price because he believed Benecol® was healthy, when in fact it was not).

As in *Hubert*, *Estrada*, and *Young*, Plaintiffs' vague and conclusory price premium allegations are insufficient to establish an injury in fact because they do not even attempt to identify how much of a premium consumers allegedly pay for iced tea that is "lightly sweetened," and how low the sugar contents needs to be to justify such a premium. *See In re Johnson & Johnson Talcum Powder Products Mktg., Sales Practices and Liability Litig.*, 903 F.3d 278, 288 (3d Cir. 2018) (Article III requires a plaintiff "to do more than simply pair a conclusory assertion of money lost with a request that a defendant pay up").

Plaintiffs' allegations that they paid a premium for the Product because they believed it was "low in sugar" is also at odds with other allegations in the Amended Complaint that allege Plaintiffs paid a premium for the Product because they perceived it as "high quality." FAC ¶ 60. Plaintiffs do not allege whether the premium consumers paid for the Product being "high quality" is the same or different from the premium they allegedly paid for the Product being "low in sugar," and how they propose to parse that out.

Plaintiffs also fail to establish injury in fact based upon their allegations that they paid money for a Product advertised as "lightly sweetened" and they received an "inferior" Product that they otherwise would not have purchased if they had known about the sugar content. FAC ¶¶ 8-9, 42-53. The Third Circuit has rejected similar allegations absent an allegation that the product failed to work for its intended purpose or was worth objectively less than what one could expect. *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010).

In *Koronthaly*, the Third Circuit affirmed the district court's dismissal for lack of standing where the plaintiff claimed defendant deceived her into purchasing lipstick containing lead that she would not have purchased had she known about the lead content. *Id.* at 258. Holding that no standing existed, the Third Circuit deemed it significant the plaintiff did not allege she suffered

any adverse health consequences from using the lipstick, and her subjective allegation that trace amounts of lead in the lipstick were unacceptable to her was not an injury in fact. *Id.* at 259. In rejecting plaintiff's claim that the injury in fact was the loss of the "benefit of the bargain," the Third Circuit explained that she mistakenly relied on contract law. *Id.* Because the plaintiff's lipstick purchases were not made pursuant to a contract, she could not have been denied the benefit of any bargain. *Id.* The Third Circuit held that "[a]bsent any allegation that [the plaintiff] received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect, [she] has not demonstrated a concrete injury-in-fact." *Id.*

Similarly, in *Young v. Johnson & Johnson*, 2012 WL 1372286, at *1 (D.N.J. 2012), the district court determined that the plaintiff lacked standing in a case involving the alleged misrepresentation of the nutritional content and health benefits of the butter/margarine substitute Benecol®. The court held that the plaintiff did not sufficiently plead an injury in fact because he merely alleged that he purchased Benecol® on multiple occasions during a five-year period, but he did not allege that he actually consumed it or that he suffered any adverse health effects from the product. *Id.* at *3. The court rejected plaintiff's contention that he satisfied the injury in fact requirement based on allegations he was deprived of the "benefit of the bargain," received an inferior product, and paid a premium price because he believed the product was healthy, when in fact it was not. *Id.* at *4. In finding no economic injury, the court explained that the plaintiff's purchases of Benecol® were not made pursuant to a contract, and he did not sufficiently allege how he paid a premium for it or received a product that did not deliver the advertised benefits. *Id.* (citing *Koronthaly*, 374 Fed.Appx. 259).

This same analysis requires that Plaintiffs' claims be dismissed here. Plaintiffs' claims amount to no more than their subjective disagreement with the statement "lightly sweetened"

10

because Plaintiffs deem the sugar content too high.  However, a consumer is not injured whenever

a product is not formulated in a manner the consumer believes is ideal.  Plaintiffs' allegations are

insufficient to establish injury-in-fact, particularly in light of Plaintiffs' failure to allege that they

suffered any adverse health consequences from the Product and the explicit label and website

disclosure stating the amount of sugar, the amount of added sugar, and the percent daily value of

sugar in the Product.  Plaintiffs' purchases were not made pursuant to a contract and Plaintiffs do

not allege facts establishing that the Product failed to work for its intended purpose or that it was

worth objectively less than what one could reasonably expect.  Thus, Plaintiffs fail to allege a

concrete and particularized injury in fact and therefore lack Article III standing.

### 2.    <u>Plaintiffs Lack Standing to Pursue Injunctive Relief</u>

Plaintiffs also fail to plausibly allege facts demonstrating that they have standing to seek

injunctive relief.  A plaintiff seeking injunctive relief bears the burden of establishing that they are

"'likely to suffer future injury'" from the defendant's conduct.  *In re Johnson & Johnson Talcum*

*Powder Prod. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 292 (3d Cir. 2018) (quoting

*McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 225 (3d Cir. 2012)).  In class actions, at least one

named plaintiff must satisfy this future injury requirement.  *McNair*, 672 F.3d at 223 (citations

omitted).

Plaintiff's Amended Complaint does not allege future injury.  Plaintiffs admit facts

establishing no likelihood of future harm because Plaintiffs concede they are no longer purchasing

the Product.  FAC ¶¶ 42-52 (alleging Plaintiffs would only purchase the Product in the future if

the Product were "remedied or reformulated to be in accordance with Defendant's representation

on the label.").

