## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LAMARTINE PIERRE, JR. et al.,

     *Plaintiffs,*

  v.

HEALTHY BEVERAGE, LLC,

     *Defendant.*

CIVIL ACTION
NO. 20-4934

**PAPPERT, J.**             **February 28, 2022**

### <u>MEMORANDUM</u>

Plaintiffs allege Healthy Beverage misled consumers by labeling its organic iced green tea "lightly sweetened" notwithstanding its high sugar content. They seek to bring breach of warranty and unjust enrichment claims on behalf of a nationwide class, and state consumer protection claims on behalf of eight subclasses. Healthy Beverage moves to dismiss Plaintiffs' Amended Complaint. It argues they lack standing and that their claims fail on the merits because, among other reasons, "lightly sweetened" is a subjective description of the tea's taste. The Court grants the Motion in part and denies it in part.

I

Healthy Beverage sells organic iced green tea in several flavors and labels it "lightly sweetened." (Am. Compl. ¶ 1, n.7, ECF 15.)[1] A rectangular banner displaying

---

[1] Plaintiffs named "The Healthy Beverage Company, LLC" as the defendant when they filed their initial complaint in October of 2020. (ECF 1.) According to Defendant, "Healthy Beverage, LLC" was a Pennsylvania limited liability company that converted to a Texas limited liability company named "Steaz, LLC" in November of 2020. (Brief in Supp. of Mot. to Dismiss Compl. n.1, ECF 9-1.) Plaintiffs subsequently named "Healthy Beverage LLC d/b/a The Healthy Beverage

the words "lightly sweetened" runs across the front of each can, and the same phrase

appears on its website.  (*Id.* at 16–17.)  One sixteen-fluid-ounce can contains twenty

grams of sugar, all added—which amounts to forty percent of the recommended

maximum daily intake.  *See* (*id.* at 16).  The amount of added sugar and number of

calories (eighty per can) are specified on the can's nutrition facts panel.  (*Id.*)  This

information is important to consumers who prefer food and drinks with low sugar

content because of the health risks tied to excessive sugar consumption.  *See* (*id.* at ¶¶

17–18).



Company" as the defendant in their Amended Complaint.  (ECF 15.)  The Court will refer to
Defendant as "Healthy Beverage."

Lamartine Pierre Jr. is one of eleven named Plaintiffs residing in nine different states who purchased the tea "several times over the last four years" at a grocery store or retailer.[2]  (*Id.* at ¶¶ 25–36, 42–53.)  They seek to bring claims on behalf of a nationwide class and nine state-specific subclasses and invoke jurisdiction under the Class Action Fairness Act, alleging at least 100 proposed class members, an aggregated claim value in excess of five million exclusive of interests or costs and that some members are citizens of states different from Healthy Beverage.  (*Id.* at ¶ 38.)

Plaintiffs allege Healthy Beverage intentionally misled consumers by labeling the tea "lightly sweetened" despite its high sugar content.  *See* (*id.* at ¶¶ 1–6, 72–81). They claim they took the lightly sweetened label to mean the tea had little sugar, that they would not have purchased or paid more for it if they knew it did not have low sugar and that they would repurchase it were it "remedied or reformulated" to conform to the label.  (*Id.* at ¶ 42.)  They allege Healthy Beverage promotes the tea's low sugar content on its can to charge a premium and that consumers who pay it expect the tea's labeling to comport with its listed ingredients.  (*Id.* at ¶¶ 63–65.)  According to Plaintiffs, the lightly sweetened label induces consumers to purchase a product they believe is compatible with their health preferences in lieu of cheaper alternatives.  (*Id.* at ¶ 66.)  They claim Healthy Beverage's labeling of the tea is deceptive since the tea is high in sugar.  (*Id.* at ¶ 71.)

Plaintiffs assert claims for breach of express warranty and the implied warranty of merchantability and, in the alternative, unjust enrichment on behalf of the

---

[2]      One plaintiff, Shannon Hood, voluntarily dismissed her claims after Healthy Beverage filed its Motion.  (ECF 29.)

nationwide class; and claims under Alaska, California, Illinois, Massachusetts, New York, Oklahoma, Pennsylvania, Texas and Wisconsin law on behalf of the state-specific subclasses.[3]  (*Id.* at ¶¶ 90–223, n.16.)  Plaintiffs seek an order certifying the nationwide class and subclasses pursuant to Federal Rule of Civil Procedure 23, and naming Plaintiffs as class representatives and their lawyers as class counsel.  (*Id.* at 43.)  They ultimately demand monetary, declaratory and injunctive relief.  (*Id.* at 43–44.)

Healthy Beverage seeks dismissal under Rules 12(b)(1) and 12(b)(6).  (ECF 19.)  It argues Plaintiffs have not plausibly alleged standing, that their claims lack factual support, that their theory of how Healthy Beverage misled consumers is dubious and that their claims for false advertising, consumer fraud, unjust enrichment and breach of warranty fail for additional reasons.  (Brief in Supp. of Mot. to Dismiss Am. Compl. at 1–3, ECF 19-1.)  Plaintiffs responded to Healthy Beverage's Motion, and Healthy Beverage filed a Reply.  (ECF 20; ECF 22.)  Healthy Beverage later filed separate Notices of Supplemental Authority following two 2021 decisions from the Southern District of New York, and Plaintiffs responded to both.  (ECF 23–25, 27–28.)

## II

### A

A plaintiff bears the burden to establish Article III standing by satisfying "three well-recognized" elements: (1) he suffered an injury in fact, (2) the injury is fairly

---

[3]    Plaintiffs bring their state law claims pursuant to the following statutes: Alaska Stat. Ann. § 45.50.471; Cal Bus. & Profs. Code §§ 17200, 17500; Cal Civ. Code § 1770; 815 Ill. Comp. Stat. Ann. 505/2, 510/2; Mass. Gen. Laws Ann. 93A, § 2; N.Y. Gen. Bus. Law §§ 349–50; Okla. Stat. Ann. tit. 15, § 753; 73 PA. Stat. and Cons. Stat. § 201-2, -3; and Tex. Bus. & Com. Code Ann. § 17.46, .50.  The Court grants Plaintiffs' request to withdraw their claim under Wis. Stat. Ann. § 100.18.  (Opp. to Mot. to Dismiss Am. Compl. 24 n.12, ECF 20.)

traceable to the defendant's challenged action and (3) it is likely rather than speculative that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). The plaintiff must make this showing for "each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). The standing inquiry is a "threshold" question in every case that asks "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). A lawsuit's status as a class action "adds nothing to the question of standing," because even a class's named plaintiffs "must allege and show that they personally have been injured." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976) (internal quotation marks omitted).