Plaintiffs also fail to allege facts that would establish a likelihood of future harm because

they plead that they already know how much sugar is in the Product.  FAC ¶ 20 ("the Product

contains 20 grams of added sugar").  The Third Circuit holds that former customers "who [are] already aware of . . . allegedly deceptive business practices from which they sought future protection" lack standing to pursue injunctive relief regarding the marketing of a product.  *See, e.g., In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 292-93 (3d Cir. 2018) (citing *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 225 (3d Cir. 2012)).  As the Third Circuit has explained, "the law accords people the dignity of assuming that they act rationally, in light of the information they possess." *Id.*

Courts regularly dismiss claims for injunctive relief where the plaintiff already knows the alleged "truth" about the product because he or she cannot personally be deceived by such marketing in the future.  *Silva v. Rite Aid Corp.*, 416 F. Supp. 3d 394, 400 (M.D. Pa. 2019) ("In short, plaintiffs ask us to presume they will be fooled again and again . . . . We decline to do so and accordingly dismiss their request for injunctive relief.") (quotation and alteration omitted); *Stoneback v. ArtsQuest*, 2013 WL 3090714, at *1, *12 (E.D. Pa. June 20, 2013) (concluding injunctive relief was unavailable where defendants advertised commemorative beer mugs as made in Germany when the mugs were made in China, because the plaintiffs "now know the origin of the steins and mugs," so "it is difficult to discern how they would be injured by future misrepresentations from defendants"); *see also Rahman v. Motts LLP*, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018) (concluding that plaintiff lacked standing to seek injunctive relief because "whatever his prior state of knowledge, [plaintiff] is now fully aware that 'No Sugar Added' simply means that no sugar was added to a product").  Similarly, here, Plaintiffs' knowledge that the Product contains 20 grams of sugar forecloses any claim of future deception by Plaintiffs.  Plaintiffs' claim for injunctive relief should be dismissed for lack of standing.

### 3.   Plaintiffs Lack Standing to Assert Nationwide State Law Claims

Plaintiffs also lack standing to assert nationwide warranty and unjust enrichment claims (Counts I, II, and III).  It is well settled that named plaintiffs to a putative class action lack standing to assert claims "under the laws of states in which they do not reside or in which they suffered no injury."  *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d at 758 (quotation omitted); *see also In re OSB Antitrust Litig.*, 2007 WL 2253425, at *1 (E.D. Pa. Aug. 3, 2007) ("[L]acking named representatives from Arizona, New Mexico, and South Dakota, Plaintiffs do not have standing to maintain a class action in those states.").  Standing does not exist "where named plaintiffs assert analogous causes of action under the laws of many states" because they "cannot specifically tie their injuries to each state," *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *8 (D.N.J. Oct. 20, 2011), "nor [are they] protected by those laws."  *Smith v. Pizza Hut, Inc.*, 2011 WL 2791331, at *8 (D. Colo. July 14, 2011).

The sole alleged injury in this case is the purchase of iced tea that – according to Plaintiffs – has too much sugar.  Thus, Plaintiffs may sue only under the laws of states in which they reside or in which they purchased the Product.  Plaintiffs allege they are residents of, and purchased the Product in, only nine states (Alaska, California, Illinois, Massachusetts, New York, Oklahoma, Pennsylvania, Texas, and Wisconsin).  FAC ¶¶ 25-36, 42-53.  As such, they lack standing to assert state law claims under the laws of states other than those nine and, accordingly, the nationwide class allegations against Defendant should be dismissed.  *See Xi Chen Lauren v. PNC Bank, N.A.*, 296 F.R.D. 389, 391 (W.D. Pa. 2014) (granting motion to dismiss where named plaintiff lacked standing to bring state law claims under the laws of states other than named plaintiff's own state); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d at 758 (same).

The Court should not delay ruling on standing until class certification, as Plaintiffs may argue.  *See In re Wellbutrin*, 260 F.R.D. at 155 (declining to delay standing analysis until class

certification).    Standing  is  an  essential  precursor  to  certification  proceedings  because:  (1)

constitutional standing is a "threshold requirement," *City of Los Angeles v. Lyons*, 461 U.S. 95,

101 (1983); (2) "named plaintiffs cannot rely on unidentified persons within those [foreign] states

to state a claim for relief," *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust

Litig.*, 2013 WL 5503308, at *11 (D.N.J. Oct. 2, 2013) (internal quotation marks omitted); and (3)

the Article III standing analysis cannot be merged with the Rule 23 class certification analysis

since under the federal Rule Enabling Act a procedural rule cannot alter a constitutional minimum.

*See* 28 U.S.C. § 2072(b) (procedural rules "shall not abridge, enlarge or modify any substantive

right").    Moreover, other courts in this Circuit have recognized that "deferring ruling on standing

until the close of the class certification process would not be consistent with Rule 1 because such

deferral would trigger extensive discovery costs and delay." *Xi Chen*, 296 F.R.D. at 390.  For

these same reasons, the Court should not delay the inevitable dismissal of Plaintiffs' nationwide

class allegations; the Court should dismiss them now.

     **B.**     **Plaintiffs' Threadbare Allegations Lack the Necessary Factual Support to Satisfy Rule 8(a)(2).**

Even if Plaintiffs had standing, their allegations lack the necessary factual support to "raise

a right to relief above the speculative level." *Twombly*, 550 U.S. at 554-55.  Although a complaint

need not contain "detailed factual allegations," Rule 8(a)(2) requires a "'showing,' rather than a

blanket assertion of entitlement to relief." *In re Shop-Vac Mktg. & Sales Practices Litig.*, 964 F.

Supp. 2d 355, 362–64 (M.D. Pa. 2013) (quoting *Twombly*, 550 U.S. at 554–55).  In a consumer

class action like this one, Rule 8(a)(2) requires plaintiffs to plead basic information about their

alleged purchases, including, at a minimum, which products they purchased, and when the

purchases were made.  *See, e.g., In re Shop-Vac Mktg.*, 964 F. Supp. 2d at 364 (dismissing

consumer class claims under Rule 8(a)(2) where plaintiffs failed to allege the dates, or even the

years, on which they purchased the subject products); *Pappalardo v. Combat Sports, Inc.*, 2011 WL 6756949, at *7 (D.N.J. Dec. 23, 2011) (holding that, by failing to plead which bats were purchased, and when the purchases were made, Plaintiffs' allegations constituted the type of 'unadorned, the-defendant-unlawfully-harmed-me' accusation that will not pass muster under the applicable pleading standard.") (quoting *Iqbal*, 556 U.S. at 678).