Article III standing's three requirements must be proved "with the manner and degree of evidence required at the successive stages" of litigation. *Lujan*, 504 U.S. at 561. On a motion to dismiss, "general factual allegations of injury" may be sufficient because of the presumption that "general allegations embrace those specific facts that are necessary to support the claim." *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). The standing question must be kept separate from "any assessment of the merits," and courts are to assume the plaintiff "has stated valid legal claims." *Cottrell v. Alcon Labs.*, 874 F.3d 154, 162 (3d Cir. 2017) (noting that although standing analysis "may necessarily reference the 'nature and source of the claim[s] asserted,'" courts must focus on "whether the plaintiff is the proper party" to bring them).

Rule 12(b)(1) governs motions to dismiss for lack of standing because standing is jurisdictional. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). The Court

must first determine whether a defendant's challenge to standing is facial or factual. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014). Whereas a facial attack "contests the sufficiency of the pleadings," a factual attack "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id.* at 358 (internal citations and quotation marks omitted) (alterations removed). Healthy Beverage has yet to answer Plaintiffs' Amended Complaint, so the Court must construe its Motion as a facial challenge. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891–92, 892 n.17 (3d Cir. 1977).

For facial challenges to standing, the Court can consider only the complaint's allegations and "documents referenced therein and attached thereto." *Aichele*, 757 F.3d at 358 (quoting *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)); *see Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020) (explaining that facial attacks argue plaintiffs' "factual allegations cannot meet the elements of standing"). It must take well-pleaded allegations as true and draw reasonable inferences in the plaintiff's favor. *Hendrick v. Aramark Corp.*, 263 F. Supp. 3d 514, 517 (E.D. Pa.), *appeal dismissed*, 2017 WL 5664867 (3d Cir. Oct. 31, 2017) (citing *Aichele*, 757 F.3d at 358). Like on a 12(b)(6) motion to dismiss, the complaint must include "'sufficient factual matter' that would establish standing if accepted as true." *Horizon Healthcare Servs.*, 846 F.3d at 633 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

B

Healthy Beverage attacks Plaintiffs' Article III standing on three grounds. (Brief in Supp. of Mot. to Dismiss. Am. Compl. 7–14.) First, it contends they do not

6

plausibly allege an injury in fact for any of their claims.  (*Id.* at 7.)  Second, it claims Plaintiffs do not have standing to seek injunctive relief because they do not plausibly allege likely future harm.  (*Id.*)  Third, it argues Plaintiffs do not have standing to bring nationwide claims using the laws of states they do not reside or allege injury in.  (*Id.*)

Plaintiffs respond that they have plausibly alleged standing since they suffered an economic injury by paying a premium for the tea, that they can pursue injunctive relief because the tea's unreliable labeling dissuades them from purchasing a product they want and that they can assert the nationwide state law claims because the Court should defer ruling on the relevant standing question until class certification.  (Opp. to Mot. to Dismiss Am. Compl. 6–16.)

1

i

Injury in fact is the "[f]irst and foremost" of the three Article III standing prongs. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)).  To establish an injury in fact, a plaintiff must show the "invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Finkelman v. National Football League*, 877 F.3d 504, 510 (3d Cir. 2017) (internal quotation marks omitted). These discrete "components" should be analyzed separately.  *See Cottrell*, 874 F.3d at 163 (explaining that when courts "cast aside the essential components of injury in fact in favor of more generalized, abstract discussion, they risk improperly, if inadvertently, crossing over in their analysis from standing to merits").

First, an economic interest is a "legally protected interest" for injury-in-fact purposes, and such an interest can stem from the common law or "statutes creating legal rights, the invasion of which creates standing." *Id.* at 164 (quoting *Lujan*, 504 U.S. at 578 (internal quotation marks omitted)). Second, to be concrete an injury in fact must be "real" and not "abstract," and "actually exist." *Spokeo*, 578 U.S. at 340. The concreteness component is "distinct" from the particularity component, which requires that the plaintiff be injured "in a personal and individual way." *Cottrell*, 874 F.3d at 167 (internal quotation marks omitted). Finally, the actual-or-imminent component aims to distinguish plaintiffs "who have alleged 'that [they] ha[ve] been or will in fact be perceptibly harmed by the challenged [defendants'] action' from those who claim only that they 'can imagine circumstances in which [they] could be affected by the [defendant's] action.'" *Id.* at 168 (alterations in original) (quoting *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 688–89, 693 (1973)).

Notwithstanding the need to prove injury in fact's distinct components, it is "not Mount Everest" but rather a "very generous" standard, demanding only that the plaintiff allege a "specific, 'identifiable trifle' of injury." *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005); *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982) (quoting *SCRAP*, 412 U.S. at 686–90, 689 n.14). Economic injury is a "paradigmatic" form of injury in fact. *Danvers Motor*, 432 F.3d at 291; *see id.* at 293 (explaining that it is frequently "assumed without discussion" that "[m]onetary harm is a classic" type of injury in fact); *Cottrell*, 874 F.3d at 163 (asserting that allegations of financial injury "[t]ypically" will "easily satisfy" the injury-in-fact requirement). One type of economic injury is "paying a [price] premium." *Kacocha v. Nestle Purina Petcare*

8

*Co.*, No. 15-5489, 2016 WL 4367991, at *7 (S.D.N.Y. Aug. 12, 2016); *see generally In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 282–83 (3d Cir. 2018).

Healthy Beverage argues Plaintiffs do not plausibly allege an injury in fact because they have not specified how much sugar they believe the tea contained and how the actual amount deviated from that belief.  (Brief in Supp. of Mot. to Dismiss Am. Compl. 1.)  It describes Plaintiffs' price premium allegations as speculative, conjectural, conclusory and vague, and asserts Plaintiffs have made "generic allegations" regarding excessive sugar and possible health concerns but they have not alleged their health was adversely affected by consuming the tea, or even that they consumed it at all.  (*Id.* at 8–9; Reply in Supp. of Mot. to Dismiss Am. Compl. 2–3.)

Plaintiffs claim it is irrelevant that they have not alleged consuming the tea adversely affected their health.  (Opp. to Mot. to Dismiss Am. Compl. 7.)  They argue their theory is not based on "adverse health consequences" but rather an economic injury arising from Healthy Beverage using misleading labeling to induce them to pay a premium for highly sweetened tea purported to be low in sugar.  (*Id.* at 7, 10.)

ii

Plaintiffs have plausibly alleged an injury in fact based on the price premium they paid for Healthy Beverage's tea.  The premium is the difference in price between a green tea misleadingly labeled as being low in sugar and a tea consumers know is high in sugar.  *See* (Am. Compl. ¶¶ 61–64).  Paying it constitutes classic economic harm.  *See Danvers Motor*, 432 F.3d at 293.  Plaintiffs have met Article III's standard for injury in fact.  *See Bowman*, 672 F.2d at 1151.  At this stage, the Court presumes Plaintiffs'

9

allegations encompass the specific facts needed to support their claims.  *See Lujan*, 504 U.S. at 561.