Here, Plaintiffs do not satisfy Rule 8(a)(2) because they fail to provide even the most basic information about their alleged purchases of the Product.  Indeed – for all twelve named Plaintiffs – the Amended Complaint simply repeats the same boilerplate assertion that they "purchased the Product several times over the last four years."  FAC ¶¶ 42-53.  Nowhere do Plaintiffs allege the dates of purchase, how many times they purchased the Product, which Product varieties they purchased, or the price paid.

Plaintiffs' deficient allegations fail to make an adequate showing under Rule 8(a)(2) in at least three respects.  *First*, by failing to allege the date, or even the year, when they purchased the Product, Plaintiffs fail to adequately show that they purchased the Product within the applicable statute of limitations.  *See In re Shop-Vac Mktg.*, 964 F. Supp. 2d at 363 ("Plaintiffs' failure to allege the dates, or even the years, on which they purchased their vacuums makes it impossible for the Court to determine whether they purchased the vacuums within the applicable statute of limitations period.").  Plaintiffs' vague assertions that they "purchased the Product several times over the last four years" are insufficient because many of Plaintiffs' claims have a statute of limitations period of three years or shorter.[3]  Thus, Plaintiffs fail to make an adequate showing that any of their claims are timely.

---

[3] For example, Counts IV, VI, VII, VIII, IX, XI, XII, XIII, XV, and XVI all have limitation periods of less than four years.  *See Hallam v. Perkins Coie LLP*, 2008 WL 11429373, at *2 (D. Alaska Mar. 24, 2008) ("claims under the Alaska Unfair Trade Practice and Consumer Protection Act are

*Second*, as to Plaintiffs' express warranty claim in Count I, by failing to allege when and how many times they purchased the Product, Plaintiffs fail to adequately show that Plaintiffs provided Defendant with notice of the alleged breaches within a reasonable time as required to state a claim for breach of an express warranty. *See Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 261-62 (E.D.N.Y. 2014) (dismissing breach of warranty claims for failure to provide notice within a reasonable time and finding that plaintiff's complaint "does not posit any reason why the products' alleged shortcomings would not have been readily discoverable so that [plaintiff] could have provided notice of the alleged breach of warranty without delay."). Courts dismiss express warranty claims where, as here, plaintiffs fail to "provide factual allegations, as opposed to conclusory statements, supporting the contention [they] notified Defendant of the alleged breach within a reasonable time after discovering them." *Petrosino v. Stearn's Prod., Inc.*, 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018); *see also Schmidt v. Ford Motor Co.*, 972 F.Supp.2d 712, 718 (E.D. Pa. 2013) ("In the context of a motion to dismiss, Plaintiffs must plead, at a minimum that she provided reasonable notification to state a viable claim for recovery or be barred from any remedy.") (quotation and alterations omitted); *Bassaw v. United Indus. Corp.*, 482

---

subject to the two-year statute of limitations."); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 534 (N.D. Cal. 2012) (claims under FAL and CLRA are governed by a three-year statute of limitations); *Clever Ideas, Inc. v. Citicorp Diners Club, Inc.*, 2003 WL 21982141, at *13 (N.D. Ill. Aug. 20, 2003) ("The three-year statute of limitations under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10(a)(e), has been applied to the Illinois Uniform Deceptive Trade Practices Act"); *Basso v. New York Univ.*, 2018 WL 2694430, at *2 (S.D.N.Y. June 5, 2018) ("The plaintiffs' GBL §§ 349 and 350 causes of action were dismissed as barred by the three-year statute of limitations."); *Wilson v. Johnson*, 2006 WL 1555809, at *3 (W.D. Okla. June 5, 2006) ("a three-year limitations period applies to plaintiff's Consumer Protection Act claims."); *Belmonte v. Baxter Healthcare Corp.*, 2002 WL 560996, at *1 (Tex. App. Apr. 16, 2002) ("DTPA violations are governed by a two year statute of limitations."); Wis. Stat. Ann. § 100.18 ("No action may be commenced under this section more than 3 years after the occurrence of the unlawful act or practice which is the subject of the action.")

F. Supp. 3d 80, 87 (S.D.N.Y. 2020) (dismissing express warranty claims as a matter of law where plaintiff failed to allege "facts that would permit the Court to conclude that he notified Defendants of the alleged breaches within a reasonable time after discovering them.").

*Third*, by failing to identify which Steaz tea varieties they allegedly purchased, Plaintiffs fail to adequately show that they purchased the subject Product. As Plaintiffs themselves acknowledge, Steaz Tea also comes in "zero-calorie" varieties that do not include the "lightly sweetened" statement. FAC ¶ 55 n. 11. Because the Amended Complaint's boilerplate allegations fail to provide *any* details concerning which varieties of Steaz Tea Plaintiffs allegedly purchased, Plaintiffs fail to make an adequate showing that they purchased the applicable Product.

Thus, Plaintiffs' failure to provide detailed factual allegations about their alleged purchases of the Product renders the allegations no more than "[t]hreadbare recitals of the elements of a cause of action," which "do not suffice." *Iqbal*, 550 U.S. at 678. Dismissal is therefore appropriate.

**C.** **All of Plaintiffs Claims Should Be Dismissed Because Plaintiffs Do Not Plausibly Allege Any Conduct That is Misleading or Deceptive to a Reasonable Consumer.**

All of Plaintiffs' claims fail because Plaintiffs do not plausibly allege any conduct by Defendant that is misleading or deceptive to a reasonable consumer, acting reasonably under the circumstances. This defect is fatal to all of Plaintiffs' claims because they are all premised on Defendant having made a misrepresentation and/or engaged in deceptive conduct. FAC ¶¶ 96, 101, 107, 113, 118, 133, 141, 150, 157, 167, 172, 181-183, 191, 199, 201, 207, 217.