It follows that Plaintiffs have plausibly shown the distinct components of injury in fact.  *See Cottrell*, 874 F.3d at 162–63.  Plaintiffs had an economic interest in the money they used to purchase the tea, and Healthy Beverage "invaded" it by using deceptive labeling to induce them to purchase or pay more for the tea.  *See Lujan*, 504 U.S. at 560.  Plaintiffs' economic injury is also concrete and particularized.  *See Cottrell*, 874 F.3d at 167.  It is concrete because Healthy Beverage's misleading labeling of the tea caused a real, not-abstract economic injury: enticing Plaintiffs to part with their money.  *See Spokeo*, 578 U.S. at 340.  Their injury is also particularized because it personally affected each Plaintiff who relied on Healthy Beverage's misrepresentation that the tea was lightly sweetened.  *See id.* at 339.  Finally, Plaintiffs allege they suffered an actual, perceptible injury by paying a price premium for the tea.  *See Cottrell*, 874 F.3d at 168.

Courts evaluating allegations of economic injury similar to Plaintiffs' have ruled they plausibly alleged an injury in fact.  In *Kacocha*, for example, the district court denied dismissal on Article III standing grounds when a purchaser of dog-treat products alleged he "paid [a] premium price" because defendant represented on the products' packaging and in commercials that bacon was the main ingredient when it was not.  2016 WL 4367991, at *7.  In a similar case, the Second Circuit vacated the district court's standing-based dismissal of allegations that Whole Foods overcharged customers by overstating packaged food weights, pointing out that "overpaying for a product results in a financial loss constituting a particularized and concrete injury in

fact." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736–37 (2d Cir. 2017). And in *Manchouk v. Mondeléz Int'l Inc.*, the district court concluded a purchaser of Newton cookies plausibly alleged an economic injury under a price premium theory from relying on labeling that the cookies were "made with real fruit" when they contained only "processed fruit purée." No. 13-02148, 2013 WL 5400285, at *2 (N.D. Cal. Sept. 26, 2013); *see also Rice v. Electrolux Home Prods., Inc.*, No. 15-371, 2020 WL 247284, at *8 (M.D. Pa. Jan. 15, 2020) (concluding the purchaser of a microwave oven plausibly alleged an economic injury in fact on the ground that he would have paid less for or not purchased it had he known its handle would overheat).[4]

That Plaintiffs do not allege they were physically harmed by consuming the tea is irrelevant. While their Amended Complaint describes health risks associated with excessive sugar consumption, it makes clear Plaintiffs' theory of injury is that Healthy Beverage's misleading labeling caused them to suffer economic harm by paying a price premium—not that they suffered adverse health consequences from consuming the tea. (Am. Compl. ¶¶ 10–16.) These are distinct forms of injury in fact, and Paintiffs allege only one of them. *See, e.g.*, *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1172 (11th Cir. 2014) (noting that "[e]conomic harm and physical injury are well-established

---

[4]   The cases Healthy Beverage relies on are either distinguishable, unpersuasive or both. Most notably, the Court's ruling is consistent with *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018). There, the Third Circuit set out a test for one theory of economic injury: the "benefit of the bargain theory." *See id.* at 281, 283. The Court need not limit its analysis of Plaintiffs' economic injury to one particular theory. Rather, it has a "duty to 'examine the allegations in the complaint from a number of different angles' in order to see if the 'purported injury can be framed in a way that satisfies Article III.'" *Id.* at 282 (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 197 (3d Cir. 2016)). Plaintiffs have framed their allegations in a way that plausibly meets Article III standards under a price premium theory.

*injuries*-in-fact" for Article III purposes (emphasis added)); *Manchouk*, 2013 WL 5400285, at *2 (rejecting the argument that there was no injury in fact because the purchaser did not allege physical injury).

2

A plaintiff pursuing standing for injunctive relief must satisfy the three prongs of the Article III standing test. *Summers*, 555 U.S. at 493.  For injury in fact, the plaintiff needs to demonstrate he is "likely to suffer future injury from the defendant's conduct." *Johnson & Johnson*, 903 F.3d at 292 (internal quotation marks omitted). The threat of future injury must be "realistic," "sufficiently real" and "immediate"—not "speculative," "conjectural" or "hypothetical." *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (quoting *Roe v. Operation Rescue*, 919 F.2d 857, 864 (3d Cir. 1990)); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 106 n.7, 111 (1983).  The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphases in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Plaintiffs seek "injunctive relief as pleaded or as the Court may deem proper," pursuant to claims brought under state consumer protection statutes.  (Am. Compl. 44g.)  Healthy Beverage argues Plaintiffs lack standing to pursue injunctive relief because they do not intend to purchase the tea again and they now acknowledge how much sugar it contains.  (Brief in Supp. of Mot. to Dismiss Am. Compl. 11–12.) Plaintiffs respond that they would purchase the tea again were it "remedied or reformulated" to conform with its labeling, and their inability to rely on the labeling

12

causes them to not buy the tea even though they want to.  (Opp. to Mot. to Dismiss Am. Compl. 11.)

Plaintiffs have not plausibly alleged standing to pursue injunctive relief; Third Circuit case law forecloses their claim.  In *In re Johnson & Johnson*, the Third Circuit found plaintiff lacked standing to seek injunctive relief because she knew of the health risks associated with a product she alleged was improperly marketed.  903 F.3d at 292–93.  The court reasoned plaintiff could not show a likelihood of future injury given she was "well aware" of the information defendant's marketing allegedly failed to disclose. *Id.* (refusing to "give cognizance to this sort of 'stop me before I buy again' claim").  It described as a "crucial fact" consumers' awareness of the "allegedly deceptive business practices from which they [seek] future protection" and noted the "law accords people the dignity of assuming that they act rationally, in light of the information they possess."  *Id.* at 293 (citing *McNair*).

Here, Plaintiffs have not shown they are likely to suffer future injury from Healthy Beverage's allegedly misleading labeling of the tea.  Plaintiffs' claim to future injury is hypothetical and not certainly impending because they allege no plans to purchase the tea as presently formulated: they say they will not buy it again unless its composition is modified to align with its labeling.  *See* (Am. Compl. ¶¶ 42–53); *Lyons*, 461 U.S. at 101–02; *Clapper*, 568 U.S. at 409.  If that happens and Plaintiffs then purchase the tea, they will not suffer an injury since they will have bought a beverage with a sugar content they expected.