Claims that a labeling statement is deceptive or misleading are governed by the "reasonable consumer" standard. *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228-29 (9th Cir. 2019). Under this standard, Plaintiffs must "show that members of the public are likely to be deceived." *Id.* (citation omitted). This requires more than a mere possibility that the phrase "lightly sweetened" "might conceivably be misunderstood by some few consumers viewing it in an

unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

Courts routinely dismiss at the pleadings stage false advertising claims premised on facially implausible interpretations of labeling statements. *See, e.g., Fink v. Time Warner Cable*, 714 F.3d 739, 740 (2d Cir. 2013) (finding it "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."); *Estrella-Rosales v. Taco Bell Corp.*, 2020 WL 1685617, at *2 (D.N.J. Apr. 7, 2020) (same); *see also Reyes v. Crystal Farms Refrig. Dist. Co.*, 2019 WL 3409883, at *5 (E.D.N.Y. July 26, 2019) (dismissing claims based on alleged misrepresentation that failed for lack of plausibility).

In determining whether a reasonable consumer would be misled by a particular advertisement, courts have observed "context is crucial" and "the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink*, 714 F.3d at 742. Courts have dismissed false advertising claims premised on arguably ambiguous statements where the remainder of the label or advertisement eliminates any ambiguity about the challenged statement. *See, e.g., Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context . . . . The entire mosaic is viewed rather than each tile separately."); *see also La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 512-514 (S.D.N.Y. 2018) (holding, on motion to dismiss, that packaging was not misleading because a reasonable consumer would consult the Nutrition Facts panel, which accurately disclosed method for calculating product weight), *aff'd*, 772 F. App'x 4 (2d Cir. 2019).

Here, Plaintiffs' interpretation of "lightly sweetened" is both unreasonable and implausible given the Product's explicit labeling. The Amended Complaint admits the Nutrition Facts panel on the Product accurately discloses the amount of sugar, the amount of added sugar, and the percent daily value of added sugar in the product. Because a reasonable consumer would consult the Nutrition Facts panel, *see, e.g., La Vigne, supra,* no deception could ever be plausibly alleged.

To the extent Plaintiffs suggest they only read the statement "lightly sweetened" – and not the Nutrition Facts panel – in determining whether the sugar content was acceptable, Plaintiffs admit that they were *un*reasonable consumers and therefore cannot state a claim. FAC ¶¶ 42-53.

Common sense also renders Plaintiffs' interpretation of "lightly sweetened" unreasonable because this phrase refers to the Product's subjective taste – not its objective sugar content. It is implausible to allege that a reasonable consumer would believe otherwise given that the Nutrition Facts panel – which courts hold a *reasonable* consumer would read – expressly states the sugar content in the Product.

Courts have rejected similar claims on this same basis. In *Clark v. Perfect Bar*, the court held that no reasonable consumer could be deceived regarding the product's sugar content, including whether or not the product was "healthy," *when the product's label plainly disclosed the amount of sugar in the product.* 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018) ("No consumer, on notice of the actual ingredients described on the packaging including honey and sugar, could reasonably overestimate the health benefits of the bar merely because the packaging elsewhere refers to it as a health bar . . . . **The honey/sugar content was properly disclosed – that is the end of it – period.**") (emphasis added).

Similarly, in *Truxel v. Gen Mills Sales, Inc.*, the court held that no reasonable consumer could be misled about the sugar content in defendant's cereal products based on objective facts on the front and side of the package:

> [T]he Court finds that Plaintiffs cannot plausibly claim to be misled about the sugar content of their cereal purchases because Defendant provided them with all truthful and required objective facts about its products, on both the side panel of ingredients and the front of the products' labeling. Here too, the actual ingredients were fully disclosed and it was up to the Plaintiffs, as reasonable consumers, to come to their own conclusions about whether or not the sugar content was healthy for them.

2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019).

In *Salazar v. Honest Tea, Inc.*, the court ruled the statement "Just a Tad Sweet" is a subjective and unverifiable statement that cannot form the basis of a consumer protection claim. 74 F. Supp. 3d 1304, 1317 (E.D. Cal. 2014). The court found that "Just a Tad Sweet" is a "vague and non-specific term[ ] that lack[s] any clear, objective indication of" the product's level of sweetness. *Id.* Implicit in this determination is a finding that the statement refers to the product's taste, not its sugar content.

In this case, even assuming the "lightly sweetened" statement implied a specific level of sugar content – which Plaintiffs fail to expressly allege – the above authorities demonstrate, as a matter of law, that there is no risk of deception because the label and website contain a Nutrition Facts panel that fully informs consumers about how much sugar the Product contains. A reasonable consumer does not view individual product label statements in a vacuum, but rather, interprets them with the benefit of context. *See, e.g., Fink*, 714 F.3d at 742 ("context is crucial"); *Belfiore*, 311 F.R.D. at 53 ("Courts view each allegedly misleading statement in light of its context . . . ."); *La Vigne*, 284 F. Supp. 3d at 512-514 (dismissing case because a reasonable consumer would consult the Nutrition Facts panel). With a prominent Nutrition Facts panel, it is implausible

to claim that reasonable consumers construe the statement "lightly sweetened" to mean that the Product contains less sugar than what Defendant explicitly states on the label.

### D.   Plaintiffs' Consumer Fraud and False Advertising Claims Fail

As set forth in Section IV.C above, all of Plaintiffs' consumer fraud and false advertising claims in Counts IV–XVI fail because Plaintiffs do not set forth a plausible claim of deception or misrepresentation that would mislead a reasonable consumer.  In addition, many of Plaintiffs' consumer fraud and false advertising claims fail for other independent reasons set forth below.