For now, however, the Court must assume Plaintiffs will act rationally by not purchasing a tea they allege is misleadingly labeled as a low-sugar beverage.  *See*

*Johnson & Johnson*, 903 F.2d at 293; *see also In re Subaru Battery Drain Prods. Litig.*, No. 20-3095, 2021 WL 1207791, at *31 (D.N.J. Mar. 31, 2021) (explaining the Third Circuit has "squarely rejected" the argument that "repeat customers" have standing to pursue injunctive relief based on the "threat of injury" they could suffer from advertising tactics). To the extent Plaintiffs attempt to frame their future injury as an allegation that they cannot rely on the tea's labeling, it falls short of establishing standing for injunctive relief. *See Lisowski v. Henry Thayer Co.*, 501 F. Supp. 3d 316, 327–28 (W.D. Pa. 2020) (citing *McNair* and *In re Johnson & Johnson*).

A number of courts have held that allegations similar to Plaintiffs' do not satisfy the requirements for standing to seek injunctive relief. *See, e.g.*, *Stoneback v. ArtsQuest*, No. 12-3287, 2013 WL 3090714, at *12 (E.D. Pa. June 20, 2013) (concluding plaintiffs did not have standing to pursue injunctive relief when they failed to show a likelihood of future injury because they knew beer mugs and steins were made in China even though defendants marketed them as being made in Germany); *Rahman v. Mott's LLP*, No. 13-3482, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018) (same because plaintiff knew a "No Sugar Added" label did not mean defendant's apple juice was lower in sugar than other juices); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465–66 (S.D.N.Y. 2020) (same because plaintiffs' allegations of future injury were "*hypothetical*" and they knew Godiva chocolates were made in Pennsylvania notwithstanding the "Belgium 1926" representation on packaging and marketing materials (emphasis in original)).

3

i

The constitutional standing requirements "do not change in the class action context." *Horizon Healthcare Servs.*, 846 F.3d at 634. "[A]t least one named plaintiff" must satisfy Article III. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015) (internal quotation marks omitted). Named plaintiffs must demonstrate they "personally have been injured"—not that "other, unidentified" members of the class they represent were injured. *Horizon Healthcare Servs.*, 846 F.3d at 634 (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)); *see also Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000) (explaining that a plaintiff who does not have an injury "required for standing to assert claims on his own behalf would also lack standing to assert similar claims on behalf of a class"). But there is no need for "unnamed, putative class members" themselves to establish constitutional standing. *Neale*, 794 F.3d at 362. If a putative "class representative" has sufficiently alleged "threshold individual standing," there is an Article III case or controversy and no "separate class standing requirement." *Id.*; *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 306–07 (3d Cir. 1998) (internal quotation marks omitted).

This justiciability requirement is decided "vis-à-vis the named parties." *Prudential Ins. Co.*, 148 F.3d at 306; see *In re Remicade Antitrust Litig.*, 345 F. Supp. 3d 566, 585 (E.D. Pa. 2018) (noting that if one plaintiff has Article III standing, unidentified class members "will not block class standing on a motion to dismiss").

Once named plaintiffs show "they are properly before the court," the question becomes "one of compliance" with Rule 23, not Article III. *Prudential Ins. Co.*, 148 F.3d at 307 (quoting *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 112 (3d Cir. 1985)); *see Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 480 (3d Cir. 2018) (explaining that standing analysis "must be limited to a consideration of the class representatives themselves," and after that courts use Rule 23 "to ensure that classes are properly certified" (internal quotation marks omitted)).

District courts routinely conclude at the motion to dismiss stage that any "standing" questions regarding unnamed, putative class members do not preclude named plaintiffs who themselves have plausibly alleged Article III standing from pursuing claims on their behalf. *See In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-2687, 2017 WL 3131977, at *18–19 (D.N.J. July 20, 2017) (finding named plaintiffs had standing and then reserving for after class certification "standing questions" about unnamed, putative class members); *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 505–06 (D.N.J. 2009) (concluding named plaintiffs had Article III standing "to bring their individual claims" and that was "all that [was] required" for standing at the pleading stage); *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 130 (D.D.C. 2018) (named plaintiffs had Article III standing, and upon that showing courts "should proceed to Rule 23 criteria to determine whether, and to what extent, the plaintiff[s] may serve in a representative capacity on behalf of the class" (internal quotation marks omitted)).

Healthy Beverage argues Plaintiffs do not have standing to assert breach of warranty and unjust enrichment claims on behalf of the nationwide class. (Brief in

16

Supp. of Mot. to Dismiss Am. Compl. 13.)  It contends the Court should not reserve a "ruling on standing" for class certification and that Plaintiffs can assert claims under the laws of states where they purchased the tea—namely, Alaska, California, Illinois, Massachusetts, New York, Oklahoma, Pennsylvania, Texas and Wisconsin—but no others.  (*Id.* at 13–14.)  Plaintiffs counter that they can sue under the laws of the aforementioned states and that the question whether a nationwide class is appropriate will be addressed during class certification.  (Opp. to Mot. to Dismiss Am. Compl. 16.)

ii

Plaintiffs have sufficiently established Article III standing for the nationwide breach of warranty and unjust enrichment claims.  The Court concluded they plausibly alleged an economic injury in fact, and Healthy Beverage does not argue they have failed to establish constitutional standing's causation or redressability prongs.  *See supra* subsection II.B.1.  This means there is an Article III case or controversy.  *See Neale*, 794 F.3d at 362.  There is no additional standing requirement for the putative nationwide class at this stage.  *See Prudential Ins. Co.*, 148 F.3d at 306–07.  Nor is there any need for the unnamed, absent members to demonstrate they have standing. *See Neale*, 794 F.3d at 362.  The Court will decide questions like typicality and predominance during class certification.  *See Prudential Ins. Co.*, 148 F.3d at 307.[5]

---

[5]      Healthy Beverage mistakenly relies on *In re Niaspan Antitrust Litigation*.  42 F. Supp. 3d 735 (E.D. Pa. 2014) (*Niaspan I*).  There, our court concluded plaintiffs did not have standing to bring claims on behalf of state-specific classes for states in which they did not reside or suffer injury.  *See Niaspan I*, 42 F. Supp. 3d at 758–59; *see also In re Niaspan Antirust Litig.*, No. 13-2460, 2015 WL 8150588, at *2–3 (E.D. Pa. Dec. 8, 2015) (*Niaspan II*) (explaining its prior decision was "unaffected by *Neale*, which addressed the Article III standing of absent class members").  That holding does not dictate whether Plaintiffs can pursue claims on behalf of certain absent *members* of a putative, nationwide class.