#### 1.   Plaintiffs' Consumer Fraud and False Advertising Claims Fail to Satisfy Rule 9(b) as Required Under the Laws of California, Illinois, Massachusetts, Oklahoma, Pennsylvania, Texas, and Wisconsin

Plaintiffs' consumer fraud and false advertising claims are defective under the laws of most of Plaintiffs' home states because Plaintiffs fail to plead their claims with particularity as required by Federal Rule of Civil Procedure 9(b).  Rule 9(b) governs such claims under the laws of California (Counts V, VI, VII), Illinois (VIII, IX), Massachusetts (Count X), Oklahoma (Count XIII), Pennsylvania (Count XIV), Texas (XV), and Wisconsin (Count XVI).[4]

Rule 9(b) requires the plaintiff to supply "all of the essential background that would accompany 'the first paragraph of any newspaper story' – that is, the 'who, what, when, where and how' of the events at issue."  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d

---

[4] *See In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 n. 20 (S.D. Cal. 2012) (applying Rule 9(b) to California UCL, FAL, and CLRA claims); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (applying Rule 9(b) to Illinois consumer protection claim); *Watkins v. Omni Life Sci., Inc.*, 692 F.Supp.2d 170, 177 (D. Mass. 2010) (applying 9(b) to Massachusetts consumer protection claim sounding in fraud); *Parrish v. Bank*, 2016 WL 3906814, *2 (W.D. Okla. July 14, 2016) (applying 9(b) to Oklahoma consumer protection claim); *Schmidt*, 972 F. Supp. 2d at 720 (applying 9(b) to Pennsylvania consumer protection claim); *Exhibit Network Int'l, Ltd. v. Union Ins. Co.*, 2020 WL 6785968, *2, *5 (S.D. Tex. Nov. 2, 2020) (applying 9(b) to Texas DTPA claim); *Direct Dev., Inc. v. At World Props., LLC*, 2010 WL 2079958, at *5 (E.D. Wisc. May 24, 2010) (applying 9(b) to Wisconsin consumer protection claim).

Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)).

Moreover, a plaintiff alleging fraud must state the circumstances of the alleged fraud with

sufficient particularity to place the defendant on notice of the "precise misconduct with which [it

is] charged." *Lum v. Bank of Amer.*, 361 F.3d 217, 223-224 (3d Cir. 2004).

Plaintiffs fail to comply with Rule 9(b) in at least two respects: the "when" and the "how."

First, as discussed in Section IV.B above, Plaintiffs' allegations are insufficient to even meet the

basic pleading requirements of Rule 8(a)(2) because they do not identify with any specificity *when*

or how many times they allegedly purchased the Product. Plaintiffs allege only that they purchased

the Product at some unspecified point during the past four years. FAC ¶¶ 42-53. Such "open-

ended time periods fail to satisfy the purpose behind Rule 9(b)" because they deprive Defendant

of sufficient information to defend against the claims. *Eromon v. Grand Auto Sales, Inc.*, 351 F.

Supp. 2d 825, 828 (N.D. Ill. 2004) (dismissing fraud claim for failure to satisfy Rule 9(b)).

Second, Plaintiffs allegations are also insufficient because they do not allege *how* they were

misled by the statement "lightly sweetened." In particular, Plaintiffs do not allege how much sugar

they believed was in the Product and whether or not they viewed the Nutrition Facts panel.

Plaintiffs merely allege they believed the Product was "low in sugar." FAC ¶¶ 42-53. But

Plaintiffs do not allege what "low in sugar" means to them and other consumer. *Id.* Nor do

Plaintiffs allege by what the amount of sugar the Product contains that exceeds this unspecified

and subjective "low in sugar" threshold. Plaintiffs' allegations are especially deficient because

they fail to explain how Plaintiffs were deceived by the statement "lightly sweetened" when the

label prominently displays the amount of sugar, the amount of added sugar, and the percent daily

value of sugar in the Product. These glaring omissions are fatal to Plaintiffs' theory of deception.

Without this critical information, Plaintiffs fail to place Defendant on notice of the "precise

misconduct with which [it is] charged" as required under Rule 9(b). *Lum v. Bank of Amer.*, 361 F.3d 217, 223-224 (3d Cir. 2004). Plaintiffs' consumer fraud and false advertising claims in Counts V, VI, VII, VIII, IX, X, XIII, XIV, XV, and XVI should be dismissed for failure to satisfy Rule 9(b).

### 2. **Plaintiffs' Wisconsin Deceptive Trade Practices Act Claim Fails**

The Wisconsin Plaintiffs, Rodriguez and Her, assert a claim under the Wisconsin Statute § 100.18 (Count XVI), which prohibits false and deceptive advertising for "merchandise." The Wisconsin Plaintiffs fail to state a claim under § 100.18 because that statute is not applicable to "articles of food." *See Gallego v. Wal-Mart Stores, Inc.*, 707 N.W.2d 539, 544 (Wis. Ct. App. 2005) ("When the 'statutory background' of §§ 100.18 and 100.183 is considered, it becomes clear that the legislature does not intend 'merchandise' in § 100.18 to include 'articles of food'"). The *Gallego* court found that another Wisconsin statute, § 100.183, is applicable to advertising involving "articles of food," but § 100.183 does not provide for a private right of action. *Id.* Thus, this Court should dismiss the Wisconsin Statute § 100.18 claim (Count XVI) because it is not applicable to articles of food like the subject Product. *See Lynch v. Tropicana Prods., Inc.*, 2013 WL 2645050, *8 (D.N.J. June 12, 2013) (dismissing Wisconsin Statute § 100.18 claim as inapplicable to action involving orange juice).

### E. **Plaintiffs' Warranty Claims Fail**

Plaintiffs' warranty claims in Counts I and II fail for multiple independent reasons. First, as set forth in Section IV.A.2 above, Plaintiffs lack standing to assert nationwide breach of express and implied warranty claims under the laws of states in which they do not reside or allege injury.