III

A

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege

"sufficient factual matter, accepted as true, to state a claim for relief that is plausible

on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). A

complaint must contain "more than labels and conclusions" or "a formulaic recitation of

the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Its factual allegations must be sufficient to "raise a right to relief above the speculative

level on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)." *Id.* While these allegations need not be detailed, the complaint must

provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Iqbal*, 556 U.S. at 678.

*Twombly* and *Iqbal* require the Court to take three steps to determine whether

the complaint survives a motion to dismiss. *See Connelly v. Lane Constr. Corp.*, 809

F.3d 780, 787 (3d Cir. 2016). First, it needs to "take note of the elements the plaintiff

---

Healthy Beverage's other cases implicate a split in authority within (and outside) the Third Circuit over whether, at the motion to dismiss stage, named plaintiffs who have Article III standing in their own right can pursue claims on behalf of members of the putative class they seek to represent under the laws of states they neither reside nor suffered an injury in. *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 829–30 (E.D. Pa. 2019). Many courts hold this question should not be decided before class certification. *See, e.g.*, *In re Liquid Aluminum Sulfate*, 2017 WL 3131977, at *18–19. But some hold such claims must be dismissed for lack of standing. *See, e.g.*, *In re Magnesium Oxide Antitrust Litig.*, No. 10-5943, 2011 WL 5008090, at *10 (D.N.J. Oct. 20, 2011). The Court is persuaded by the former approach, which is grounded in Third Circuit case law and Article III's case-or-controversy requirement. *See Neale*, 794 F.3d at 362; *Prudential Ins. Co.*, 148 F.3d at 306–07.

Healthy Beverage's arguments relying on the Rules Enabling Act and Rule 1 fare no better. The Court's ruling would not have the effect of a civil rule "abridg[ing], enlarg[ing] or modify[ing]" a substantive right because the Court's determination is consistent with Article III. *See* 28 U.S.C. § 2072(b). It also complies with Rule 1: the "just" decision is to follow binding case law.

must plead to state a claim." *Id.* (internal quotation marks omitted) (alterations removed).  Next, it must identify the allegations that are "not entitled to the assumption of truth" because they are only legal conclusions.  *Iqbal*, 556 U.S. at 679.  Finally, if the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Connelly*, 809 F.3d at 787.  The Court must construe factual allegations in the "most favorable" light for the plaintiff and draw from them "all reasonable inferences."  *Id.* at 790.

B

Healthy Beverage argues several of Plaintiffs' false advertising and consumer fraud claims do not satisfy Rule 9(b)'s pleading standard.  (Brief in Supp. of Mot. to Dismiss Am. Compl. 21–23.)  It also claims more generally that Plaintiffs' allegations fail to comply with Rule 8(a)(2)'s less stringent standard.  (*Id.* at 14–17.)  Plaintiffs respond that the Rule 9(b) standard is "relaxed" in the Third Circuit and that their allegations satisfy Rule 8(a)(2).  (Opp. to Mot. to Dismiss Am. Compl. 21–26.)

1

Under Rule 9(b), a party alleging fraud must state its circumstances "with particularity."  The rule's particularity requirement places defendants "on notice of the precise misconduct" they are charged with and safeguards "against spurious charges of immoral and fraudulent behavior."  *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).  But "focusing exclusively on its particularity language is too narrow an approach and fails to take account of the general simplicity and flexibility" the rule contemplates.  *Id.* (quoting *Christidis v. First Pennsylvania*

19

*Mortg. Trust*, 717 F.2d 96, 100 (3d Cir. 1983)).  Fraud allegations will satisfy Rule 9(b) if the plaintiff specifies time, place or date, or uses "alternative means of injecting precision and some measure of substantiation" into them.  *Seville*, 742 F.2d at 791.  In particular, Rule 9(b) requires that a plaintiff allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue."  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006) (quoting *In re Rockefeller Center Prop. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).

Plaintiffs' false advertising and consumer fraud claims satisfy Rule 9(b)'s requirements.  They specify the "essential" facts by alleging that, during the previous four years, Healthy Beverage's lightly sweetened label deceived Plaintiffs into buying the tea based on their belief it was low in sugar when it had high sugar content.  *See* (Am. Compl. ¶¶ 3–5, 42–53, 68–69, n.15); *cf. Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1194–95 (N.D. Cal. 2014).[6]

2

Plaintiffs' allegations also satisfy Federal Rule 8(a)(2).  They have fulfilled the Rule's purpose of giving Healthy Beverage "fair notice" of what their claims are and the "grounds" they rest on.  *Twombly*, 550 U.S. at 155 (internal quotation marks omitted).

---

[6]    Healthy Beverage homes in on the when and how questions.  As an initial matter, its arguments are beside the point.  This case "turns on an assessment of the very particularly identified 'what' in the product label." *Dumont v. Reily Foods Co.*, 934 F.3d 35, 39 (1st Cir. 2019).  In any event, there is nothing "open-ended" about Plaintiffs' four-year purchase window. *Eromon v. Grand Auto Sales, Inc.*, 351 F. Supp. 2d 825, 828 (N.D. Ill. 2004); *cf. Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 485 (E.D. Pa. 2016) (concluding consumers purchasing the product "between 2010 and the present" comported with Rule 9(b)).  Nor is it unclear how Healthy Beverage allegedly deceived Plaintiffs: they relied on the tea's lightly sweetened label in believing it had low sugar content, but it did not. *See* (Am. Compl. ¶¶ 42–53).

Their allegations "raise [their] right to relief above the speculative level." *Id.* While

Healthy Beverage argues Rule 8(a)(2) requires that Plaintiffs "plead basic information

about their alleged purchases," the allegations satisfy even Rule 9(b)'s "heightened"

pleading standard. *See supra* subsection III.B.1.[7]

C

Healthy Beverage argues Plaintiffs' claims fails because they do not plausibly

allege misleading or deceptive conduct. (Brief in Supp. of Mot. to Dismiss Am. Compl.

17–21.) Plaintiffs counter that Healthy Beverage's reliance on the tea's nutrition facts

panel is misplaced. (Opp. to Mot. to Dismiss Am. Compl. 16–21.) The question whether

the tea's lightly sweetened label is deceptive or misleading underlies all Plaintiffs'

---

[7]     Healthy Beverage makes several other meritless arguments. First, it contends
Plaintiffs have not shown their claims comply with applicable statutes of limitations. (Brief in Supp.
of Mot. to Dismiss Am. Compl. 15.) But the Court can grant a motion to dismiss based on an
affirmative defense, such as a statute of limitations, only if its predicate is "apparent from the face of
the complaint." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978).