Second, as set forth in Section IV.A.1 above, Plaintiffs' warranty claims fail because Plaintiffs fail to set forth a plausible theory of deception. Because the "lightly sweetened" statement is insufficient as a matter of law to mislead a reasonable consumer, Plaintiffs cannot rely

on it for a breach of warranty claim.  *See, e.g., Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 185 (E.D.N.Y. 2018) ("[A] breach of express warranty claim is governed by the same reasonable consumer standard as Plaintiff's [NYGBL] claims.") (alteration in original); *Solak v. Hain Celestial Grp., Inc.*, 2018 WL 1870474, at *11 (N.D.N.Y. Apr. 17, 2018) ("[B]ecause those three representations . . . are insufficient as a matter of law to mislead a reasonable consumer, they cannot be relied upon by Plaintiffs as grounds for asserting a breach of express warranty . . . ."); *Gedalia v. Whole Foods Mkt. Servs., Inc.*, 53 F. Supp. 3d 943, 960 (S.D. Tex. 2014) (same); *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 925 (N.D. Ill. 2017) (same); *see also Castaneda v. Fila USA, Inc.*, 2011 WL 7719013, at *4 (S.D. Cal. Aug. 10, 2011) ("The Court concludes that the statements are non-actionable puffery, and do not constitute an express warranty on which a reasonable consumer could rely.)"

Third, as set forth in Section IV.B, Plaintiffs' warranty claims fail because they lack the necessary factual support under Rule 8(a)(2) to plausibly allege that Plaintiffs provided notice of the alleged breaches of warranty to Defendant within a reasonable time after discovery.

Plaintiffs' warranty claims also fail for other independent reasons set forth below.

## 1. Plaintiffs' Implied Warranty of Merchantability Claim Fails Because Plaintiffs Fail to Plausibly Allege Facts Establishing that the Product Was Unfit for Human Consumption

Plaintiffs' claim for breach of the implied warranty of merchantability fails because the Amended Complaint is devoid of any *facts* to support the essential elements of an implied warranty claim.

The implied warranty of merchantability "requires only that the goods sold be of a minimal level of quality," so that they are "fit for the ordinary purposes for which such goods are used." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013).  In cases involving food products, this requires the plaintiff to allege that the product was "unfit to be consumed."

*Brumfield v. Trader Joe's Co.*, 2018 WL 4168956, at *4 (S.D.N.Y. Aug. 30, 2018) (applying New York and California law); *see also Ruggiero v. Perdue Poultry Co.*, 1997 WL 811530, at *1 (S.D.N.Y. Sept. 29, 1997) ("The product must have been actually unfit for human consumption or defective at the time it left the possession or control of the manufacturer."); *Bland v. Sequel Nat. Ltd.*, 2019 WL 4674337, at *4 (N.D. Cal. Aug. 2, 2019) ("A breach of the warranty of merchantability occurs if the product lacks even the most basic degree of fitness for ordinary use. In the context of food cases, a party can plead that a product violates the implied warranty of merchantability by alleging, for example, that the product was not safe for consumption, or that the product was contaminated or contained foreign objects."); *Matthews v. Campbell Soup Co.*, 380 F. Supp. 1061, 1063 (S.D. Tex. 1974) ("a food product is defective or unreasonably dangerous if it is unwholesome or unfit for human consumption and vice versa."); *Maneri v. Starbucks Corp. Store #1527*, 2019 WL 5626650, *10 (E.D. Pa. Oct. 31, 2019) (dismissing implied warranty of merchantability claim where plaintiff failed to establish that tea was "defective or unreasonably dangerous for its intended use, i.e., human consumption"); *Tiffin v. Great Atl. & Pac. Tea Co.*, 156 N.E.2d 249, 255 (Ill. App. Ct.), *aff'd*, 162 N.E.2d 406 (Ill. 1959) (implied warranty "prohibits the sale of food products which are unfit for human consumption."); Okla. Stat. Ann. tit. 12A, § 2-314 (for implied warranty to apply, goods have to be unfit "for the ordinary purposes for which such goods are used"); *Prince v. LeVan*, 486 P.2d 959, 966 (Alaska 1971) (finding that even if warranty was implied, the product at issue was not unfit); *Foote v. Polk*, 2019 WL 148459, at *4 (W.D. Wis. Jan. 9, 2019) (plaintiff has to show that "the product he consumed was unfit for human consumption.").

Here, Plaintiffs' implied warranty of merchantability claim fails because Plaintiffs plead no *facts* suggesting the Product was contaminated, adulterated, or otherwise unfit for human

consumption.  Plaintiffs do not even allege they *drank* the Product – only that it was "purchased." FAC ¶¶ 42-53.  The Court should dismiss Plaintiffs' implied warranty of merchantability claim for failure to plead facts in support of essential elements of the claim.

### 2.   Plaintiffs' Implied Warranty of Merchantability Claim Fails for Lack of Privity Under the Laws of New York, Wisconsin, California, and Illinois

Plaintiffs' claim for breach of the implied warranty of merchantability also fails because Plaintiffs admit facts showing they lack privity with Defendant.  FAC ¶¶ 42-53.  Privity of contract is required to state a claim for breach of the implied warranty of merchantability under the laws of New York, Wisconsin, California, and Illinois.  "[A]bsent privity of contract…a purchaser cannot recover mere economic loss against a manufacturer under a theory of breach of implied warranty." *Tomasino*, 44 F. Supp. 3d at 262 (citing *Westchester Cnty. v. Gen. Motors Corp.*, 555 F.Supp. 290, 294 (S.D.N.Y.1983)) (dismissing implied warranty claim because plaintiff did not allege that "she purchased the products from Estee Lauder or that she purchased the products directly from Estee Lauder or that she suffered personal injury"); *Foote v. Polk*, 2019 WL 148459, at *4 (W.D. Wis. Jan. 9, 2019) ("Wisconsin has declined to recognize an implied warranty of merchantability in the absence of privity between the parties."); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 986 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) ("California law requires that a plaintiff asserting a breach of implied warranty claim be in vertical privity with the defendant; the exception to privity available for breach of express warranty claims is not available for breach of implied warranty claims."); *Guajardo v. Skechers USA, Inc.*, 2020 WL 7038950, at *3 (C.D. Ill. Nov. 30, 2020) ("In Illinois, privity of contract is a prerequisite to recover economic damages for breach of implied warranty.").