        Second, Healthy Beverage argues Plaintiffs do not allege they provided notice, as required
for their breach of express warranty claim. (Brief in Supp. of Mot. to Dismiss Am. Compl. 16.)
Plaintiffs allege their counsel sent Healthy Beverage a demand letter on September 23, 2020—
"[w]ithin a reasonable time after Plaintiffs and other similarly situated consumers knew or should
have known" the tea allegedly had more sugar than its label indicated—that set out Healthy
Beverage's "misconduct, including that Defendant misrepresented the contents of Steaz tea
regarding its sugar content." (Am. Compl. ¶ 96.) This is a "factual allegation[]," rather than a
"conclusory statement[]," that Plaintiffs reasonably notified Healthy Beverage of its alleged
breaches, and it properly includes the "date and method by which" Plaintiffs did so. *Petrosino v.
Stearn's Prods., Inc.*, No. 16-7753, 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018). Further,
whether notice is reasonable is a "factual matter left for the jury." *Am. Fed'n of State Cnty. & Mun.
Emps. v. Ortho-McNeil-Janssen Pharms., Inc.*, No. 08-5904, 2010 WL 891150, at *7 (E.D. Pa. Mar.
11, 2010).

        Finally, Healthy Beverage claims Plaintiffs erred by not alleging the varieties of the tea they
purchased. (Brief in Supp. of Mot. to Dismiss Am. Compl. 17.) This argument overlooks how the
Amended Complaint specifies that the allegations are limited to varieties of the tea that are labeled
lightly sweetened but contain allegedly high sugar content. *See* (Am. Compl. ¶¶ 1, 5, 42–53, n.7).

21

claims under state consumer protection laws. The Court cannot conclude as a matter of

law that it is not, so those claims can proceed to discovery.

1

Many jurisdictions apply an objective reasonable consumer standard to

determine whether a representation on a food or drink label is deceptive or misleading.

*See, e.g.*, *Boswell v. Bimbo Bakeries USA, Inc.*, No. 20-8923, 2021 WL 5144552, at \*2

(S.D.N.Y. Nov. 4, 2021) (applying New York law); *Montanez v. HSBC Mortg. Corp.*

*(USA)*, 876 F. Supp. 2d 504, 519 (E.D. Pa. 2012) (applying Pennsylvania law). Under

this standard, a plaintiff must show the statement was "likely to mislead a reasonable

consumer acting reasonably under the circumstances." *Mantikas v. Kellogg Co.*, 910

F.3d 633, 636 (2d Cir. 2018) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d

Cir. 2013)). There must be "more than a mere possibility" that a defendant's label

"might conceivably be misunderstood by some few consumers viewing it in an

unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (internal

quotation marks omitted). The standard "requires a probability 'that a significant

portion of the general consuming public or of targeted consumers, acting reasonably in

the circumstances, could be misled.'" *Id.* Consumers can be deceived by statements

other than "literal falsities." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162

(9th Cir. 2012).

The "primary evidence" in a deceptive advertising case like this is "the

advertising itself." *Fink*, 714 F.3d at 742. But "context is crucial." *Id.* The Court must

assess the "advertisement as a whole, including disclaimers and qualifying language."

*Mantikas*, 910 F.3d at 636. Reasonable consumers, however, are not "expected to

consult the Nutrition Facts panel on the [back] of the [can] to correct misleading information set forth" prominently on the front of it. *Id.* at 637.

The pleading stage is typically not the "appropriate" time to determine "whether a business practice is deceptive"—a "question of fact." *Williams*, 552 F.3d at 938. Courts should grant dismissal only "rare[ly]." *Id.* at 939. An interpretation's reasonableness "as a matter of law" usually is addressed at the motion to dismiss stage "only where, for instance, a plaintiff's claims as to the impressions that a reasonable consumer might draw are 'patently implausible' or unrealistic." *Eidelman v. Sun Prods. Corp.*, No. 16-3914, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017).

2

Plaintiffs plausibly claim the tea's lightly sweetened label likely would have misled a reasonable consumer. To start, no such consumer would miss it: "lightly sweetened" in white letters is set against a rectangular green banner running across the front of the can, sandwiched between the brand (Steaz) and product type (iced green tea).[8] (Am. Compl. 16.) Plaintiffs allege they expected the "amount of sugar advertised on the front of the [tea's] label [to] not substantially deviate" from its ingredients. (*Id.* at ¶ 19.) The label led them to believe the tea had low sugar content and ultimately purchase the tea. *See* (*id.* at ¶¶ 4, 42–53). But the tea is not low in sugar. In fact, it contains twenty grams of added sugar, roughly equal to five teaspoons, as well as 53% and 80% of the American Heart Association's recommended maximum daily intake for men and women, respectively. *See* (*id.* at ¶¶ 22–23). Plaintiffs claim they would not

---

[8]     Although Plaintiffs point to "lightly sweetened" representations on Healthy Beverage's website, their allegations focus on the can label. *See, e.g.*, (Am. Compl. ¶¶ 42–53).

have purchased or paid a premium for the tea had they known how much sugar it contained.  (*Id.* at ¶¶ 42–53.)

The tea's lightly sweetened label could deceive reasonable consumers into believing they were buying a beverage with low sugar content.  *See, e.g.*, *Mantikas*, 910 F.3d at 634 (concluding plaintiffs plausibly claimed a reasonable consumer would have been deceived by defendant's "whole grain" labels for Cheez-its, whose "primary grain content" was actually "enriched white flour"); *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 380–88 (S.D.N.Y. 2021) (finding plaintiff plausibly alleged "Honey Graham Crackers" were deceptively labeled when they contained more refined than whole grain flour and were primarily sweetened by cane sugar rather than honey); *Gubala v. CVS Pharm., Inc.*, No. 14-9039, 2016 WL 1019794, at *12 (N.D. Ill. Mar. 15, 2016) (denying dismissal of claims that whey protein powder was deceptively named, as the name suggested the protein comprises "pure whey protein" rather than "whey protein mixed with other non-protein substances").

This is not one of the rare cases where the Court can determine at the motion to dismiss stage that no reasonable consumer likely would have been deceived by a representation on a food or drink label.  *See e.g., Ackerman v. Coca-Cola Co.*, No. 09-0395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (refusing to determine that a "reasonable consumer could not be misled into believing that vitaminwater is a product that may help maintain healthy dietary practices and fail to appreciate that the product is not solely composed of vitamins and water").  Plaintiffs' understanding of "lightly sweetened" as low in sugar is far from unrealistic or "fanciful."  *See Eidelman*, 2017 WL 4277187, at *4; *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir.