Here, the Amended Complaint establishes that Plaintiffs lack privity with Defendant because Plaintiffs allege they purchased the Product from Walmart, Target, and other retailers.

FAC ¶¶ 42-53.  The Court should therefore dismiss Plaintiffs' implied warranty claim under the laws of New York, Wisconsin, California, and Illinois for lack of privity.

    **F.**    **Plaintiffs' Unjust Enrichment Claim Fails**

        **1.**    **Plaintiffs Cannot State a Nationwide Unjust Enrichment Claim.**

Plaintiffs' unjust enrichment claim is insufficiently pled because Plaintiffs fail to specify which state's laws apply.  FAC ¶¶ 104-109.  This alone is reason to dismiss Plaintiffs' claim.

As observed by this Court, "the degree of specificity required in a class action alleging unjust enrichment is not a legal question of first impression within this district.  In two prior cases, courts in this district have dismissed complaints where the plaintiffs failed to invoke the law of any particular jurisdiction."  *Krahling*, 44 F. Supp. 3d at 609 (citing *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 419 (E.D. Pa. 2009) (dismissing complaint where plaintiff failed to specify the state laws invoked); *Wellbutrin*, 260 F.R.D. at 167 ("The plaintiffs fail to link their claim to the law of any particular state.  As a result of this deficiency, the plaintiffs fail to state a cause of action . . . .").

A plaintiff must specify which state's laws apply because "[u]njust enrichment is not a catch-all claim existing within the narrow scope of federal common law."  *Wellbutrin*, 260 F.R.D. at 167 (citations omitted).  Any assertion that the elements of unjust enrichment are substantially the same across all fifty states is wrong.  *See Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 514 (D. Minn. 2014) ("As countless courts have observed, the states' different approaches to, or elements of, unjust enrichment are significant."); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) ("The elements necessary to establish a claim for unjust enrichment also vary materially from state to state.").  "[C]obbling together the elements of a claim of unjust enrichment from the laws of the fifty states is no different from applying federal common law."  *Wellbutrin*, 260 F.R.D. at 167 (citing *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938) ("There is no federal

general common law.  Congress has no power to declare substantive rules of common law applicable in a state whether they be local in their nature or 'general,' be they commercial law or a part of the law of torts.  And no clause in the Constitution purports to confer such a power upon the federal courts.")).

Here, as in *Krahling*, *Flonase*, and *Wellbutrin*, Plaintiffs' failure to invoke the law of any particular jurisdiction on their unjust enrichment claim "fail[s] to meet the applicable pleading standards."  *Krahling*, 44 F. Supp. 3d at 609.  As it did in those cases, the Court should dismiss Plaintiffs' unjust enrichment claim for failure to state a claim.  *Krahling*, 44 F. Supp. 3d at 609; *Flonase*, 610 F. Supp. 2d at 419; *Wellbutrin*, 260 F.R.D. at 167.

## 2.    Plaintiffs' Unjust Enrichment Claim is Duplicative and Fails For the Same Reasons As Plaintiffs' Other Claims

Plaintiffs' unjust enrichment claim fails because it is duplicative of Plaintiffs' other claims, and therefore fails for the same reasons, including the lack of any plausible theory of deception or misrepresentation.  *See Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 493 (E.D. Pa. 2016) ("Where the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim."); *Rojas-Lozano v. Google, Inc.*, 159 F.Supp.3d 1101 (N.D. Cal. 2016) (finding no basis in relief under unjust enrichment because "[t]here being no actionable wrong, there is no basis for the relief") (quotation omitted); *Mulligan v. QVC, Inc.*, 631, 888 N.E.2d 1190, 1200 (App. Ct. 1st Dist. 2008) ("where the underlying claim for fraud is deficient, we have dismissed claims for unjust enrichment."); *Tomasella v. Nestle USA, Inc.*, 364 F. Supp. 3d 26, 37 (D. Mass. 2019), *aff'd*, 962 F.3d 60 (1st Cir. 2020) (dismissing plaintiff's Chapter 93A claim and unjust enrichment claim); *Weisblum v. Prophase Labs, Inc.*, 88 F.Supp.3d 283, 296-97 (S.D.N.Y. 2015) (dismissing unjust enrichment claim as duplicative).

### 3. Plaintiffs Do Not Plead the Lack of Adequate Remedies at Law, Thus Barring Their Claim Under Alaska, Illinois, Massachusetts, New York, and Oklahoma Law

Plaintiffs' unjust enrichment claim fails under multiple states' laws because nowhere do Plaintiffs allege they lack an adequate remedy at law. To the contrary, Plaintiffs' Amended Complaint includes fifteen other counts in which they seek both damages and equitable relief. This defect renders Plaintiffs' unjust enrichment claim dead on arrival under the laws of Alaska, Illinois, Massachusetts, and Oklahoma law. *See Peter v. Progressive Corp.*, 2006 WL 438658, at *7 (Alaska Feb. 26, 2006) ("Because it is equitable relief, unjust enrichment is available only when there is no adequate remedy at law."); *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. 2005) ("Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law.") (quotation omitted); *Santagate v. Tower,* 833 N.E.2d 171, 176 (Mass. App. Ct. 2005) ("equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law"); *Anwar v. Fairfield Greenwich Ltd.*, 831 F. Supp. 2d 787, 796 (S.D.N.Y. 2011), *aff'd sub nom. Pujals v. Standard Chartered Bank*, 533 F. App'x 7 (2d Cir. 2013) ("It is blackletter law that the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy."); *Chieftain Royalty Co. v. Dominion Okla. Tex. Expl. & Prod., Inc.*, 2011 WL 9527717, at *5 (W.D. Okla. July 14, 2011) ("to invoke equity jurisdiction, it must be shown that no adequate statutory or legal remedy is available…and Plaintiffs have not alleged or shown that is the case. Defendants' motion to dismiss Plaintiffs' unjust enrichment claim must, therefore, be granted.").