24

2020).  Rather, it is consistent with commonplace definitions of the relevant terms.  *See*

"lightly," *Merriam-Webster's Unabridged Dictionary* ("in a small degree or quantity: to

no great extent or amount"); "sweeten," *Oxford English Dictionary* ("[t]o make sweet to

the taste," especially by "add[ing] sugar or other sweet substance to (food or drink)").

That the tea's nutrition facts panel discloses how much sugar it contains does

not change the analysis.  True, the Court—to the extent it can[9]— must consider all the

tea can's representations, including its nutrition facts panel.  *See Mantikas*, 910 F.3d at

636.  But a panel does not immunize food and drink providers who deceive consumers

elsewhere on the same product package.  *See Bell*, 982 F.3d at 477; *e.g.*, *Thornton v.

Pinnacle Foods Grp. LLC*, No. 16-158, 2016 WL 4073713, at *3 (E.D. Mo. 2016)

(explaining an ingredient list's "mere presence" "on the back of a product does not

eliminate the possibility that reasonable consumers may be misled" (internal quotation

marks omitted)).

Nor is "lightly sweetened" a subjective description of taste.  (Mot. to Dismiss Am.

Compl. 29.)  Healthy Beverage's argument to this effect, stated otherwise, is that the

lightly sweetened label is mere "puffery."  *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939,

945 (3d Cir. 1993) (defining puffery as an "exaggeration or overstatement expressed in

broad, vague, and commendatory language").  Plaintiffs reasonably allege otherwise—

that they took "lightly sweetened" to mean the tea had low sugar content.  *See, e.g.*,

(Am. Compl. ¶ 19).  In their view, lightly sweetened does not just describe the tea's

taste.  It is a "specific and testable representation" that the tea will have low sugar

---

[9]      The picture pasted in the Amended Complaint (and on page two of this Memorandum) does
not show the panel's precise location on the can.  Nonetheless, it indicates the panel is somewhere
toward the back.  *See* (Am. Compl. 16).

content, it "can be proven true or false" and it describes the tea's contents in a manner

Plaintiffs relied on when purchasing it.  *See Duran v. Henkel of Am., Inc.*, 450 F. Supp.

3d 337, 347 (S.D.N.Y. 2020); *Ackerman*, 2010 WL 2925955, at *17.[10]

IV

A

Healthy Beverage argues Plaintiffs' claim for breach of the implied warranty of

merchantability fails because they do not allege the tea was unfit for human

consumption.  (Brief in Supp. of Mot. to Dismiss Am. Compl. 24–26.)  It further asserts

this claim should be dismissed for lack of privity under New York, California, Illinois

and Wisconsin law.  (*Id.* at 26–27.)

1

To be merchantable, goods must, among other requirements, "pass without

objection in the trade," be of "fair average quality" and "fit for the ordinary purposes"

the goods are used for, and "conform to the promises or affirmations of fact" on their

---

[10]     Healthy Beverage also invokes a rule distinguishing claims based on labels that are "unambiguous and misleading" from claims aimed at ambiguous labels though the ambiguity can be resolved by a nutrition facts panel or ingredient list; only the former survive a Rule 12(b)(6) motion.  *See Boswell v. Bimbo Bakeries USA, Inc.*, No. 20-8923, 2021 WL 5144552, at *2–3 (S.D.N.Y. Nov. 4, 2021) (relying on *In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 275 F. Supp. 3d 910 (N.D. Ill. 2017)).  That rule has been repudiated in its own circuit and conflicts with the law in three other circuits, as well as the doctrine for other consumer protection statutes.  *See Bell*, 982 F.3d at 476–80.  In any event, applying the rule here would not change the result.  "Lightly sweetened" is not ambiguous in the relevant sense: a reasonable consumer would likely understand it to mean low sugar content.  While the phrase may not specify the tea's precise *amount* of sugar, "lightly sweetened" sends a message that the tea contains little of it.

         As for *Boswell* in particular, the parties filed supplemental briefing on that and another 2021 decision from the Southern District of New York, *Mazella v. Coca-Cola Co.*, --- F. Supp. 3d ---.  *See* (ECF 23–25, 27–28).  Neither case is persuasive.  The *Boswell* court erred in relying on the ambiguity rule.  *See id.* at *2–*3.  While the other decision involved iced tea labeled "Slightly Sweet," the Court need not parse "slightly" and "lightly," nor "sweet" and "sweetened," to distinguish it: *Mazella* placed undue reliance on the product's nutrition facts panel.  *See id.* at *3.

labels.  U.C.C. § 2–314(2)(a)–(c), (f).  While Plaintiffs claim the tea does not meet any of these standards, their theory of liability is tailored to label nonconformance.  *See* (Am. Compl. ¶¶ 3–5, 100); *see also* (Opp. to Mot. to Dismiss Am. Compl. 26–27 (emphasizing this ground for breach)).  Every relevant jurisdiction has adopted this provision by statute.  Alaska Stat. Ann. § 45.02.314(b)(6); Cal. Com. Code § 2314(2)(f); 810 Ill. Comp. Stat. Ann. 5/2-314(2)(f); Mass. Gen. Laws Ann. Ch. 106, § 2-314(2)(f); N.Y. U.C.C. § 2-314(2)(f); Okla. Stat. Ann. title 12A, § 2-314(2)(f); 13 Pa. Stat. and Cons. Stat. § 2314(b)(6); Tex. Bus. & Com. Code Ann. § 2.314(b)(6).

Plaintiffs plausibly claim a breach of the implied warranty of merchantability. They contend the tea does not conform to its lightly sweetened label because it is high in sugar.  *See* (Am. Compl. ¶ 5); U.C.C. § 2–314(f) (as adopted by local statute).  The Court need not address their other alleged grounds for breach.[11]

2

Vertical privity exists when the buyer and seller are "in adjoining links of the distribution chain."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).  Consumers who buy a manufacturer's products from a retailer do not stand in privity with the manufacturer.  *Id.*  California, Illinois, New York and Wisconsin law all require privity between the consumer-plaintiff and manufacturer-defendant.  *Corbett v.*

---

[11]    Healthy Beverage is mistaken in its belief Plaintiffs must allege the tea was unfit for human consumption.  Label nonconformance is a "distinct" way Healthy Beverage can breach the implied warranty of merchantability.  *See Piro v. Exergen Corp.*, No. 15-11834, 2016 WL 1255630, at *11 (D. Mass. Mar. 29, 2016) (claiming plaintiffs plausibly stated a breach of the implied warranty of merchantability because thermometers with foreign-made parts did not conform to their labels' "MADE IN U.S.A." representations); *Augustine v. Talking Rain Beverage Co.*, 386 F. Supp. 3d 1317, 1132 (S.D. Cal. 2019) (rejecting the argument plaintiffs needed to show defendant's sparkling water lacked "basic fitness for ordinary use" when their implied warranty of merchantability claim was based on deceptive labeling).