### 4. Plaintiffs Do Not Allege They Conferred a Direct Benefit on Defendant As Required Under New York and Wisconsin Law

Plaintiffs' unjust enrichment claim fails under New York and Wisconsin law because Plaintiffs do not allege that they conferred a benefit directly on Defendant.

29

Defendant, as the Amended Complaint acknowledges, is a manufacturer and distributor of the Product.  FAC ¶ 1.  The Product, therefore, must be purchased at retailers, which Plaintiffs acknowledge in alleging that they purchased the Product at Walmart, Target, Safeway, CVS, Fred Meyers, Whole Foods, Wegmans, and other unidentified grocery stores.  *Id.* at ¶¶ 42-53.  Nowhere do Plaintiffs allege that they purchased the Product directly from Defendant.  Because Plaintiffs do not (and cannot) allege that they directly conferred a benefit on Defendant, New York and Wisconsin law requires dismissal of Plaintiffs' unjust enrichment claim.  *See Emirat AG v. High Point Printing LLC*, 248 F. Supp. 3d 911, 936-37 (E.D. Wisc. 2017) (unjust enrichment claim failed against defendant printing company because plaintiff paid printing broker and therefore conferred no direct benefit on printing company); *N.Y. City Health & Hosp. Corp. v. Wellcare of N.Y., Inc.*, 35 Misc. 3d 250, 254 (N.Y. Sup. Ct. 2011).

### 5.   Plaintiffs Do Not Allege Defendant Failed to Provide a Good or Service As Required Under Pennsylvania Law.

Plaintiffs fail to state a claim for unjust enrichment under Pennsylvania law because there is no allegation the Defendant "refused to provide a service or goods after [Plaintiffs] provided [Defendant] with a benefit."  *Tatum v. Takeda Pharm. N.A., Inc.*, 2012 WL 5182895, at *5 (E.D. Pa. Oct. 19, 2012).

In Pennsylvania, to state a claim for unjust enrichment based on a theory of quasi-contract, "a plaintiff must allege facts sufficient to establish 'benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'"  *Boring v. Google, Inc.*, 2010 WL 318281, at *6 (3d Cir. Jan. 28, 2010) (quoting

*Lackner v. Glosser*, 892 A.2d 21, 34 (Pa. Super. 2006)).[5]  Unjust enrichment liability typically applies where a plaintiff "seeks to recover from defendant for a benefit conferred under an unconsummated or void contract" and the "law then implied a quasi-contract which requires the defendant to compensate the plaintiff for the value of the benefit conferred." *Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999) (applying Pennsylvania law).  A claim for unjust enrichment does not lie where the plaintiff admits they received and used the service or goods at issue.  *Mazur v. Milo's Kitchen, LLC*, 2013 WL 32452013, at *10 (W.D. Pa. June 25, 2013).

In *Mazur*, for example, another district court dismissed an unjust enrichment claim where the plaintiff alleged that defendants misrepresented that their dog treats were safe and healthy when in fact they were defective and caused her dog to get kidney failure and pass away.  *Id.* at *1, 10. In dismissing plaintiff's unjust enrichment claim the Court found, "it is apparent from Plaintiff's allegations in the Complaint that, while she is dissatisfied with the chicken jerky treats, she nevertheless purchased, received and used the product."  *Id.* at *10.  "It therefore cannot be said that the benefit bestowed on Defendants in the form of a profit from the sale was 'wrongly secured.'"  *Id.* (citing *Tatum*, 2012 WL 5182895, at *5) (finding that plaintiff's claim that defendants were aware of the risks of the drug but chose not to disclose them failed to state a claim for unjust enrichment because there was no allegation that the defendants "refused to provide a service or goods after Tatum provided defendants with a benefit"); *In re Avandia Mktg., Sales Practices and Prod. Liab. Litig.,* 2011 WL 4007908, at * 2 (E.D. Pa. Sept. 7, 2011) (dismissing unjust enrichment claim where plaintiff received product for which he paid despite plaintiff's

---

[5] Plaintiffs note that they allege their unjust enrichment claim as an alternative to a breach of contract claim. FAC, p. 24, n. 16. Thus, Plaintiffs appear to plead their unjust enrichment claim based on a theory of quasi-contract.

allegations that defendant knew product was unsafe and promoted it anyway); *Zafarana v. Pfizer, Inc.,* 724 F.Supp.2d 545, 561 (E.D. Pa. 2010) (dismissing plaintiff's unjust enrichment claim because the plaintiff did not allege that the defendant refused to provide a service or good after securing a benefit).

Here, as in *Mazur*, Plaintiffs cannot state a claim for unjust enrichment because Plaintiffs do not allege that Defendant failed to provide any goods or services. While Plaintiffs claim they are dissatisfied with the Product's sugar content – which was clearly disclosed on the label – they nevertheless allege that they purchased and retained the benefit of the Product. FAC ¶¶ 42-53. Plaintiffs therefore cannot establish that any benefit bestowed on Defendant was "wrongly secured." *Tatum*, 2012 WL 5182895, at *5.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint for lack of standing and failure to state a claim upon which relief may be granted.

Respectfully submitted,

FOX ROTHSCHILD LLP

Dated:  March 22, 2021

*/s/ Clair E. Wischusen*
Michael Eidel, Esquire
Clair E. Wischusen, Esquire
Attorney I.D. Nos. 94278; 306752
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
meidel@foxrothschild.com
cwischusen@foxrothschild.com
Phone:  (215) 299-2000
Fax:  (215) 299-2150

*Attorneys for Defendant*
*Healthy Beverage LLC d/b/a The Healthy Beverage Company*