*PharmaCare U.S., Inc.*, --- F. Supp. 3d --- (S.D. Cal. 2021); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003); *Hesse*, 463 F. Supp. 3d at 470; *Lamont v. Winnebago Indus., Inc.*, 569 F. Supp. 2d 806, 815–16 (E.D. Wis. 2008).

Plaintiffs are not in privity with Healthy Beverage: they allege they purchased the tea from grocery stores and retailers rather than directly from the Defendant.  (Am. Compl. ¶¶ 42–53.)  They try to get around the privity requirement by invoking three exceptions.  (Opp. to Mot. to Dismiss. Am. Compl. 28–29 (citing the direct dealing, sealed food products and third-party beneficiary exceptions).)  Exceptions save their claim under California and Illinois law—but not New York's or Wisconsin's.

California law provides a privity exception for "foodstuffs."  *Corbett*, --- F. Supp. 3d --- (internal quotation marks omitted).  A similar exception is available under Illinois law.  *Bietsch v. Sergeant's Pet Care Prods., Inc.*, No. 15-5432, 2016 WL 1011512, at *6 (N.D. Ill. Mar. 15, 2016).  The Court is aware of no applicable exception under New York or Wisconsin law.  *See, e.g.*, *Kyszenia v. Ricoh USA, Inc.*, No. 20-2215, 2022 WL 326981, at *8–9 (E.D.N.Y. Feb. 3, 2022) (concluding the third-party beneficiary exception under New York law did not apply when the complaint failed to allege contracts between a camera manufacturer and retailers intended to benefit plaintiffs).

B

Healthy Beverage argues Plaintiffs fail to adequately plead their unjust enrichment claim by not identifying applicable state law.  (Brief in Supp. of Mot. to Dismiss Am. Compl. 27–28.)  It also contends this claim should be dismissed under Alaska, Illinois, Massachusetts, New York and Oklahoma law because there is no allegation of a lack of adequate remedies at law.  (*Id.* at 29.)

28

1

Although the "common denominator" for an unjust enrichment claim is the "shared principle that it is unjust for a defendant who is enriched at the expense of the plaintiff to accept and retain the ill-gotten benefit," the elements "vary state by state." *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 912 (E.D. Pa. 2012). Courts in this District have dismissed unjust enrichment claims brought on behalf of multi-state classes when plaintiffs do not identify which states' laws apply. *U.S. ex rel. Krahling v. Merck & Co.*, 44 F. Supp. 3d 581, 609 (E.D. Pa. 2014); *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 419 (E.D. Pa. 2009); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009).

Plaintiffs allege unjust enrichment on behalf of the nationwide class without specifying any state law. (Am. Compl. ¶¶ 104–09.) The claim cannot go forward as is, and the Court will allow amendment so Plaintiffs can identify applicable state law. *See* (Opp. to Mot. to Dismiss Am. Compl. 31 n.17); *Flonase*, 610 F. Supp. 2d at 419.

2

District courts regularly deny dismissal of unjust enrichment claims on the ground that there is no allegation of a lack of adequate remedies at law. *Sandee's Catering v. Agri Stats, Inc.*, No. 20-2295, 2021 WL 963812, at *7 (N.D. Ill. Mar. 15, 2021); *see, e.g.*, *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, No. 13-1180, 2015 WL 4755335, at *29–30 (N.D. Cal. Aug. 11, 2015). Federal Rule 8 authorizes pleading claims in the alternative and inconsistently. This means Plaintiffs have a right to "plead unjust enrichment as an alternative to other legal remedies." *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 798 (D. Minn. 2020); *see also Levine v.*

*First Am. Title Ins. Co.*, 682 F. Supp. 2d 442, 468–69 (E.D. Pa. 2010) (allowing plaintiffs to plead an unjust enrichment claim in the alternative because, though there was an available legal remedy, it was not exclusive). When it remains "unclear" whether "legal remedies will prevail," there is no need to dismiss an alternatively pleaded unjust enrichment claim. *Pork*, 495 F. Supp. 3d at 799.

Plaintiffs pleaded their nationwide unjust enrichment claim in the alternative to their breach of warranty claims. (Am. Compl. 24 n.16.) The claim can go forward, even though the warranty claims ultimately may give rise to legal remedies. *See In re Light Cigarettes Mktg. Sales Pracs. Litig.*, 751 F. Supp. 2d 183, 191 (D. Me. 2010).[12]

An appropriate Order follows.

---

[12] Healthy Beverage also makes two arguments specific to New York, Pennsylvania and Wisconsin law. Neither succeeds. First, it contends Plaintiffs do not meet the New York and Wisconsin law requirement for unjust enrichment claims that they allege they directly conferred a benefit on Healthy Beverage. (Brief in Supp. of Mot. to Dismiss Am. Compl. 29–30.) There is no such requirement under either state's laws. *See Egg Products*, 851 F. Supp. 2d at 930 (applying New York Law); *In re Amla Litig.*, 282 F. Supp. 3d 751, 766 (S.D.N.Y. 2017) (same); *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 403–04 (E.D.N.Y. 2010) (same); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 447–48 (E.D. Pa. 2010) (applying Wisconsin law); *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1093 (S.D. Cal. 2017) (same).

Second, Healthy Beverage asserts Plaintiffs do not accuse it of failing to provide a good or service, as required under Pennsylvania law. (Brief in Supp. of Mot. to Dismiss Am. Compl. 30–32.) To establish a *prima facie* case of unjust enrichment under Pennsylvania law, a plaintiff must show the conferral of a "benefit" on the defendant, the defendant "appreciated" it and its retention and acceptance "would be inequitable under the circumstances without" the defendant paying for it. *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 341 (E.D. Pa. 2012). Plaintiffs plausibly allege a *prima facie* case: They conferred a benefit on Healthy Beverage by purchasing the tea at a premium; Healthy Beverage appreciated this benefit because it knew it could boost the tea's price if it were marketed to have low sugar content; and it would be inequitable for Healthy Beverage to retain the benefit because it deceived consumers into purchasing a beverage that is high in sugar. *See* (Am. Compl. ¶¶ 6–9.) Plaintiffs need not allege anything else. *See, e.g.*, *Cesare*, 429 F. Supp. 3d at 65–66.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.